UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

MARK WEBB AND ANA WEBB
Individually and on behalf of all others similarly situated,

*Plaintiffs*

V.

VOLVO CARS OF N.A., LLC
*and*
VOLVO CAR CORPORATION
*and*
VOLVO CAR UK LIMITED
*and*
VOLVO CARS OF N.A., INC.
*Defendants*

CIVIL ACTION NO.: 13-2394

*JURY TRIAL DEMANDED*

PLAINTIFFS' ANSWER TO THE MOTION OF
DEFENDANTS VOLVO CARS OF NORTH AMERICA, LLC AND
VOLVO CAR CORPORATION FOR MORE DEFINITE STATEMENT AND,
ALTERNATIVELY, MOTION TO DISMISS COUNTS I AND II

Plaintiffs, Mark Webb and Ana Webb, by their undersigned counsel, hereby respond to Motion of Defendants Volvo Cars of North America, LLC and Volvo Car Corporation for More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) as to All Counts of Plaintiffs' Amended Complaint and, Alternatively, Motion to Dismiss Counts I and II Pursuant to Fed. R. Civ. P. 9(b), and in opposition thereto, state and aver as follows:

1. – 11. Denied. Plaintiffs, Mark and Ana Webb, by and through their counsel, Francis Alexander, LLC, respectfully request that the Defendants' Motion for More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) as to All Counts of Plaintiffs' Amended Complaint and, Alternatively, Motion to Dismiss Counts I and II Pursuant to Fed. R. Civ. P. 9(b) be DENIED, in its entirety, per the reasons set forth in the accompany Memorandum of Law in Opposition to Defendants' Motion, incorporated herein by reference.

*****

*Respectfully submitted,*

FRANCIS ALEXANDER, LLC

*/s/ Francis Malofiy*

Francis Malofiy, Esquire
Attorney ID No.:  208494
1125 Walnut Street
Philadelphia, PA 19107
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*

*/d/ October 21, 2013*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK WEBB AND ANA WEBB<br>Individually and on behalf of all others similarly situated,<br>*Plaintiffs*<br><br>V.<br><br>VOLVO CARS OF N.A., LLC<br>*and*<br>VOLVO CAR CORPORATION<br>*and*<br>VOLVO CAR UK LIMITED<br>*and*<br>VOLVO CARS OF N.A., INC.<br>*Defendants* | CIVIL ACTION NO.: 13-2394<br><br><br>*JURY TRIAL DEMANDED* |

MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF
DEFENDANTS VOLVO CARS OF NORTH AMERICA, LLC AND
VOLVO CAR CORPORATION FOR MORE DEFINITE STATEMENT AND,
ALTERNATIVELY MOTION TO DISMISS

## I.   INTRODUCTION

Mark and Ana Webb purchased a Volvo 850 **on behalf of their family** because they wanted to be sure that their newborn baby-boy, Sabino Webb, and their family would be in what they thought was one of the safest cars in America. However, on May 4, 2009, the Volvo 850 was struck by another car, crashing into the passenger-side doors.

Mark and Ana Webb bought the Volvo 850 under the belief as it was advertised and marketed by Volvo – as having an innovative Side Impact Protection System (SIPS) with solid steel anti-intrusion door bars on all four doors to protect against side-impact crashes which result in the largest percentage of fatalities. Mark and Ana wanted their children to be safe. What they didn't know is that Volvo's Side Impact Protection System, as advertised and marketed, did not exist in the rear doors.

Instead of using a solid steel anti-intrusion door bar, *as advertised,* to prevent intrusion into the *rear* passenger compartment, Volvo opted to insert a small, flimsy, lightweight, unsupported piece of corrugated plastic into the rear doors of the Volvo 850. This small, flimsy piece of plastic is euphemistically referred to by Volvo as their "innovative" Side Impact Protection System (SIPS).

The Volvo 850 was defectively designed, defectively manufactured, and was not crashworthy nor was it designed properly or advertised appropriately. The lack of adequate door reinforcement, enhanced the injuries by allowing the impacting car to penetrate into the passenger compartment of the Volvo 850 far more than it should have if it had the door bar in the rear as advertised and marketed; the child safety seat was fractured as was the infant's skull.

Mark and Ana Webb watched their baby boy suffer as he grasped to the willows of life. After seven days of suffering, and after Ana Webb having spent her only Mother's day with her baby-boy Sabino, he lost his fight for life. Mark and Ana Webb lost their baby-boy Sabino Webb who died prematurely on May 11th, 2009 due to blunt force injuries to the head.

Sabino Webb was sixty-four (64) days old at the time of the underlying motor vehicle accident of May 4, 2009. Sabino Webb, by and through his parents, Mark Webb and Ana Webb, relied upon the false, misleading, and deceptive advertising, marketing, promotional, sales materials, owner's manual materials, safety materials, and press releases that Volvo provided to its customers, consumers, and users of its product.

The Volvo 850 and its falsely advertised and deceptively marketed SIPS is a classic example of "Deceptive Trade Practices." Volvo advertising and marketing provided a **false sense of security** to Ana Webb, Mark Webb, Sabino Webb, and the Webb family. The car was falsely advertised and deceptively marketed to be manufactured with anti-intrusion door bars on all four doors; however, the Volvo 850 as sold to the public was not manufactured with this door bar as falsely advertised and deceptively marketed. **Ana Webb, Mark Webb, Sabino Webb, and the Webb family bought the Volvo 850** so that they could be driving Volvo's promise of safety. Volvo broke its promise - not only to the Webb family but to Volvo's reputation, to every Volvo owner, and to the consumer public.

***

Volvo created an impressive marketing campaign, even going so far as to issue press releases, advertisements, and pictures of their Side Impact Protection System ("SIPS") **with door bars in the rear doors**; however the SIPS system in the rear doors was not manufactured as advertised and originally designed which was supposed to have a rear door bar in the Volvo 850.



The SIPS system in the rear doors of the Volvo 850 was a fallacy, a creative myth, an advertised safety feature which did not exist in the car when it was actually manufactured, only when it was designed, manufactured, and promoted to the public, consumers, and owners.

## AT VOLVO
## SAFETY IS A TRADITION

Volvo has always led the way in safety, and still does. Since the 1930s, we have been researching and analysing thousands of accidents every year. Volvos are also subjected to many different types of crash tests at the Volvo Safety Laboratories. This has provided us with an unparalleled mass of data and statistical evidence... material we put to good use in the on-going development of new safety features.

Every Volvo reflects our concern for your safety, with properties designed to help drivers avoid accidents (dynamic safety) as well as features which help to minimise the effects of impact should it become inevitable (passive safety).

Dynamic safety is a blend of sharp handling, good roadholding, fast and predictable response, stability and driver comfort. Our cars have outstanding cornering ability, steering feel and a cat-like grip on the road, enhanced by an exceptionally responsive engine and an almost total absence of body roll.

In today's Volvo 850, you can rely on protection provided by features such as SIPS, Volvo's Side Impact Protection System, and a full set of five three-point seat belts, including three in the rear.

### SAFETY YOU CAN DEPEND ON

Every 850, like all other Volvos, is fitted with a full size airbag on the driver's side. Hidden in the centre of the steering wheel, this feature is activated should a sufficiently hard collision occur. Within a fraction of a second, the airbag inflates and deflates between the driver and the steering wheel to protect the driver's head and help reduce injuries to the chest, neck and face.

Pretensioners fitted to the front seat belts provide additional assurance of optimum safety. In the event of a collision, a powerful torque spring in each pretensioner eliminates any slack in the belt within 25 milliseconds, helping to restrain the body as effectively as possible. All five seats have

head restraints and inertia reel seat belts, while the front seat belts automatically adjust for height - a world first.

Children aged between three and ten (15-36 kgs) have their own safety seat in the 850. Integrated into the rear centre armrest, this award winning safety feature simply folds away when not in use.

### SAFETY. WE'RE ON YOUR SIDE

One in four collisions involves side impact, which is why SIPS is such an important Volvo safety feature. But on every Volvo 850, Side Impact Protection means far more than steel bars in the doors.

Apart from strong steel bars in each door, similar reinforcements are located across the width of the car, under the dashboard and the front and rear seats.

In a side-on collision, these reinforcements work with the roof and door pillars and roof cross members to distribute the impact force throughout the body-shell, deflecting it away from the driver and passengers and keeping the survival cell intact.



Plaintiffs filed their Class Action Complaint on May 1, 2013. (ECF No. 1). In response to defendants' prior motions, plaintiffs field an Amended Class Action Complaint on September 16, 2013. (ECF No. 12). Plaintiffs' complaint describes the defective nature of defendants' product, the false advertisements published by the defendants and relied upon by the plaintiffs, the misrepresentations made to purchasers of the product, and the significant damages suffered by plaintiffs. Plaintiffs' allegations are not complicated, and are laid out in adequate detail to place defendants on notice of the claims against them. The frequent refrain throughout defendants' motion is that plaintiffs have not pled adequate facts to support their claims, thereby justifying the apparent need for a more definite statement. But simply ignoring whatever facts defendants find inconvenient in the pleading is no way for a motion for a more definite statement and/or motion to dismiss to be granted. Moreover, defendants' reading of the rules of civil procedure would require far more detail than is necessary at this stage of the litigation. For these reasons, and for those discussed below, defendants' motion should be denied. Should the Court decide not to deny the motion in its entirety, Plaintiffs request the opportunity to amend the claims the Court finds lacking.

## II.   ARGUMENT

### A.   Legal Standard – Motion For A More Definite Statement

Federal Rules of Civil Procedure 12(e) permits a party to move for a more definite statement in the event a complaint "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). A motion for a more definite statement under Rule 12(e) "is directed to the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading." Schaedler v. Reading Eagle Publ'n, Inc., 370 F.2d 795, 798 (3d Cir. 1967). Such motions are "disfavored, and are generally limited to remedying unintelligible, rather than insufficiently detailed, pleadings." Graff v. Subbiah Cardiology Assocs., Ltd., No. 08-207, 2008 WL 2312671, at *5 (W.D. Pa. June 4, 2008) (citing Briley v. City of Trenton, 164 F.R.D. 26, 30 (D.N.J. 1995)).

The federal pleading standard requires that "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless

the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a).

"[A] plaintiff need only make out a claim upon which relief can be granted. If more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of the civil discovery mechanisms under the Federal Rules." Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004), citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). Under Bell Atlantic v. Twombly, factual allegations need only be enough to raise a right to relief above the speculative level. 550 U.S. 544, 555 (2007).

Furthermore, "Rule 12(e) motions, however, 'are highly disfavored since the overall scheme of the federal rules calls for skeletal pleading and places the burden of unearthing factual details on the discovery process.'" Jones v. Select Portfolio Servicing, Inc., No. 08-972, 2008 U.S. Dist. LEXIS 33284, at *6 (E.D. Pa. April 23, 2008). As this Court has noted:

> The class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small – the pleading must be sufficiently intelligible for the court to be able to make out one or more potentially viable legal theories on which the claimant might proceed, but it must not be so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself.

Hides v. Certainteed Corp., No. 94-7352, 1995 U.S. Dist. LEXIS 10849, at *2 (E.D. Pa. July 26, 1995).

Defendants cannot reasonably or in good faith argue that Plaintiffs' Amended Complaint containing detailed and very specific factual allegations, over one hundred ninety-one (191) numbered paragraphs, is "so vague or ambiguous" that defendants "cannot reasonably prepare a response." Under no circumstances can Plaintiffs' Amended Complaint be considered so vague, ambiguous or unintelligible that defendants could not even respond with a simple denial. See id. See also Sun Co. v. Badger Design & Constructors, Inc., 939 F.Supp. 365, 374 (E.D. Pa. 1996) (the basis for granting a Rule 12(e) motion is unintelligibility, not lack of detail).

1.    **Plaintiffs have sufficiently pleaded a claim under the UTPCPL to enable Defendants to frame a response, but if this Honorable Court decides otherwise, Plaintiffs request leave to amend Count I to sufficiently plead justifiable reliance**

Defendants argue that they are entitled to a more definite statement because Plaintiffs' Amended Complaint did not adequately plead "justifiable reliance" under the UTPCPL. Pennsylvania law requires justifiable reliance on the defendant's wrongful conduct and harm as a result to be pleaded in a private cause of action under the UTPCPL. Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004). However, nowhere in their Motion do defendants claim that the Amended Complaint is so "vague, ambiguous or unintelligible" that they cannot prepare a responsive pleading. The fatal flaw in defendants' argument is that plaintiffs adequately alleged a UTPCPL claim against the defendants, and plaintiffs specifically plead justifiable reliance. Defendants' own Memorandum makes it clear that defendants understood the nature of Plaintiffs' Amended Complaint when they state this action is "against three (3) distinct Volvo corporations," in which "[p]laintiffs claim that they purchased the vehicle believing that it contained rear door beams when, in fact, it did not." (ECF No. 20 at p. 12). This statement alone establishes defendants' understanding of Plaintiffs' Amended Complaint, and therefore, Defendants' Motion should be denied.

Defendants argue that a more definite statement is required for Count I because plaintiffs have failed to plead justifiable reliance. Simply stated, defendants are wrong. Plaintiffs' complaint indisputably states that the Webbs relied on Volvo's advertisements in making their decision to purchase the Volvo 850:

> 8.    The Volvo 850 and its falsely advertised and deceptively marketed SIPS is a classic example of "Deceptive Trade Practices." Volvo advertising and marketing of its purported vehicle **safety** and its **SIPS** – *both of which the Webb family relied upon in purchasing their Volvo 850* - provided a **false sense of security** to Ana Webb, Mark Webb, Sabino Webb, and the Webb family, and continue to provide a false sense of security to those consumers and their families who to this day are driving the Volvo

> 850 and unaware of the danger the car presents to their loved ones
> in the unfortunate event of an accident.

(ECF No. 12, p. 3 ¶ 8) (emphasis in original).

Defendants also argue that to formulate an answer they must know precisely when, where, and who supplied the false advertisements in question. First, Volvo Car Corporation owns both Volvo Cars of North America, LLC and Volvo Cars UK Limited, and is fully aware of the activities and business publications of its wholly-owned subsidiaries. (ECF Nos. 9 and 22). See also Plaintiffs' Response to the Motion of Volvo Car UK Limited to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2). The level of detail requested by defendants is not required to put defendants on notice of a UTPCPL claim, and is properly reserved for the discovery process of litigation. See Jones, 2008 U.S. Dist. LEXIS 33284, at *6. Moreover, motions for a more definite statement should be denied when the information sought by the defendant is within the defendant's knowledge. See Wheeler v. U.S. Postal Serv., 120 F.R.D. 487, 488 (M.D. Pa. 1987).

To extent that defendants invoke Twombly and Iqbal to claim that plaintiffs have not alleged "sufficient facts" to allow defendants to respond to plaintiffs' UTPCPL claims, plaintiffs remind defendants of the Federal Rules' liberal pleading requirements requiring notice pleading, not fact pleading. The federal pleading standard requires that "[a] pleading that states a claim for relief must contain: … (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Furthermore, discovery is available to defendants to "to resolve or clarify disputed issues." See Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004), citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

The factual allegations contained in Plaintiffs' Amended Complaint unambiguously state the deceptive trade practices and violations of the UTPCPL by the defendants, how plaintiffs relied on these advertisements and publications, and place defendants on notice of plaintiffs' claims. Accordingly, defendants can reasonably prepare a response and the motion for a more definite statement should be denied.

2.      **Unjust Enrichment is Properly Plead**

"'Unjust enrichment' is essentially an equitable doctrine." <u>Styer v. Hugo</u>, 619 A.2d 347, 350 (Pa. Super. Ct. 1993), <u>aff'd</u>, 637 A.2d 276 (Pa. 1994). In Pennsylvania, the elements of unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." <u>Schenck v. K.E. David, Ltd.</u>, 666 A.2d 327, 328 (Pa. Super. Ct. 1995) (citations and internal quotation marks omitted). "Where … unjust enrichment is found, the law implies a contract, … referred to as either a *quasi contract* or a contract implied in law, [which] requires that the defendant pay to plaintiff the value of the benefit conferred[.]" <u>Chesney v. Stevens</u>, 644 A.2d 1240, 1245-46 (Pa. Super. Ct. 1994) (citations omitted). "In short, the defendant makes restitution to the plaintiff in *quantum meruit.*" <u>Id.</u>

Plaintiffs have properly pled a claim for unjust enrichment. Plaintiffs have purchased a product - the Volvo 850 - known by defendants to be defective. (ECF No. 12 ¶¶ 2, 3, 4, 5, 8, 9, 11). Because defendants' product was falsely advertised as having safety features it did not, it is inequitable for defendants to retain the funds received from the plaintiffs. Defendants claim that there are no facts showing any benefit was conferred on defendants. (ECF No. 21 at p. 21). As noted above, and acknowledged by the defendants in their Memorandum (<u>Id.</u>), these allegations are made in Count II, ¶¶ 12-13 of Plaintiffs' Amended Complaint. Thus, the defendants reaped financial benefits from selling the Volvo 850. As a result, defendants have not met their burden under a Rule 12(e) motion, the pleadings are sufficient to enable them to prepare a response, and this Court should deny defendants' Motion as to Count II.

3.      **The Allegations of the Existence of a Contract in the Amended Complaint Support a Cause of Action for Breach of Duty of Good Faith and Fair Dealing; Furthermore, Count III Is Not So Vague, Ambiguous or Unintelligible that Defendants Cannot Frame A Response**

Count III of Plaintiffs' Amended Complaint properly states a cause of action based on breach of the duty of good faith and fair dealing. Under Pennsylvania law, a contracted party obligates himself to a duty of good faith and fair dealing in the performance of a contract, and a

separate cause of action may be maintained for breach of this duty. See Somers v. Somers, 613 A.2d 1211, 1213-1214 (Pa. Super. 1992); ATI Centers, Inc. v. ATI Resources, 1999 WL 562243 (W.D. Pa. 1999); Ross v. Canada Life Assurance Co., 1996 WL 182561 (E.D.Pa. 1996); Killian v. McCulloch, 850 F. Supp. 1239, 1250 (E.D. Pa. 1994).

Defendants argue for a more definite statement of Count III based on the wrongful assertion that a plaintiffs have failed to allege the existence of a contract. However, defendants themselves highlight that the Amended Complaint states that "[e]ach contract of sale and lease agreement entered by Plaintiffs and members of the Plaintiff Class for the purchase and lease of the Class Vehicles contains an implied term requiring Defendants to adhere to a duty of good faith and fair dealing."  (ECF No. 12 at Count III, ¶17). Thus, in the present case, it is pleaded and must be accepted as true that a contractual relationship existed between plaintiffs and defendants. Hence, defendants owed plaintiffs a duty of good faith and fair dealing. See Killian, 850 F. Supp. at 1251.

At this stage of the proceedings, and under the liberal pleading standards of Rule 8(a) of the Federal Rules, plaintiffs have properly pled a separate cause of action for breach of the duty of good faith and fair dealing. The above-mentioned standard in regards to a motion for a more definite statement is that the so complaint is so vague, ambiguous or unintelligible that the defendants cannot prepare a response, or to put it another way, defendants could not even respond with a simple denial. Given that plaintiffs have alleged that "[e]ach contract of sale and lease agreement entered by Plaintiffs and members of the Plaintiff Class for the purchase and lease of the Class Vehicles contains an implied term requiring Defendants to adhere to a duty of good faith and fair dealing," (ECF No. 12 at Count III, ¶17) plaintiffs have alleged that existence of a contract and defendants clearly have enough information to simply deny that a contract existed and/or that they have not breached their duty of good faith and fair dealing, if indeed that is defendants' position. Plaintiffs have more than adequately plead their breach of good faith and fair dealing claim and any information defendant desires to have beyond that it is properly the subject of discovery. Because defendants have not established that the allegations in amended complaint are so vague, ambiguous or unintelligible so as to render Count III impossible to respond to, the Motion for a More Definite Statement as to Count III should be denied.

4.      **Plaintiffs Have Demonstrated the Need for Injunctive Relief**

Plaintiffs' Amended Complaint requests injunctive relief. In deciding whether to grant a permanent injunction, the court must consider whether:

> (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest.

Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001); see also Temple Univ. v. White, 941 F.2d 201, 214-25 (3d Cir. 1991). The court "is required to tailor the scope of its remedy in order to fit the nature of the violation it has found." Temple Univ., 941 F.2d at 215. Plaintiffs meet these requirements. Due to the defects of the Volvo 850 vehicle, it is likely they will succeed on the merits of their claims. Plaintiffs will be irreparably injured if the conditions of the injunction, described in the ad damnum clause of Count IV, ¶(a)(1) – (6) of the Amended Complaint (ECF No. 12 at p. 34), are not met. Plaintiffs have further shown that it is in the public interest to educate the public about the hazards of the Volvo 850. The scope of the remedy, as required, fits the nature of the problems caused by defendants' false advertisements.

In sum, plaintiffs have not requested "injunctive relief" as a separate cause of action. Plaintiffs clearly demand injunctive relief as a remedy, and such request is not, again, under the standard, so vague, ambiguous or unintelligible that the defendants cannot prepare a response.

However, should this Court find merit in defendants' argument, plaintiffs respectfully request leave to amend their claim for injunctive relief.

B.      **Legal Standard – Federal Rule of Civil Procedure 9(b)**

To determine whether a particular claim is subject to and meets the Rule 9(b) pleading standard, the Third Circuit Court of Appeals has held that "where the plaintiff grounds [her] claims in allegations of fraud—and the claims thus 'sound in fraud'—the heightened pleading requirements of Rule 9(b) apply." In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 270 (3d Cir. 2006); see also Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 161-62 (3d Cir. 2004). Conversely, "claims . . . that do not sound in fraud are not held to the heightened pleading

requirements of Fed. R. Civ. P. 9(b)." In re Adams Golf, Inc. Secs. Litig., 381 F.3d 267, 273 n.5 (3d Cir. 2004), citing Shapiro v. UJB Fin. Corp., 964 F.2d 272, 288 (3d Cir. 1992).

Fed. R. Civ. P. 9(b) does not apply here because plaintiffs' claims are *not* premised on fraud. In this case, plaintiffs allege deceptive trade practices as well as violation(s) of the Unfair Trade Practices and Consumer Protection. Under any standard, Plaintiffs' Amended Complaint is simple, factually set forth, and, as is self-evident in this climate, plausible.  When applying the correct standard, Plaintiff's Complaint is sufficiently specific and Defendants' Motion should be denied. In the alternative, Plaintiff should be granted leave to amend as this Honorable Court is, respectfully, directed to allow.

### 1.    Federal Rule of Civil Procedure 9(b) Does Not Apply to Plaintiffs' Claims

As noted by the United States District Court for the Eastern District of Pennsylvania in 2002, the version of the "catch-all" provision of the CPL in place prior to 1996 prohibited only "fraudulent" conduct. Flores v. Shapiro & Kreisman, 246 F. Supp. 2d 427, 432 (E.D. Pa. 2002). The act was then amended to prohibit both fraudulent and "deceptive" conduct. Id. Thus, a plaintiff states a claim under the "catch-all" provision of the CPL by satisfying the elements of common law fraud or by otherwise alleging deceptive conduct. See Sheet Metal Workers Local 411 Health & Welfare Plan v. GlaxoSmithKline, Plc, 737 F. Supp. 2d 380, 421 (E.D. Pa. 2010); Genter v. Allstate Prop. and Cas. Ins. Co., No. 11-cv-0709, 2011 WL 2533075, at *4 (W.D. Pa. June 24, 2011).

Thus, several federal courts have held that a UTPCPL claim under the "deception" prong of the "catch-all" provision may be established by proving that the defendant engaged in deceptive conduct that created a likelihood of confusion or of misunderstanding without strict proof of all of the traditional elements of common law fraud. See Wilson v. Parisi, 549 F. Supp. 2d 637, 666 (M.D. Pa. 2008); Mertz v. Donzi Marine, Inc., No. 04-55, 2007 WL 710263, at *11 (W.D. Pa. Mar 06, 2007) (same); Flores v. Shapiro & Kreisman, 246 F. Supp. 2d 427, 432 (E.D. Pa. 2002) (same); In re Patterson, 263 B.R. 82, 92–93 (Bankr. E.D. Pa. 2001). Several decisions also demonstrate that a plaintiff's claim for deceptive conduct under the catchall provision of the UTPCPL does not require alleging the elements of fraud, and consequently, Rule 9(b)'s

particularity requirement is inapplicable. <u>Seldon v. Home Loan Servs., Inc.</u>, 647 F.Supp. 2d 451, 469 (E.D. Pa. 2009); <u>see</u> <u>also</u> <u>Chiles v. Ameriquest Mortg. Co.</u>, 551 F. Supp. 2d 393, 399 (E.D. Pa. 2008) ("[A]ll elements of common law fraud need not be proven if [p]laintiff alleges deceptive conduct"); <u>Christopher v. First Mut. Corp.</u>, 2006 U.S. Dist. LEXIS 2255 at *10 (E.D. Pa. Jan. 20, 2006) ("If a plaintiff alleges deceptive conduct under the UTPCPL, however, he need not meet the traditional heightened pleading standard").

Here, Plaintiffs' Complaint is rife with allegations of the deceptive conduct, false advertising and false statements attributed to Volvo:

> Pg 2 ¶4
>
> 4.      Instead of using a solid steel anti-intrusion door bar, *as advertised,* to prevent intrusion into the *rear* passenger compartment, Volvo opted to insert a small, flimsy, lightweight, unsupported piece of corrugated plastic into the rear doors of the Volvo 850. This small, flimsy piece of plastic (which was originally designed and manufactured out of foam) is euphemistically referred to by Volvo as their "innovative" Side Impact Protection System (SIPS).
>
>
> Pg 3 ¶¶ 8-9
>
> 8.      The Volvo 850 and its falsely advertised and deceptively marketed SIPS is a classic example of "Deceptive Trade Practices."  Volvo advertising and marketing of its purported vehicle **<u>safety</u>** and its **<u>SIPS</u>** – *both of which the Webb family relied upon in purchasing their Volvo 850* - provided a **false sense of security** to Ana Webb, Mark Webb, Sabino Webb, and the Webb family, and continue to provide a false sense of security to those consumers and their families who to this day are driving the Volvo 850 and unaware of the danger the car presents to their loved ones in the unfortunate event of an accident.
>
> 9.      The Volvo 850 was falsely advertised and deceptively marketed to be manufactured with solid steel anti-intrusion door bars on all four doors; however, the Volvo 850 as sold to the public was not manufactured with this door bar as falsely advertised and

deceptively marketed. **Ana Webb, Mark Webb, Sabino Webb, the Webb family, and other non-suspecting consumers bought the Volvo 850** so that they could be driving Volvo's promise of safety. Volvo broke its promise - not only to the Webb family, but to every family and purchaser of the Volvo 850. Volvo also broke its promise to its very own reputation for safety, to every Volvo owner, and to the consumer public. Volvo wasn't selling the promise of safety; Volvo was selling the lie of safety.


Pg 28 ¶5

5.      Volvo engaged in deceptive trade practices in its marketing, advertising, and selling of the Volvo 850 by using false or misleading press releases, literature, promotional material, marketing, and advertising campaign regarding the purported safety of the Volvo 850 and the Side Impact Protection System (SIPS).

(ECF No. 12.)

In sum, even a cursory reading of Plaintiffs' Amended Complaint shows that the crux of plaintiff's claims are not grounded in fraud, but rather center around Volvo's false advertisements and other deceptive trade practices. As such, plaintiffs' claims are not subject to the heightened pleading requirements of Rule 9(b), and for these reasons, defendants' motion must be denied.

Nevertheless, assuming, *arguendo,* that all of these counts trigger the pleading requirement of Rule 9(b), Plaintiffs' Amended Complaint satisfies that requirement. It is well settled that "the particularity demands of pleading fraud under Rule 9(b) in no way negate the commands of Rule 8." Vicom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 776 (7th Cir. 1994) (citations omitted); see generally 5 Wright & Miller, § 1281 at 520-21 (pleading fraud with particularity under Rule 9(b) should be done consistently with the general philosophy of Rule 8); 2A Moore's Federal Practice P 8.13, at 8-58 (2d ed. 1995) (the requirements of Rule 8 apply "even where the Rules command particularity, as in the pleading of fraud under Rule 9 (b)").

"Rule 9(b) requires plaintiffs to plead with particularity  the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Walter v. Palisades Collection, LLC, 480 F. Supp. 2d 797 (E.D. Pa. 2007).

However, "Rule 9(b) was not intended to require a plaintiff to know every detail before he or she could plead fraud." United States of America v. Kensington Hosp., 760 F.Supp. 1120, 1125 (E.D. Pa. 1991). In fact, the Third Circuit Court of Appeals has rejected strict application of Rule 9(b). Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984), cert. denied, 469 U.S. 1211, (1985). In Seville, the Court stated that:

> Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in [Rule 9(b)] requires them.

Seville, 742 F.2d at 791. The Court went on to hold that Rule 9(b) had been satisfied based largely on "a list identifying with great specificity the pieces of machinery that were the subject of the alleged fraud." Id.

In addition, the Third Circuit Court of Appeals has admonished district courts applying Rule 9(b) that "focusing exclusively on its 'particularity' language is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." Christidis v. First Pa. Mortg. Trust, 717 F.2d 96, 100 (.3d Cir. 1983). Instead, the Third Circuit Court of Appeals instructs that "Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Seville, 742 F.2d at 791.

Thus, neither the case law cited by defendants nor Fed. R. Civ. P. 9(b) applies here. Hence, Plaintiffs' Amended Complaint need only meet the ordinary notice requirements set forth in the Federal Rules of Civil Procedure and is not subject to the heightened pleading requirements that fraud would require. Nevertheless, plaintiffs' claims are pled with sufficient particularity to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) if they are applicable. Here, because plaintiffs have placed defendants on notice of the precise misconduct with which they are charged, examples of the false advertisements published by the defendants

and distributed to the consumer public, plaintiffs have amply satisfied the standards of both the Third Circuit and of Fed. R. Civ. P. 9(b) in its detailed, one hundred ninety-one (191) paragraph Amended Complaint.

However, should this Honorable court rule that Rule 9(b) is applicable in the instant matter, and that plaintiffs' allegations violate the mandate of Rule 9(b), plaintiffs can easily cure any defect in their pleadings, to add facts already known to Volvo (which will be brought out in discovery). As the Third Circuit explained:

> Ordinarily where a complaint is dismissed on Rule 9(b) "failure to plead with particularity" grounds alone, leave to amend is granted. See Shapiro, 964 F.2d at 278; Luce v. Edelstein, 802 F.2d 49, 56-57 (2nd Cir.1986); Yoder v. Orthomolecular Nutrition Institute, Inc., 751 F.2d 555, 561-62 & n.6 (2nd Cir. 1985) (citation omitted).

In Re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1435 (3d Cir. 1997). This remains true even where the pleading has already been amended once. Id. n.2; see also Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir.2001) ("Where, as here, plaintiffs specifically request leave to amend in the event that the court is inclined to dismiss on Rule 9(b) grounds, the failure to grant leave to amend is an abuse of discretion unless the plaintiff has acted in bad faith or the amendment would be futile."). Accordingly, in the event the Court is inclined to grant Defendants' Motion on the basis of failure to comply with Rule 9(b), any dismissal of Counts I and II should be without prejudice and with leave to replead those counts.

## III. Conclusion

For all the reasons set forth above, Defendants' Motion for a More Definite Statement or, in the alternative, Defendants' Motion to have Counts I and II dismissed, should be denied in its entirety, and Defendants should be directed to file an Answer to Plaintiffs' Amended Complaint.

In the alternative, if the Court is inclined to Dismiss Counts I and II on the basis of Rule 9(b), it is respectfully requested that leave to amend be granted.

*****
*Respectfully submitted,*

FRANCIS ALEXANDER, LLC

/s/ Francis Malofiy
Francis Malofiy, Esquire
Attorney ID No.:  208494
The Beasley Building
1125 Walnut Street
Philadelphia, PA 19107
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiffs*
*/d/ October 21, 2013*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFF'S ANSWER TO THE MOTION OF DEFENDANTS VOLVO CARS OF NORTH AMERICA, LLC AND VOLVO CAR CORPORATION FOR MORE DEFINITE STATEMENT AND ALTERNATIVELY, MOTION TO DISMISS COUNTS I AND II was filed with the United States District Court Eastern District of Pennsylvania on October 21, 2013 via electronic mail and/or via the ECF Filing System and served upon all counsel of record:

Richard B. Wickersham, Jr., Esquire
POST & SCHELL, P.C.
Four Penn Center
1600 JFK BLVD. | 13th Floor
Philadelphia, PA 19103
T: (215) 587-6612
F: (215) 320-4875
E: rwickersham@postschell.com


Peter W. Herzog, III, Esquire
BRYAN CAVE LLP
211 N. Broadway, Suite 3600
St. Louis, MO 63102
T: (314) 259-2000
F: (314) 259-2020
E: pwherzog@bryancave.com

*****

*Respectfully submitted,*

FRANCIS ALEXANDER, LLC

/s/ Francis Malofiy
Francis Malofiy, Esquire
Attorney ID No.:  208494
The Beasley Building
1125 Walnut Street
Philadelphia, PA 19107
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiffs*

*/d/ October 21, 2013*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK WEBB AND ANA WEBB<br>Individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*<br><br>V.<br><br>VOLVO CARS OF N.A., LLC<br>*and*<br>VOLVO CAR CORPORATION<br>*and*<br>VOLVO CAR UK LIMITED<br>*and*<br>VOLVO CARS OF N.A., INC.<br>*Defendants* | CIVIL ACTION NO.: 13-2394<br><br><br>*JURY TRIAL DEMANDED* |

[PROPOSED] ORDER

AND NOW, this _____ day of _____, 2013, upon consideration of Defendants Volvo Cars of North America, LLC's and Volvo Car Corporation's Motion for More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) as to All Counts and, Alternatively, to Dismiss Counts I and II Pursuant to Fed. R. Civ. P. 9(b), and Plaintiffs' response and Memorandum of Law In Opposition thereto, it hereby ORDERED and DECREED and that said Motion is DENIED.

BY THE COURT,

_____
THE HONORABLE MICHAEL M. BAYLSON
UNITED STATES DISTRICT JUDGE