# Exhibit A

**POST & SCHELL, P.C.**
BY: RICHARD B. WICKERSHAM, JR.
I.D. #: 49466
13TH FLOOR
FOUR PENN CENTER
1600 JOHN F KENNEDY BLVD.
PHILADELPHIA, PA 19103
215-587-6612
FAX: (215) 320-4875

ATTORNEYS FOR DEFENDANTS,
VOLVO CAR CORPORATION AND
VOLVO CARS OF NORTH AMERICA,
LLC

MARK WEBB, Administrator for the Estate of
SABINO WEBB, deceased,

Plaintiff,

v.

VOLVO CARS OF NORTH AMERICA, LLC,
VOLVO CAR CORPORATION, GRACO
CHILDREN'S PRODUCTS, INC., NEWELL
RUBBERMAID, INC., WILLIAM JULIAN
and ANA SOARES,

Defendants.

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

MAY TERM, 2011

NO. 0208

## DEMAND FOR ORAL ARGUMENT

Defendants', Volvo Car Corporation and Volvo Cars of North America LLC, demand oral argument on their Joint Motion for Partial Summary Judgment as to Count V of Plaintiff's Second Amended Complaint pursuant to Pa. R.C.P. 211.

Respectfully submitted,

**POST & SCHELL, P.C.**

BY: _____

**DATED:** September 16, 2013

RICHARD B. WICKERSHAM, ESQUIRE
ROBERT J. BALCH, ESQUIRE
Attorneys for Defendants, Volvo Cars of
North America, LLC and Volvo Car
Corporation

**POST & SCHELL, P.C.**
BY: RICHARD B. WICKERSHAM, JR.
I.D. #: 49466
13TH FLOOR
FOUR PENN CENTER
1600 JOHN F KENNEDY BLVD.
PHILADELPHIA, PA 19103
215-587-6612
FAX: (215) 320-4875

ATTORNEYS FOR DEFENDANTS,
VOLVO CAR CORPORATION AND
VOLVO CARS OF NORTH AMERICA,
LLC

---

MARK WEBB, Administrator for the Estate of
SABINO WEBB, deceased,

                 Plaintiff,

          v.

VOLVO CARS OF NORTH AMERICA, LLC,
VOLVO CAR CORPORATION, GRACO
CHILDREN'S PRODUCTS, INC., NEWELL
RUBBERMAID, INC., WILLIAM JULIAN
and ANA SOARES,

                 Defendants.

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY


MAY TERM, 2011

NO. 0208

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT
## AS TO COUNT V (UNFAIR TRADE PRACTICES
## AND CONSUMER PROTECTION LAW)
## OF THE SECOND AMENDED COMPLAINT

As has now been clearly demonstrated by the record, there is no evidence to support the

attorney's allegation that Volvo Car Corporation and/or Volvo Cars of North America, LLC ever

advertised or represented the Volvo 850 with rear "door bars."   In continuing acts which

unfortunately but truly demonstrate unethical conduct,[1] plaintiff's counsel appends a brochure

involving a Volvo **900 Series** automobile which has a pictorial of that different vehicle design

which actually does contain rear "door bars" by design and appends a single page from an

---

[1]      Pa.R.P.C. 3.1 (lawyer shall not assert an issue unless a basis in fact for doing so);
3.3(a)(1) (making false statements of material fact to tribunal); 3.3(a)(3)(offering evidence that the lawyer
knows to be false).   Disclosure is hereby made to this Court pursuant to Pa.R.P.C. 3.3(b).

Case ID: 110500208
Control No.: 13081072

unauthenticated "brochure" from a non-party! Counsel for plaintiff represents to this Court in text that the pictorial is an 850 (it is not), and that the "brochure" was issued by the Defendants (also not accurate). These are purposeful misrepresentations. The non-evidentiary "Preamble" by plaintiff's counsel of course does not attach the actual, complete Volvo 900 Series brochure or the full suspect non-party brochure because we would not want the real facts to get in the way of his attempt to ruse this Court.

The actual Volvo **900 Series** brochure has the following, captioned, pictorial (which has been redacted and altered by opposing counsel):



A true and correct copy of Werberg Exhibit 11, is attached hereto as Exhibit "1."[2]  The Volvo **900 Series** vehicle is not on trial in this civil action which attacks the "crashworthiness" of the Volvo **800 Series**, specifically the Volvo 850, a mid-size passenger vehicle.

The unauthenticated non-party printed brochure incorporated at page 5 of the Answer in Opposition contains the following publication identification on its last page:

---

[2]     A true and correct copy of Werberg-9 is also attached as Exhibit "2" for the Court to further demonstrate the "games" and liberties that opposing counsel is taking with evidence in this civil action.

Case ID: 110500208
Control No.: 13081072

# VOLVO

**Volvo Car UK Limited**
Globe Park, Marlow, Buckinghamshire SL7 1YQ

1/94/90009615-7/25

An unathenticated copy of the suspect printed brochure cover/backer is attached hereto as Exhibit "3." The parties to this civil action are Volvo Car Corporation and Volvo Cars of North America, LLC, <u>not</u> the purported publisher of the unauthenticated printed brochure by a company named Volvo Car UK Limited -- which is located on a different continent.[3]

Only once we move past counsel's continuing misrepresentations upon the Court, is a sensible review of the merits of the instant partial summary judgment motion possible.

## I.   **REPLY ARGUMENTS**

### A.   **Coordinate Jurisdiction Rule Inapposite**

Despite the rhetoric of opposing counsel, or his use of excessively large and bolded fonts, the prior summary judgment denial of Judge Allen on a prior, similar summary judgment application almost a year ago is inapposite to the instant motion. The instant motion is ripe and is in no way precluded by a prior application for summary judgment by Volvo. Volvo relies upon the actual language of Pa.R.Civ.P. 1035.2(2), language adopted by the Pennsylvania Supreme Court, a summary judgment motion brought under subsection (2), as in this pending motion, may <u>only</u> be brought "**after the completion of discovery relevant to the motion, including the production of expert reports**" and determines whether, given that discovery, "the party who will bear the burden of proof at trial **has failed to produce** evidence of facts essential to the cause of action...." <u>Pa. R.C.P.</u> 1035.2(2) (emphasis added). Volvo has presented the lone legal authority to this Court where the interplay of the coordinate jurisdiction rule and Rule

---

[3]    See <u>also</u> Argument "B" or "C," <i>infra.</i>

Case ID: 110500208
Control No. 13081072

1032.2(2) has been adjudicated. See Martucci v Depoety, 28 Craw. 399 (CCP Crawford Co. 2009)("The Plaintiffs' claim that the Defendant's current motion should be dismissed solely on the basis that [another previous judge] already ruled on the matter is without merit. This is not an instance where a judge of coordinate jurisdiction is revisiting a prior ruling. This is a separate motion [pursuant to Rule 1035.2(2)] that is based upon new evidence having been submitted, and this Court's assessment of the current motion for summary judgment will not upset a prior ruling or involve reopening of questions previously decided in violation of the coordinate jurisdiction rule.").[4]

Respectfully, Volvo is positive that the express language of Rule 1032.2(2) and the analysis of the Martucci decision are legally correct and authorize this Court's review of the instant partial summary judgment application at this time.

### B.    No Standing Further Demonstrated By New Class Action Suit Filed

Actions speak louder than words.   When Volvo filed its initial summary judgment application arguing no issue of fact on a lack of standing, it correctly pointed out that neither Mr. Webb nor Mrs. Webb had asserted any individual claims in this civil action, the lawsuit was commenced solely on behalf of the Estate of Sabino Webb. Compare Motion for Partial Summary Judgment at ¶6 (and supporting evidence) and Answer in Opposition at ¶6 (Plaintiff's refusal to respond as required by Pa.R.Civ.P. 1035.3(a)). Recognizing the avoidable but significant error, opposing counsel filed a separate suit in federal court making the exact same statutory Unfair Trade Practices and Consumer Protection Law claim based upon the exact same

---

[4]      Not a single decision cited by Plaintiff addresses the interplay of Rule 1032.2(2) and the coordinate jurisdiction rule. Indeed, even if one were to apply the inapposite line of decisions cited by Plaintiff in opposition, the "substantial change in the facts or evidence" is that after deposing corporate designees of both Volvo parties, and having paid handsomely "experts" to investigate this claim, not a single piece of evidence has been presented that both (or either) Volvo Car Corporation and Volvo Cars of North America, LLC (much less the predecessor company Volvo Cars of North America, Inc.) ever advertised or represented the Volvo 850 with rear "door bars" in all four doors as counsel misrepresents to this Court. Since Plaintiff has no evidence that supports this claim, after the close of discovery and exchange of expert reports, partial summary judgment is required at this time. Pa.R.Civ.P. 1035.2(2).

Case ID: 110500208
Control No.: 13081072

set of facts asserted herein. See Complaint - Webb v Volvo Car Corporation, et al., USDC No. 13-2394 (filed May 1, 2013), attached hereto as Exhibit "4."

And thus the law checks in with additional support for the grant of partial summary judgment. The prior pending action (*lis pendens*) doctrine prevents the maintenance of duplicative actions against Volvo by the same parties. See *e.g.* Richner v. McCance, 13 A.3d 950, 957-58 (Pa. Super. 2011); Ferrick Constr. Co. v. One Beacon Ins. Co., 2004 Phila. Ct. Com. Pl. LEXIS 70 (2004). Attorney Malofiy could not, under the prohibitions of Fed.R.Civ.P. 11, have filed a duplicative action by the same parties against Volvo Car Corporation or Volvo Cars of North America, LLC in federal court. This further confirms that this civil action is filed solely by the Estate of Sabino Webb and not the so-called "family" as advanced in mere argument by opposing counsel.[5]   Actions speak louder than words!

Thus the facts of this civil action commenced solely on behalf of the Estate of Sabino Webb, as opposed to the federal suit commenced on behalf of both Mr. and Mrs. Webb, alone demonstrate that this claim fails because of the inability of the 60-day infant to pursue such a statutory UTPCPL claim. Factually, the record presented to this Court is undisputed. The infant did not purchase the subject Volvo 850. The infant could not as an undisputed fact have read or relied upon any advertising of Volvo (any Volvo entity, domestic or foreign) – whether it made

---

[5]        Plaintiff's citation to Pa.R.Civ.P. 2027 for the proposition that Sabino Webb is a purchaser of the Volvo 850 due to his parent's judgment is misinformed. The Rule is designed to protect minors' interests in court, as a guardian would eliminate any possible inequities or abuses from which a minor could not protect him or herself. However, the Plaintiff herein wants to use Rule 2027 to create causes of action unavailable to the minor by using decedent as a plaintiff-by-proxy and impute an unavailable statutory cause of action to the decedent. Creating such a right in a "non-purchaser" is the job of the Legislature, not of our courts. Even assuming, however, *arguendo* that plaintiff's claims with regard to Rule 2027 were true, which is denied, Ana (Soares) Webb was the sole purchaser of the car, as evidenced by title being solely in her name. See Exhibits "C-E." Mark Webb was no more the purchaser of the car than Sabino Webb, and therefore Plaintiff's entire Rule 2027 argument is an exercise in futility.

Case ID: 110500208
Control No.: 13081072

misrepresentations or not regarding rear "door bars." The "standing" decisions cited by Volvo have not been distinguished or dismissed by the opposition at all – simply ignored! See Bracciale v. Nationwide Mut. Fire Ins. Co., 1994 U.S. Dist. LEXIS 198, Civil No. 92-7190 (E.D. Pa. Jan. 12, 1994) (holding that a child has **no standing under the UTPCPL when his parents engage in a transaction for a product to the benefit of the child,** because the child did not engage in any transaction himself); see also Katz v. Aetna Casualty & Surety Co., 972 F.2d 53, (3d Cir. 1992) ("[T]here is no indication that the court would have extended the private cause of action to a plaintiff lacking any commercial dealings with the defendant."); Funston v Clements, 56 Ches.Co.Rep. 401 (2008)("[I]t is clear the act is meant to provide protections to consumers, not parties benefited by another's consumption."); Greencort Condominium Assoc. v Greencort Partners, No. 0401-4045 (CCP Philadelphia Co., April 30, 2004)("This statute unambiguously permits only persons who have purchased or leased good or services to sue ... [unit owner association] is not a purchaser as intended by the UTPCPL. Hence, it is statutorily precluded from bringing a private cause of action under the UTPCPL."); Bonacci v. Save Our Unborn Lives, Inc., 11 Pa. D. & C. 3d 259, 262 (CCP Philadelphia Co., July 9, 1979).

Nevertheless, Plaintiff's opposition fails to articulate why Sabino Webb should be considered a purchaser despite a complete lack of privity whatsoever between him and Volvo. Instead, Plaintiff's Opposition Memorandum relies exclusively upon the decision of Valley Forge Towers South Condominium v. Ron-Ike Foam Insulators, 574 A.2d 641 (Pa. Super. 1990), aff'd 605 A.2d 798 (Pa. 1992). In Valley Forge, a condo association entered into a contract with defendant Ron-Ike, by which Ron-Ike agreed to install a roofing membrane manufactured by a second defendant, Mameco. Id. at 642 – 43. Ron-Ike purchased the roofing membrane on behalf of and having received reimbursement from the condo association. Id. Upon Ron-Ike

Case ID: 110500208
Control No. 13081072

completing their installation, Mameco issued a ten-year warranty directly to the condo association. Id. at 643.[6] Two years later, when the roof began to leak, the condo association alleged that Mameco was unresponsive to their requests to honor the warranty, and initiated litigation claiming, among other things, violation of the UTPCPL. Id. Mameco's Preliminary Objections alleged that the condo association was not a "purchaser" as contemplated by the UTPCPL. Id.

Note that this was a sale directly by and between Mameco and the condo association! In order to bypass the privity requirement, the court stated that privity is not required when the third-party was **specifically intended to rely upon the fraudulent conduct** or when **reasonable reliance upon the conduct was specifically foreseeable**. Id. at 646, citing Woodward v. Dietrich, 548 A.2d 301, 312 – 16 (Pa. Super. 1988). The court thus held that because Mameco, as the seller allegedly committing unlawful business practices, had **actual notice** that the condo association was the **actual intended beneficiary** and **issued its warranty directly to plaintiff**, privity was not necessary for them to maintain a cause of action under the UTPCPL.[7]  Valley Forge, 574 A.2d at 646.  The holding in Valley Forge employs a very specific factual pattern;

---

[6]  Hence, to be analogous to this case, one would have to contrive facts which had Mrs. Webb negotiate for the sale of the Volvo 850 directly with Volvo (which she did not), for direct use of the vehicle by Sabino Webb (which it was not), with Sabino Webb paying Volvo directly for the vehicle (which neither he nor she did) and Volvo issuing a written warranty directly to Sabino Webb (which it did not). The attempt to rely upon the Valley Forge decision fails before we get past the facts of the case!

[7]  Again, to be analogous to the Valley Forge decision, we would have to contrive facts that the 60-day old Sabino Webb actually observed, comprehended and justifiably relied upon representations made by Volvo (which he did not), and that Volvo had actual notice of the sale of the 12 year-old Volvo 850 to Sabino Webb, or his mother in 2009 (which it did not), facts obviously not present in the record herein. The Volvo at issue, after all, was purchased in cash by Ana Webb from a friend of her husband's some 12 years and 150,000 + miles after the vehicle had left Volvo's control and entered the market. To suggest that Volvo had some connection with the minor Sabino that gives rise tn even a "jury question" on privity is ludicrous. Privity and nothing like it exists in this case.

Case ID: 110500208
Control No.: 13081072

one which has been consistently limited to its specific facts[8] and which is very distinct from the record in the instant case.

On all fours with this case, however, are the facts of <u>Bracciale v. Nationwide Mut. Fire Ins. Co.</u>, 1994 U.S. Dist. LEXIS 198, Civil No. 92-7190 (E.D. Pa. Jan. 12, 1994), which plaintiff refused to address, in which an individual's parents purchased a homeowner's insurance policy which covered their son, as he lived in the home at the time of the incident. <u>Id.</u> at *1 – 2. The court indicated that "[the son] never personally conducted a transaction with Nationwide [the seller] that could fall under the CPL. [He] never purchased or leased goods, exchanged consideration or was the victim of unequal bargaining power with [the seller]. In sum, there was no commercial bargaining or exchange between [the son] and Nationwide. **All such activities took place between [his] parents and Nationwide.**" <u>Id.</u> at *6. The court then rejected application of the <u>Valley Forge</u> holding to it's set of facts which are nearly identical to the current circumstances, and held that the homeowners' son was not a "purchaser" under the statute. <u>Id.</u> at *9. This Court should likewise reject Plaintiff's argument which depends exclusively on <u>Valley Forge</u>. Plaintiff is aware that he has no actionable UTPCPL claim – hence he and his wife have instituted a separate federal action seeking redress for alleged marketing by Volvo.

---

[8]     For example, the Third Circuit declined to extend the <u>Valley Forge</u> holding. In <u>Katz v. Aetna Casualty and Surety Co.</u>, 972 F.2d 53 (3d. Cir. 1992), the court held that although the <u>Valley Forge</u> holding did not always require strict privity, "there is no indication that the court would have extended the private cause of action to a plaintiff lacking any commercial dealings with the defendant." <u>Id.</u> at 57. Plaintiff is thus correct in that privity is not always required between an aggrieved individual and the initial seller, however, he mischaracterizes the context in which privity is not required, like here given the complete lack of any business transaction by Sabino Webb (much less the "Webb family") with Volvo at any level.

Case ID: 110500208
Control No.: 13081072

**C.      Plaintiff's Count V Is Solely Captioned As a Statutory Claim – Attempts To Assert Common Law Fraud, Misrepresentation or Deceit Claims Is Unavailing**

The argument *du jour* to seek resurrection of the failed statutory UTPCPL claim, is to claim entitlement to recovery under a common law "fraud," "misrepresentation" or "deceit," *etc.* These hypothetical causes of action, not pled in the Second Amended Complaint, suffer from the same real fatal flaws as the statutory claim – an actual misrepresentation by either Volvo entity sued in this civil action and reliance by a 60-day old infant!

First, nowhere in this record is there a single fact that either Volvo Car Corporation or Volvo Cars of North America, LLC represented (let alone misrepresented) that the Volvo 850 vehicle was designed (or manufactured) with rear "door bars" or "bars in all four doors" as unethically represented by opposing counsel.[9] Recognizing that lack of a factual record, Mr. and Mrs. Webb have in their federal suit named the purported publisher (Volvo Car UK Limited in England) of the representations which are sought to be held against the Volvo entities in this matter.  See Exhibit "4."  Plaintiff cannot proceed on an argument that the unauthenticated representation made by a different corporate entity on another continent is chargeable to the Volvo entities in this civil action!

Secondly, in order to establish common law fraud (i.e. intentional misrepresentation) in the Commonwealth of Pennsylvania, one must establish the following elements:

1.      A misrepresentation;

2.      A fraudulent utterance thereof;

---

[9]      Note the consistency of statements by each Volvo entity that is a party to this civil action from pleading through discovery and depositions the neither of them ever represented the presence of rear "door bars" in the Volvo 850. See Opposition Memorandum at pp. 40-42.  Note how Plaintiff's opposition denies as a "legal conclusion" the averments in the Motion for Summary Judgment (*e.g.* ¶¶24-25, 27-28) that neither of these entities so represented the Volvo 850.  So, before this Court, there is no witness, no document, no nothing which connects either Volvo party to this civil action with the alleged misrepresentations articulated solely by counsel.  Attorney Malofiy made these same unsupported allegations in the newly filed federal action, and a Motion to Dismiss (Fed.R.Civ.P. 12(b)) is currently pending before the federal court (ECF No. 4).

Case ID: 110500208
Control No.: 13081072

3.     **An intention by the maker that the recipient will thereby be induced to act;**

4.     **Justifiable reliance by the recipient upon the misrepresentation;** and

5.     Damage to the recipient as a proximate result.

See Pittsburgh Nat'l Bank v. Larson, 507 A.2d 867, 869 (Pa. Super. 1986), citing Delahanty v. First Pennsylvania Bank, N.A., 464 A.2d 1243, 1252 (Pa. Super. 1983). Similarly, misrepresentation requires reliance by the party acting on the misrepresentation. Misrepresentation requires:

1.     A misrepresentation of material fact;

2.     Which the speaker knows is a misrepresentation or makes without knowledge as to its truth or falsity, or under circumstances under which he should have known of its falsity;

3.     The representor must intend the representation to induce another to act on it; and

4.     **Injury must result <u>to the party acting in justifiable reliance</u> on the misrepresentation.**

See Gibbs v. Earnst, 647 A.2d 882, 890 (Pa. 1994). Thus, the only difference between negligent misrepresentation and intentional misrepresentation (i.e. fraud) is the relative knowledge of the speaker as to the truth of the statement being made. Id.

Both theories of liability, however, require **reliance** on the part of the injured individual. Volvo has sufficiently set forth the undisputed record regarding any claimed reliance by the 60-day old infant in its original legal memorandum and above, *supra*, which is incorporated herein by reference.

Case ID: 110500208
Control No.: 13081072

## II.   **RELIEF REQUESTED**

Partial summary judgment is a means to eliminate the waste of time and resources of litigants and the courts in cases where a trial on the claim would be a useless formality. Liles v. Balmer, 567 A.2d 691 (Pa. Super. 1989), app. denied, 663 A.2d 692 (Pa. 1995).  For the reasons set, Defendants, Volvo Car Corporation and Volvo Cars of North America, LLC, respectfully request that this Honorable Court enter an Order granting Partial Summary Judgment in their favor and dismissing Count V (Unfair Trade Practices And Consumer Protection Law) of the Second Amended Complaint with prejudice.[10]  Pa.R.C.P. 1035.2(2).

Respectfully submitted,

**POST & SCHELL, P.C.**

**BY**: _____

**DATED:**  September 16, 2013

RICHARD B. WICKERSHAM, ESQUIRE
ROBERT J. BALCH, ESQUIRE
Attorneys for Defendants,
Volvo Cars of North America, LLC
and Volvo Car Corporation

---

[10]   To the extent it even needs to be stated, Volvo denies that it's Volvo 850 was not "crashworthy" or designed/manufactured properly and will prove that before the jury, if necessary.  At issue herein is the partial dismissal of a claim that is not even arguably legally sufficient to reach a jury for consideration. Pa.R.C.P. 1035.2(2).

Case ID: 110500208
Control No.: 13081072

# Reply Memo Exhibit "1"

# [Werberg-11]

Case ID: 110500208
Control No.: 13081072

**O**ver the years, Volvo has built a reputation for safe, reliable, long lasting cars. But when you're cruising comfortably down the highway in your Volvo, you may not be thinking about the components that make up this very unique automobile. Beneath the brilliant finish of every Volvo are some 5,500 parts; each a product of extensive research and development, expertly engineered to work in harmony, interacting to create a car with very special characteristics.

But if your Volvo has been in an accident, some insurance companies may try to save money by telling you to install what they call "quality replacement parts" or "imitations" instead of Genuine Volvo body parts. These imitation parts may save *them* money, but using them could be very costly for you in terms of performance, value and **SAFETY**.

The stringent requirements that make a Volvo what it is go into every component in the vehicle. Non-genuine parts may look just like the genuine part, but looks can be very deceiving. Here are some important reasons why:



900 Series Side Impact Protection System

## S.I.P.S.

**S**ide Impact Protection System is a unique Volvo safety development which involves strengthening of the B-pillar and floor members, a reinforced door sill and roof rail. These enhancements play an important role in dissipating crash forces throughout the car body by redirecting them around the safety cage. In addition, Genuine Volvo interior door panels have the flexibility needed to provide even greater crash energy absorption.

## FIT

**I**mitation body parts are simply not made to Volvo's rigid specifications. Genuine Volvo body parts are manufactured to the tightest tolerances so you get parts that fit like new.

## SAFETY

**T**he structural integrity of your Volvo depends on the quality of every body part used. They all work together as part of a complex system designed to optimize your safety in the event of an accident.

Genuine Volvo hoods, for example, are an integral part of the front energy absorbing structure. In the event of an accident, the genuine hood is designed to fold so that it doesn't go through the windshield. It is also designed to stay firmly attached to the car body. Non-genuine hoods could go right through the windshield. Pieces of the hood assembly may break loose, which could pose a serious threat to your safety.

Another good example is Genuine Volvo glass. Non-genuine glass may **NOT** be manufactured to Volvo's specifications and high quality standards. This can result in improper fit, which could cause the glass to break more easily or come loose during an accident.

## DISCLOSURE

**D**id you know that you've got the right to decide what parts are installed on your car? Many states have passed laws specifically defining these rights. So find out about your state's disclosure laws, and read your auto insurance policy carefully before signing. Be sure to ask for an explanation of your repair estimate and always **DEMAND** that only Genuine Volvo body parts be installed on your Volvo.

EXHIBIT
Wenberg
11
PENGAD 800-631-6989

Case ID: 110500208
Control No.: 13081072

# Reply Memo Exhibit "2"

# [Werberg-9]

Case ID: 110500208
Control No.: 13081072





### S.I.P.S.

**S**ide Impact Protection System is a unique Volvo safety development which involves strengthening of the B-pillar and floor members, a reinforced door sill and roof rail. These enhancements play an important role in dissipating crash forces throughout the car body by redirecting them around the safety cage. In addition, Genuine Volvo interior door panels have the flexibility needed to provide even greater crash energy absorption.



EXHIBIT
weneme
9
PENGAD 800-631-6989

Case ID: 110500208
Control No.: 13081072

# Reply Memo Exhibit "3"

# [Unauthenticated Non-Party Brochure]

Case ID: 110500208
Control No. 13081072



Case ID: 110500208
Control No.: 13081072



Leather Upholstery featured is available as an option.

10

Case ID: 110500208
Control No.: 13081672






Case ID: 110500208
Control No.: 13081072



**Volvo Car UK Limited**
Globe Park, Marlow, Buckinghamshire SL7 1YQ

Case ID: 110500208
Control No.: 13081072

1/94/90009615-7/25

# Reply Memo Exhibit "4"

# [Parent's Federal Complaint]

Case ID: 110500208
Control No. 13081072

$400

MMB

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

MARK WEBB AND ANA WEBB,
Individually and on behalf of all others similarly
situated,
    *Plaintiffs*

    V.

VOLVO CARS OF N.A., LLC
    *and*
VOLVO CAR CORPORATION
    *and*
VOLVO CAR UK LIMITED
    *and*
VOLVO CARS OF N.A., INC.
    *Defendants*

CLASS ACTION

NO.: **13   2394**

*JURY TRIAL DEMANDED*

## FILED
MAY - 1 2013
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

---

# COMPLAINT - CLASS ACTION

    Mark Webb and Ana Webb, (together, "Plaintiffs"), bring this action against defendants
Volvo Cars of North America, LLC ("VCNA"), Volvo Car Corporation ("VCC"), Volvo Car
UK Limited ("VCUL"), and ("VCNA-INC") (collectively "Defendants" or "Volvo"), by and
through the law firm Francis Alexander, LLC and their lawyer Francis Alexander Malofiy,
Esquire, individually and on behalf of all others similarly situated, and allege as follows:

Case ID: 110500208
Control No.: 13081072

## PREAMBLE

1.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a nationwide class of current and former Volvo vehicle owners and lessees of the Volvo 850 produced from 1997 – 1997 (the "Class Vehicles").[1]

2.      Mark and Ana Webb had just bought a Volvo 850 because they wanted to be sure that their baby son, Sabino Webb, and there family would be transported in what she thought was one of the safest cars in America.  However, on May 4, 2009, her Volvo 850 was struck by another car, crashing into her passenger side doors.

3.      Mark and Ana Webb bought the Volvo 850 under the belief as it was advertised and marketed by Volvo – as having an innovative Side Impact Protection System (SIPS) with solid-steel anti-intrusion door bars on all four doors to protect against side-impact crashes which result in the largest percentage of fatalities.  Mark Webb and Ana Webb wanted their children to be safe.  What they didn't know is that Volvo's Side Impact Protection System (SIPS), as advertised and marketed, did not exist in the rear doors, in that, although the Volvo 850 was marketed and advertised with steel bars on all four doors, these door bars *did not exist in the rear doors.*

4.      Instead of using a solid steel anti-intrusion door bar, *as advertised,* to prevent intrusion into the *rear* passenger compartment, Volvo opted to insert a small, flimsy, lightweight, unsupported piece of corrugated plastic into the rear doors of the Volvo 850.  This small, flimsy-

_____

[1] Plaintiffs reserve the right to amend or add to the vehicle models included in the Class Vehicles after conducting discovery.

Case ID: 110500208
Control No.: 13081072

piece of plastic is euphemistically referred to by Volvo as their "innovative" Side Impact

Protection System (SIPS).[2]

5.      The Volvo 850 was not crashworthy nor was it designed properly or advertised

appropriately. The lack of adequate door reinforcement, enhanced the injuries by allowing the

impacting car to penetrate into the passenger compartment of the Volvo 850 by eight inches; the

child safety seat was fractured as was the infant's skull.

6.      Mark and Ana Webb watched their baby boy suffer as he grasped to the willows of

life. After seven days of suffering, and after Ana Webb having spent her only Mother's day with

her baby-boy Sabino, he lost his fight for life. Mark and Ana Webb lost their baby-boy Sabino

Webb who died prematurely on May 11th, 2009 due to blunt force injuries to the head because the

Volvo 850 failed to have door bars in the rear doors of the Volvo 850 (as it was advertised and

marketed by Volvo as having this specific safety feature).

7.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a

nationwide class of current and former Volvo vehicle owners and lessees of the Volvo 850

produced from 1997 – 1997 (the "Class Vehicles") under the legal causes of action as more fully

set forth herein.[3]

---

[2] See attached Volvo Service Manual exploded parts view illustrating the solid steel anti-intrusion door bar in the
front door; and in the rear door without such a solid steel door beam evidencing instead a flimsy piece of
corrugated plastic affixed with two plastic clips.

[3] This is not a personal injury case, a wrongful death case, or a survival action.

Case ID: 110500208
Control No.: 13081072

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.     Defendant Volvo is in the business among other things of designing, manufacturing, producing, selling, distributing, and marketing automobiles and carries on regular and substantial business worldwide, including throughout the Commonwealth of Pennsylvania.

10.    Venue in the Eastern District of Pennsylvania is proper because:

   a.   Defendant Volvo regularly conducts business in Pennsylvania and enters their products into the stream of commerce;

   b.   The Volvo defendants marketed and advertised the Volvo 850 in this district, and/or their marketing and advertising material was distributed, disseminated, or entered the borders of this district and was viewed, read, considered, and relied upon by consumers and Plaintiffs;

   c.   Volvo has received substantial revenue and profits from their sales and/or leasing of Class Vehicles in this district; therefore a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district;

   d.   Plaintiffs purchased this 1997 Volvo 850 in Pennsylvania; and

   e.   The accident occurred in Philadelphia County, Pennsylvania.

11.    As such, Volvo has conducted substantial business in this judicial district, and intentionally and purposefully placed Volvo Class Vehicles into the stream of commerce within the districts of Pennsylvania and throughout the United States.

11.    The named Plaintiffs are citizen of Pennsylvania and they seeks to certify and represent a national class of owners and lessees of Volvo Class Vehicles, constituted of citizens of

Case ID: 110500208
Control No.: 13081072

states different than that of one or more defendants and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

Case ID: 110500208
Control No.: 13081072

## PARTIES

12.     Plaintiff Mark Webb is a citizen of the Commonwealth of Pennsylvania and resides in Philadelphia, PA. Mark Webb purchased a 1997 Volvo 850 on May 1, 2009.

13.     Plaintiff Ana Webb is a citizen of the Commonwealth of Pennsylvania and resides in Philadelphia, PA. Ana Webb purchased a 1997 Volvo 850 on May 1, 2009.

14.     Defendant, Volvo Cars of N.A., LLC, is a corporation incorporated and existing under the laws of the State of Delaware. Volvo Cars of N.A., LLC's registered address is: 1 Volvo Dr., Rockleigh, NJ 07647, United States. Volvo Cars of N.A., LLC's principal place of business is: 1 Volvo Dr., Rockleigh, NJ 07647, United States. Defendant's telephone number, including area code is 210-768-7300.

15.     Defendant, Volvo Cars of N.A., LLC, is a subsidiary of Sweden's **Volvo Car Corporation**; with a registered address as follows: VAK Building, Assar Gabrielssons väg Göteborg SE-40-5 31, Sweden; with its principal place of business: VAK Building, Assar Gabrielssons väg Göteborg SE-40-5 31, Sweden. Defendant's telephone number, including area code is +46-31-59-00-00.

16.     Defendant, Volvo Car UK Limited, is an entity of unknown form with a registered address believed to be Scandinavia House; Norreys Drive; Maidenhead; Berkshire, SL6 4FL. Defendant's telephone number: 01628 422200.

17.     Defendants, Volvo Car UK Limited, is believed to be a subsidiary of Sweden's **Volvo Car Corporation**; with a registered address as follows: VAK Building, Assar Gabrielssons väg Göteborg SE-40-5 31, Sweden; with its principal place of business: VAK Building, Assar Gabrielssons väg Göteborg SE-40-5 31, Sweden. Defendant's telephone number, including areabe incorporated and existing under the laws of the State of Delaware. Upon information and belief, Volvo Cars of N.A., Inc.'s registered address is: 1 Volvo Dr., Rockleigh, NJ 07647, United States. Upon information and belief, Volvo Cars of N.A., Inc's principal place of business is: 1 Volvo Dr., Rockleigh, NJ 07647, United States.

18.     Defendant, Volvo Cars of N.A., Inc., is a corporation believed to be incorporated and existing under the laws of the State of Delaware. Upon information and belief, Volvo Cars of

Case ID: 110500208
Control No.: 13081072

N.A., Inc.'s registered address is: 1 Volvo Dr., Rockleigh, NJ 07647, United States. Upon information and belief, Volvo Cars of N.A., Inc's principal place of business is: 1 Volvo Dr., Rockleigh, NJ 07647, United States.

19.     Defendant, Volvo Cars of N.A., Inc., is believed to be a subsidiary of Sweden's **Volvo Car Corporation**; with a registered address as follows: VAK Building, Assar Gabrielssons väg Göteborg SE-40-5 31, Sweden; with its principal place of business: VAK Building, Assar Gabrielssons väg Göteborg SE-40-5 31, Sweden. Defendant's telephone number, including area code is +46-31-59-00-00.

20.     Defendants, Volvo Cars of North America, LLC, Volvo Car Corporation, Volvo Car UK Limited, and Volvo Cars of North America, Inc. hereinafter may be referred to collectively and individually as (**"Volvo"**).

21.     Defendant, Volvo, develops, manufactures, and markets automobiles. Volvo distributes its products in many countries worldwide, with operations throughout North America.

22.     The Plaintiff Class is defined as and consists of: All individuals who purchased or leased a Volvo 850 vehicle, from 1991 through the present.

Case ID: 110500208
Control No.: 13081072

## SPECIFIC FACTUAL ALLEGATIONS AS TO PLAINTIFFS

23.     Plaintiffs hereby incorporate by reference each and every allegation in this Complaint as if fully set forth herein at length.

24.     On or about May 1, 2009, Plaintiffs purchased a 1997 Volvo 850 designed, manufactured and sold by defendants. Plaintiffs purchased a Volvo 850 because they wanted to be sure that their baby son, Sabino Webb, and their family would be in what they thought was the safest car in America. However, on May 4, 2009, their Volvo 850 was struck by another car, crashing into their passenger side doors of the Volvo 850.

25.     Plaintiffs bought the Volvo 850 under the belief as it was advertised and marketed by Volvo – as having an innovative Side Impact Protection System (SIPS) with solid-steel anti-intrusion door bars on all four doors to protect against side-impact crashes which result in the largest percentage of fatalities. Plaintiffs wanted their children to be safe. What they didn't know is that Volvo's Side Impact Protection System, as advertised and marketed, did not exist in the rear doors.

26.     Instead of using a solid steel anti-intrusion door bar, *as advertised,* to prevent intrusion into the *rear* passenger compartment, Volvo opted to insert a small, flimsy, lightweight, unsupported piece of corrugated plastic into the rear doors of the Volvo 850. This small, flimsy-piece of plastic is euphemistically referred to by Volvo as their "innovative" Side Impact Protection System (SIPS).[4]

27.     The Volvo 850 was not crashworthy nor was it designed properly or advertised appropriately. The lack of adequate door reinforcement, enhanced the injuries by allowing the impacting car to penetrate into the passenger compartment of the Volvo 850 by eight inches; the child safety seat was fractured as was the infant's skull.

---

[4] See attached Volvo Service Manual exploded parts view illustrating the solid steel anti-intrusion door bar in the front door; and in the rear door without such a solid steel door beam evidencing instead a flimsy piece of corrugated plastic affixed with two plastic clips.

Case ID: 110500208
Control No.: 13081072

28.    On May 4, 2009, William Julian ("Julian") was the operator of a 2006 Chrysler PT Cruiser, Pennsylvania License No. FJM-6954; VIN:   8A8FY68806T267191 (the "PT Crusier").

29.    On May 4, 2009, Ana Webb was the operator of Plaintiff's 1997 Volvo 850 Sedan, Pennsylvania License No. GLV-1425; VIN: YV16S5540V1396426 (the "Volvo 850").

30.    On May 4, 2009, at approximately 2:45 p.m., Julian was travelling alone in the PT Cruiser southbound on Tacony Street near the intersection with Fraley Street in Philadelphia County, Pennsylvania.

31.    On May 4, 2009, at approximately 2:45 p.m., Ana Webb was travelling with her two children, Donnie Webb and Sabino Webb in the Volvo 850.

32.    Donnie Webb and Sabino Webb were both properly fastened in child safety seats in the rear of the car.

33.    Ana Webb drove the Volvo 850 northbound on Tacony Street near the intersection with Fraley Street in Philadelphia County, Pennsylvania.

34.    On May 4, 2009, at approximately 2:45 p.m., the Volvo 850 was making a left onto Fraley Street.

35.    On May 4, 2009, at approximately 2:45 p.m., the PT Cruiser and the Volvo 850 were travelling in a reduced speed school zone.

36.    The PT Cruiser was also travelling in excess of the speed limit.

37.    The PT Cruiser was not travelling according to the reduce speed school zone.

38.    The PT Cruiser collided with the Volvo 850 (the "Collision").[5]

39.    At the time of the Collision, Julian was driving the PT Cruiser faster than the posted speed limit.

40.    At the time of the Collision, Julian was travelling in a reduced speed school-zone cross walk.

41.    At the time of the Collision, the road was damp.

---

[5] See attached Philadelphia Police Department's Incident Investigation Report No.: 0915046305.

9 OF 35

Case ID: 110500208
Control No.: 13081072

42.   At the time of the Collision, the road was wet.

43.   At the time of the Collision, it was raining.

44.   The PT Cruiser impacted both the passenger side front door and the passenger side rear door of the Volvo 850.

45.   The Volvo 850 passenger side front door appears to have provided adequate protection for the front passenger compartment.

46.   However, the Volvo 850 passenger side rear door did not provide adequate protection for the rear passenger compartment or the occupant.

47.   The impact of the two vehicles caused the passenger side rear door to deform inward.

48.   The passenger side rear door deformed inward and intruded into the rear passenger compartment by approximately 8 inches.

49.   The Volvo 850 B-pillar did not offer adequate support.

50.   The Volvo 850 passenger side rear door hinge snapped in the collision.

51.   The Philadelphia Police Department ("Police") was the first to respond to the report of an accident near the intersection of Tacony Street and Fraley Street in Philadelphia.

52.   At 2:56 p.m., Officer Hughes arrived on the scene and investigated the accident.

53.   The infant Sabino had suffered serious injuries and was transported to Saint Christopher's Hospital in critical condition.

54.   Sabino Webb was in Saint Christopher's Hospital for seven days while in critical care.

55.   Sabino Webb died prematurely on May 11th, 2009 due to blunt force injuries to the head.

56.   Plaintiffs watched their baby boy suffer as he grasped to the willows of life. After seven days of suffering, and after Ana Webb, having spent her only Mother's day with her baby-boy Sabino, he lost his fight for life. Mark and Ana Webb lost their baby-boy Sabino Webb who died prematurely on May 11th, 2009 due to blunt force injuries to the head *because of the lack of the door bars in the rear doors of the Volvo 850.*

Case ID: 110500208
Control No.: 13081072

57.    Sabino died prematurely on May 11th, 2009, one week after the accident, due to blunt force injuries to the head and the injuries he sustained as a result of the lack of adequate side impact protection of the Volvo 850 which enhanced the injuries and the defective design and construction of the Volvo 850.

Case ID: 110500208
Control No.: 13081072

## THE VOLVO BRAND – SAFETY FIRST

58.     Volvo defines, advertises, and promotes the brand as being **built on safety** and has extensively leveraged this public image of safety and the purported safety of their vehicles as part of their business design, image, and branding.

59.     The brand has long marketed and promoted the Volvos' historic reputation for solidity and reliability.

60.     Prior to strong government safety regulation Volvo had been in the forefront of safety engineering.

61.     Volvo has promoted its brand by indicating that **its guiding principal behind everything made at Volvo,** *is and must remain safety.*

62.     Volvo defines, advertises, and promotes its brand into four core values: Design, Environment, Quality, and Safety.

63.     Volvo defines, advertises, and promotes its brand with the core value of Safety being of most importance and predominance in their vehicles design and construction.

64.     Volvo defines, advertises, and promotes to the public its core value of Safety as *"Safety First. Always First"*

65.     Volvo defines, advertises, and promotes its brand with the moniker "Volvo. For life."

66.     Volvo defines, advertises, and promotes its brand by declaring that every Volvo built is the sum of more than 70 years of focusing on safety. This is defined by Volvo to mean that the consumer is not just buying a car, *they are buying and driving the promise of safety.*

67.     Volvo has also advertised "Volvo Safety Firsts" which is a list Volvo is very proud of and the innovations which are now found on many cars on the road.

68.     The general public recognizes the Volvo brand as defined, advertised, promoted, and proclaimed by Volvo to recognize Safety first; always first.

69.     Volvo has promoted and marketed itself as a leader in vehicle safety by having accomplished many safety milestones. These firsts include: Volvo's Traffic Accident Research Team which was established in 1970; and the SIPS – Side Impact Protection System in 1995.

Case ID: 110500208
Control No.: 13081072

70.     Volvo promotes and advertises to the public its many vehicle safety milestones.

71.     Volvo defines safety as, an effort to reduce injuries.

72.     Volvo has marketed its vehicles as some of the safest, smartest, most trusted cars on the road.

73.     Volvo further defines its role to reduce injuries in that Volvo sadly recognizes that accidents will probably always happen. But they don't have to cause injuries.

74.     Volvo has promoted the Volvo brand by stating the concern for safety is the cornerstone for Volvo, dating back to 1927 when the first Volvo rolled off the production line; three-point seat belts, safety cages, and energy-absorbing impact zones were designed into Volvo cars long before it was fashionable or required by government regulation.

75.     Volvo has advertised and marketed that it will not compromise its commitment to safety and that it will continue to seek out new safety features and to refine those already in our cars.

Case ID: 110500208
Control No.: 13081072

# VOLVO'S SIDE IMPACT PROTECTION SYSTEM ("SIPS") …

# A UNIQUE SAFETY SOLUTION FROM VOLVO[6]

76.     Safety is one of the most important design criteria in all Volvo cars.

77.     No modification or change is made to the design of a Volvo without its effect on safety being evaluated and verified.

78.     As early as 1976, Volvo defined, designed, built, advertised, promoted, and sold its brand as having doors which incorporate "anti-intrusion members"; "crumple zones to absorb crash impact"; and "immensely strong safety cages" where the driver and passengers travel.

79.     "The front and rear sections of a Volvo are crumple zones to absorb crash impact. The driver and passengers travel in an immensely strong safety cage. To protect against side swipes, each of the doors incorporates an anti-intrusion member."

80.     In 1991, Volvo was the first car manufacturer to incorporate the proclaimed life-saving innovation of their Side Impact Protection System ("SIPS").

81.     Volvo had recognized that in a side-impact collision, there is only around 6 to 8 inches of space between your head and the window.

82.     For this reason, Volvo designed SIPS - a specially engineered protective safety system to protect life by creating a safety cage around the occupants of the vehicle and prevent intrusion into the passenger compartment by incorporating a careful mix of steel grades in various strengths and thicknesses.

83.     Volvo door and side structure is made up of a combination of ultrahigh strength steel and softer grades to provide the necessary strength and carefully controlled deformation in a side impact.

84.     Years of study and research have gone into the development of Volvo's SIPS.

85.     Side impacts are the second most common type of accident after frontal collisions, accounting for approximately one out of every five accidents.

---

[6] See attached Volvo's Press Release "SIPS:   A Unique Safety Solution From Volvo" inclusive of picture illustrating the Volvo SIPS system **with door bars evidenced in the rear doors.**

Case ID: 110500208
Control No.: 13081072

86.     While most side impacts occur at relatively low speeds, they produce an extremely high number of serious injuries.

87.     Volvo's SIPS design objective was to significantly reduce both the number and severity of injuries in a side impact collision.

88.     For the '92 model year, all 700 and 900 series Volvos (predecessors to the 850 series) will feature a unique Side Impact Protection System (SIPS).

89.     The SIPS design is the direct result of research compiled by Volvo's accident investigation team based in Sweden.

90.     Volvo has defined, advertised and promoted its brand by recognizing by posturing its SIPS in stating that one in four accidentally are side-impact crashes.

91.     Fortunately, Volvos come equipped with SIPS.

92.     SIPS is Volvo's technologically advanced side impact protection system.

93.     Volvo recognizes that most cars these days have door bars, but the SIPS innovation goes much further.

94.     With the SIPS the energy of the crash is dispersed through special roof, door, and floor panels and the speed of the intrusion is actually reduced.

95.     Volvo claims that the benefits of the SIPS system allows one to believe in the car Volvo.

96.     Volvo claims most are familiar with how the crumple zones in the front and rear of Volvos deform to help absorb the energy of an impact before it reaches the occupants.

97.     Volvo recognizes that in a side impact, the distance between the impact and the occupant is very small.  Only the doors and the B-pillar separate the occupants from the impact site.

98.     For this reason Volvo designers realized the solution would require spreading the accident forces over a larger portion of the car's structure and reducing the intrusion into the passenger compartment.

99.     Volvo claims this would also result in lower acceleration forces acting on the occupants.

Case ID: 110500208
Control No.: 13081072

100.   Volvo claims that the solution, while largely invisible, consists of a further strengthening of the B-pillar, a reinforced door sill and roof rail, and strengthening of the floor members, all part of the SIPS.

101.   Volvo claims these SIPS changes play an important role in dissipating the crash forces throughout the car's body by redirecting them around the safety cage.

102.   Volvo further claims that the B-pillar reinforcement also reduces the passenger compartment intrusion and that the standard interior door panel on the car is sufficiently flexible to provide additional crash energy absorption.

103.   Volvo claims has claimed that once the SIPS concept was devised, a mathematical model was constructed to determine which components should be reinforced and by how much. Following the calculations, prototypes were built and tested in Volvn's safety laboratory.

104.   The tests confirmed SIPS' ability to transfer the impact energy from the doors and B-pillars to the roof, floor and sills.

105.   Volvo has claimed that with the SIPS the passenger compartment intrusion was significantly reduced, as was the acceleration passed on to the occupants.

106.   Volvo further claims that the testing also confirms that SIPS today, surpasses by a wide margin, the side impact standards which the government will require for model year 1994.

107.   Volvo further claims that these SIPS results indicated that in side collisions involving cars, a 25% reduction in the number of fatalities or serious injuries is possible in SIPS equipped cars.

108.   Volvo has claimed that the Volvo 850 is constructed as follows:

   a.   body panels are made of pressed-steel sections;

   b.   most components are welded together;

   c.   some use is made of structural adhesives;

   d.   the doors and door pillars are reinforced against side impacts as part of the side impact protection system (SIPS); and

Case ID: 110500208
Control No.: 13081072

      e.  as an enhancement to the structural Side Impact Protection System built into Volvos, the car is also equipped with Side Impact Protection System (SIPS) airbags.

109.     Volvo claims that SIPS can help reduce injuries in side impact collisions by approximately 40%.

110.     Volvo claims that this is because Volvos equipped with SIPS are built to optimize protection of the occupants in case of side impact by being designed as an interactive system with exterior and interior safety solution:

      a.  having a safety cage around the passengers designed as a network of steel profiles each of them with specific role during the deformation process.

      b.  the different properties having been achieved by using different grades of steel.

      c.  the entire side structure and the transverse members in the roof and floors interact to keep the passenger space as intact as possible in order to reduce injuries to occupants.

      d.  these factors contribute to the advanced interplay between the various safety solutions.

      e.  Volvo's SIPS system safety cage (as found on the 850 & onwards) absorbs and displaces energy in a side impact.  Compared to a car without side impact protection, the velocity at which the body of the occupant is hit by the door panel has been greatly reduced.

111.     SIPS is a unique Volvo safety development and is the latest in a long line of safety innovations which includes such ubiquitous items as the three-point self adjusting seat belt.

112.     Safety has been a primary design criterion at Volvo since the company produced its first car in 1927.

113.     All model year automobiles that were sold in the United States had to meet the new federal side-impact standards, including the Volvo 850.

114.     Most auto manufacturers incorporate Side Impact Protection Systems (SIPS) into the structure of their vehicles.

Case ID: 110500208
Control No.: 13081072

115.    The proclaimed innovator in this improved structural design system is Volvo.

116.    The Volvo side-impact system consists of specially designed structural members of the passenger cabin, reinforcement inside the doors and special side-impact airbags mounted along the outside edges of the front seats, the contour and surface of the door panel has also been designed to minimize intrusion and chance of injury to occupants.

117.    The Volvo 850 was advertised and marketed as having anti-intrusion door bars or beams built into all four doors.

118.    The Volvo 850 has strong steel beams welded inside the front doors but has no steel bars or beam welded inside the rear doors.

Case ID: 110500208
Control No.: 13081072

## SPECIFIC FAILURES OF THE VOLVO 850

### *No Anti-intrusion Door Bars or Beams or Adequate Side Impact Protection System to Prevent Intrusion and Enhanced Injury to the Rear Occupants of the Volvo 850*

119.   Initial and primary impact of the PT Cruiser colliding with the Volvo 850 was on the passenger side front door; secondary impact was on the passenger side rear door of the Volvo 850.

120.   The passenger side front door adequately prevented intrusion into the front passenger compartment because it was adequately reinforced by a solid steel anti-intrusion door bar which is known, advertised and defined as part of Volvo's their "Side Impact Protection System (SIPS)".

121.   The passenger side rear door did not prevent intrusion into the rear passenger compartment because it wasn't adequately reinforced and as a result of this lack of adequate reinforcement resulted in enhanced injuries to the injured occupant.

122.   The passenger side rear door did not have an anti-intrusion door bar or beam.

123.   The passenger side rear door did not prevent intrusion into the rear passenger compartment because it was not properly reinforced and did not provide adequate protection to the rear occupants of the Volvo.

124.   The passenger side front doors of the Volvo 850 incorporate a solid-steel anti-intrusion door bar to prevent intrusion into the front passenger compartment.

125.   The passenger side rear doors of the Volvo 850 do not have solid-steel anti-intrusion door bars.

126.   In fact, the passenger side rear doors of the Volvo 850 have no anti-intrusion door bars whatsoever.

127.   Instead of using solid steel anti-intrusion door bar to prevent intrusion into the rear passenger compartment, Volvo opted to insert a small, flimsy, lightweight, unsupported piece of corrugated plastic into the rear doors of the Volvo 850.

128.   This small, flimsy, lightweight, unsupported piece of corrugated plastic is euphemistically referred to by Volvo as their innovative Side Impact Protection System (SIPS).

Case ID: 110500208
Control No.: 13081072

129.   The Side Impact Protection system in the rear doors of the Volvo 850 is nothing more a small, flimsy, lightweight, unsupported piece of corrugated plastic.

130.   This small, flimsy, lightweight, unsupported piece of corrugated plastic does not offer adequate protection to rear occupants of the Volvo 850.

131.   This small, flimsy, lightweight, unsupported piece of corrugated plastic does not properly reinforce the doors, prevent intrusion into the rear passenger compartment, or protect the rear occupants from injury in the Volvo 850.

132.   The passenger side rear door lacked adequate door side-impact reinforcement.

133.   The lack of adequate door reinforcement allowed the impacting PT Cruiser to penetrate further into the passenger compartment than would have occurred with an adequately reinforced door.

134.   Typical side door reinforcements are constructed in the form of a steel beam that spans the length of the door, and acts as a guide rail or door bar.

135.   The incident vehicle was not equipped with a beam type reinforcement, but was equipped with what appears to be a honey comb material that does not span the door.

Case ID: 110500208
Control No.: 13081072

## ROLE AND KNOWLEDGE OF VOLVO

136.   Volvo recommends the proper use of restraint systems for all occupants including children.

137.   Prior to the events that form the basis of this Complaint, Volvo knew or should have known that the Passenger Protection Act 229 requires that children under the age of four (4) must be buckled into a child safety seat.

138.   Prior to the events that form the basis of this Complaint, Volvo knew or should have known that since the front seat of the Volvo 850 had an airbag, then the baby seat must be installed in the rear seat.

139.   Volvo has stated that babies must travel in rearward-facing seats.

140.   Prior to the events that form the basis of this Complaint, Volvo knew or should have known that state laws (including Pennsylvania) require children to ride in the backseats.

141.   Volvo has stated that all passenger seat positions in a Volvo are equally safe and that there is no best place in a Volvo to secure a baby seat.

142.   Prior to the events that form the basis of this Complaint, Volvo knew or should have known that the rear passenger seat positions of a Volvo 850 are not equally safe to other seat positions in the car.

143.   Prior to the events that form the basis of this Complaint, Volvo knew or should have known that the rear passenger seat positions of the Volvo 850 are not the best place to secure a child safety seat.

144.   Prior to the events that form the basis of this Complaint, Volvo knew or should have known that it is an extremely dangerous position to secure a child safety seat in a the rear seat position of the Volvo 850 because it does not have the anti-intrusion door bars built into the rear doors (as advertised).

145.   In fact, the Volvo 850 has no beam-type or steel anti-intrusion member to resist intrusion into the rear occupant compartment and lacks adequate protection, thus enhancing the injuries to the injured occupants.

Case ID: 110500208
Control No.: 13081072

146.    As instructed by Volvo, and according to federal and state child seat belt laws and child restraint laws, Ana Webb had properly fastened her baby-child, Sabino Webb in a child safety seat, rearward facing, in the rear of the Volvo 850.

147.    Prior to the events that form the basis of this Complaint, Volvo knew or should have known that the 1997 Volvo 850 side-impact crash ratings were not based upon the rear occupant's safety and were focused primarily on the driver's safety on a side-impact crash as the focus of these side-impact crash tests were on the front doors of the vehicle.

148.    Volvo welded in anti-intrusion door bars in the front door of the Volvo 850; however the rear doors which were not the focus of the side-impact crash tests, instead, had a flimsy piece of plastic haphazardly placed into the door attached with two plastic clips.

149.    Prior to the events that form the basis of this Complaint, Volvo knew or should have known that the 1997 Volvo 850 side-impact crash ratings were based upon driver and front occupant's safety.

150.    Volvo advertised the Volvo 850 as having a Side Impact Protection System (SIPS). However, Volvo knew or should have known that the protection afforded the Volvo 850 by this side impact protection system was only for the front doors – not the rear doors – as the front doors had solid steel anti-intrusion door bars.

151.    The rear doors of the Volvo 850 do not have proper or adequate anti-intrusion door bars and support, thereby enhancing the injuries to the injured occupant.

152.    In general the Volvo 850 was not crashworthy in that it did not protect the rear occupants, especially the children, who by law must be properly fastened in child safety seats in the rear of the car.

153.    The lack of anti-intrusion door beams and lack of adequate support resulted in enhanced injuries to the injured occupant.

154.    Volvo knew or should have know that the rear seat of the Volvo 850 is in fact, the most dangerous place to fasten a child safety seat as the rear door has no anti-intrusion door bar and is supported against intrusion by a small, flimsy, lightweight, unsupported piece of corrugated plastic.

22 OF 35

Case ID: 110500208
Control No.: 13081072

155.    Ana Webb and Mark Webb lost their baby son because the rear door crushed into the passenger compartment like an empty can of coke.  The flimsy unsupported piece of corrugated plastic did not in any substantial way withstand the force of the collision.

156.    Nowhere and at no time has Volvo revealed or made public that the Volvo 850 offers no anti-intrusion door bars in the rear doors and that they exist only in the front doors.

157.    Nowhere and at no time has Volvo discus that the front seat is safer than the rear seat because of the lack of anti-intrusion door bars in the rear.

158.    Volvo has never corrected its design, build, and manufacturing of the Volvo 850 to reveal this serious, deadly, design flaw in the Volvo 850 – the complete and utter lack of any adequate anti-intrusion door system within the rear doors.

159.    Volvo has never corrected its advertising, marketing, and promotion of the Volvo 850 to reveal this serious, deadly, design and manufacturing flaw of the Volvo 850 – the complete and utter lack of any adequate anti-intrusion door system within the rear doors.

Case ID: 110500208
Control No.: 13081072

## CLASS ACTION ALLEGATIONS

### *FRCP 23 Class Certification is Appropriate*

160.   **NUMEROSITY.** Based upon information and belief, the Plaintiff Class is comprised of hundreds of thousands of individuals who are geographically disbursed across the United States. As a result, joinder of individual Plaintiffs is impracticable. The disposition of Plaintiffs' claims will provide a substantial benefit to the persons and the court System by using Rule 23 as the vehicle to adjudicate the rights of hundreds of thousands of individuals in one cause of action. Joining and naming each Class Member as a co-plaintiff is unreasonable and impracticable. Such a requirement would only result in Defendant's retention of money which is necessary to compensate the Class to remedy and/or remediate the damage caused by Defendants' illegal activities.

161.   **COMMON QUESTIONS OF LAW AND FACT.** There exist questions of law or fact common to members of the class that predominate over questions of law or fact affecting only individual members. The questions of law or fact common to all members include but are not limited to:

      a.  Was the Volvo 850 marketed and advertised with having door bars in all four doors?

      b.  Was the Volvo 850 designed with door bars in all four doors?

      c.  Was the Volvo 850 manufactured with door bars in all four doors?

      d.  Does the Volvo 850 Volvo Side Impact Protection System (SIPS) include door bars?

162.   **TYPICALITY.** The claims of the Plaintiff ware substantially similar to the claims of the entire class and are typical of the claims of the class.

163.   **ADEQUACY OF REPRESENTATION.** Plaintiff will fairly and adequately represent the interests of the Class. The interests of the Class are not antagonistic with those of any of the individual Plaintiff. Plaintiff has the ability to assist and adequately protect the rights of the Class during the litigation. Further, Plaintiff is represented by legal counsel who is competent and experienced in products liability cases and competent in this type of Class Action litigation.

Case ID: 110500208
Control No.: 13081072

164.   **SUPERIORITY.** The maintenance of this action as a class action is superior to all other available methods of adjudication in achieving a fair and efficient adjudication of the controversy in this matter because:

    a.   The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class;

    b.   The action is manageable as a class action because notice of the pendency of the action can readily be furnished to all prospective members of the class since Volvo knows their identities;

    c.   In view of the complexity of the issues and the expense of litigation, the separate claims of the individual class members are insufficient in amount to support the prosecution of separate actions because such members would lack the economic incentive to prosecute such actions;

    d.   It is probable that the amount that may be recovered by individual members as a group will be large enough in relation to the expense and effort of administering the action to justify a class action; and

    e.   The class members have a common and undivided interest to ensure that owners and lessees of Class Vehicles do not drive in unsafe vehicles for themselves or their family.

Case ID: 110500208
Control No.: 13081072

# THE CLAIMS OF THE PLAINTIFF AND THE CLASS

## COUNT I: DECEPTIVE TRADE PRACTICES

1. Plaintiff hereby incorporates by reference each and every allegation in this Complaint as if fully set forth herein at length.

2. Volvo defines, advertises, and promotes the brand as being **built on safety** and has *extensively leveraged* this public image of safety and the purported safety of their vehicles as part of their business design, image, and branding.

3. Defendants misrepresented material facts and failed to reveal material facts which were known to it with respect to the defects in Volvo 850 and its component parts, materials, and systems.

4. More specifically, Volvo made misrepresentations of material facts to customers who bought, drove, or used the Volvo 850 with respect to the cars safety, the Side Impact Protection System (SIPS), and anti-intrusion door bars, beams, and/or systems to protect occupants.

5. Customers relied on the misrepresentations when making the decision to purchase, drive, or use the Volvo 850.

6. Volvo misrepresented the safety of the cars it produced, and specifically the Volvo 850, in their advertising of the side impact protection system (SIPS), the anti-intrusion door bars, beams, and/or systems to protect occupants.

7. Volvo engaged in deceptive trade practices in its marketing, advertising, and selling of the Volvo 850 by using false or misleading press releases, literature, promotional material, marketing, and advertising campaign regarding the purported safety of the Volvo 850 and the Side Impact Protection System (SIPS).

8. Defendant Volvo used unfair methods of competition and more specifically engaged in unfair or deceptive acts or practices as defined in the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 P.S. § § 201-1 –201-9.2) as follows (as enumerated in the Code):

Case ID: 110500208
Control No.: 13081072

(ii)     Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii)    Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

(v)      Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do no have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

(vi)     Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

(ix)     Advertising goods or services with intent not to sell them as advertised;

(xiv)   Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made; and

(xxi)    Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

9.     Defendant Volvo engaged in at least the following specific deceptive trade practices:

    a.  failure to disclose that the rear doors lack anti-intrusion door bars;

    b.  failure to disclose that the anti-intrusion door bars only exist in the front doors;

    c.  failure to disclose that the front seat is safer than the rear seat because of the lack of anti-intrusion door bars in the rear doors;

    d.  failure to disclose that the purported safety of the side impact protection system (SIPS) was nothing more than a extremely successful and believable

Case ID: 110500208
Control No.: 13081072

advertising campaign but that there is no adequate side impact protection in the rear doors and the rear doors are absent any anti-intrusion door bars, beams, or solid steel structures to prevent intrusion into the occupant compartment, as falsely and deceptively advertised;

e.  failure disclose that the rear door has no beam-type or steel anti intrusion member to resist intrusion into the rear occupant compartment;

f.  failure to disclose that the rear door lacks adequate protection, thus enhancing the injuries to the injured occupants;

g.  failure to disclose that the Volvo 850 side-impact crash ratings were based upon driver and front occupant's safety, not rear occupants where by law a child must be secured;

h.  failure to disclose that the side impact protection system (SIPS) for the Volvo 850, contrary to advertising and literature, was only for the front doors – *not the rear doors* -- as the front doors had solid steel anti-intrusion door bars; however the rear doors did not have proper or adequate anti-intrusion door bars and support, thereby enhancing the injuries to the injured occupant;

i.  failure to correct its design, build, and manufacturing of the Volvo 850 to reveal this serious, deadly, design flaw in the Volvo 850 – the complete and utter lack of any adequate anti-intrusion door system within the rear doors;

j.  failure to correct its advertising, marketing, and promotion of the Volvo 850 to reveal this serious, deadly, design and manufacture flaw in the Volvo 850 – the complete and utter lack of any adequate anti-intrusion door system within the rear doors; and

k.  failure to protect the general public and plaintiff from Defendant's conscious disregard of consumer safety and flagrant indifference to public safety.

10.  As a direct and proximate result of Volvo's aforesaid Consumer Fraud violations, Plaintiffs and members of the Plaintiff Class have suffered ascertainable losses

Case ID: 110500208
Control No.: 13081072

WHEREFORE, Plaintiff and members of the Plaintiff Class demand judgment against the Defendants for:

    (a)   Compensatory damages;

    (b)   Punitive damages;

    (c)   Attorneys' fees;

    (d)   Interest;

    (e)   Costs of suit; and

    (f)   Such other and further relief as the Court deems just, necessary, and appropriate under the circumstances.

Case ID: 110500208
Control No.: 13081072

## COUNT II: UNJUST ENRICHMENT

11.   Plaintiff hereby incorporates by reference each and every allegation in this Complaint as if fully set forth herein at length.

12.   As a direct and proximate result of Volvo's failure to disclose known defect(s) and material misrepresentations regarding known defect(s), Volvo has profited through the sale and lease of said vehicles.

13.   Moreover, as a direct and proximate result of Volvo's failure to disclose known defect(s) and material misrepresentations regarding known defect(s) in the Class Vehicles, Volvo has profited to the extent that Plaintiffs and members of the Plaintiff Class purchased Defendants' vehicles.

14.   Volvo has therefore been unjustly enriched due to the known defect(s) in the Class Vehicles through the use of funds that earned interest or otherwise added to Volvo's profits when said money should have remained with Plaintiffs and members of the Plaintiff Class.

15.   As a result of the Volvo's unjust enrichment, Plaintiffs and members of the Plaintiff Class have suffered damages.

WHEREFORE, Plaintiff and members of the Plaintiff Class demand judgment against the Defendants for:

        (a)   Compensatory damages;

        (b)   Punitive damages;

        (c)   Attorneys' fees;

        (d)   Interest;

        (e)   Costs of suit; and

        (f)   Such other and further relief as the Court deems just, necessary, and appropriate under the circumstances.

Case ID: 110500208
Control No.: 13081072

## COUNT III: BREACH OF DUTY OF GOOD FAITH & FAIR DEALING

16.   Plaintiff hereby incorporates by reference each and every allegation in this Complaint as if fully set forth herein at length.

17.   Each contract of sale and lease agreement entered by Plaintiffs and members of the Plaintiff Class for the purchase and lease of the Class Vehicles contains an implied term requiring Defendants to adhere to a duty of good faith and fair dealing.

18.   Defendants have breached their duty of good faith and fair dealing by, among other things, failing to notify Plaintiffs and members of the Plaintiff Class of the defect(s) in the Class Vehicles, failing to notify Plaintiffs and members of the Plaintiff Class about the lack of anti-intrusion door bars in rear doors, and failing to fully and properly repair the defect(s) and resulting damage to the Class Vehicles, at no expense to Plaintiffs and members of the Plaintiff Class.

19.   Defendants' breach of their implied duty of good faith and fair dealing was intentional, malicious, and with willful and wanton disregard of the rights and interests of Plaintiffs and members of the Plaintiff Class.

20.   As a direct and proximate result of Volvo's breach of its implied duty of good faith and fair dealing, Plaintiffs and members of the Plaintiff Class have suffered damages including but not limited to costly repairs, loss of use of the vehicles, substantial loss in value and resale value of the vehicles, and other damages.

WHEREFORE, Plaintiff and members of the Plaintiff Class demand judgment against the Defendants for:

       (a)   Compensatory damages;

       (b)   Punitive damages;

       (c)   Attorneys' fees;

       (d)   Interest;

       (e)   Costs of suit; and

Case ID: 110500208
Control No.: 13081072

(f)   Such other and further relief as the Court deems just, necessary, and appropriate under the circumstances.

Case ID: 110500208
Control No.: 13081072

COUNT VI: INJUNCTIVE RELIEF

21.    Plaintiff hereby incorporates by reference each and every allegation in this Complaint as if fully set forth herein at length.

22.    Injunctive relief is appropriate and necessary to remedy Volvo's wrongful conduct and to prevent Volvo from continuing its wrongful conduct.

WHEREFORE, Plaintiff and members of the Plaintiff Class demand judgment against the Defendants for:

(a)    Entry of a preliminary injunction and permanent injunction, requiring defendants to immediately:

(1)    notify all members of the Plaintiff Class of the aforesaid defect(s);

(2)    institute a comprehensive service action of the Class Vehicles;

(3)    inspect all Class Vehicles currently owned or leased by members of the Plaintiff Class to determine the nature and extent of the defect(s) and necessary repairs for each vehicle inspected;

(4)    fully and properly repair all Class Vehicles, as required, at Defendants' sole expense;

(5)    take all necessary steps to modify the design, manufacture, and quality control for the Class Vehicles, to prevent the aforesaid defect(s) from arising in any of the Class Vehicle models in the future;

(b)    Attorneys' fees;

(c)    Costs of suit; and

(d)    Such other and further relief as the Court deems just, necessary, and appropriate under the circumstances.

Case ID: 110500208
Control No.: 13081072

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

*****

*Respectfully submitted,*

FRANCIS ALEXANDER, LLC

/s/ Francis Malofiy
Francis Malofiy, Esquire
Attorney ID No.: 208494
The Beasley Building
1125 Walnut Street
Philadelphia, PA 19107
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyer for Plaintiffs*

/d/ May 1, 2013

Case ID: 110500208
Control No.: 13081072

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing COMPLAINT – CLASS ACTION was filed with the United States District Court Eastern District of Pennsylvania on May 1, 2003, along with appropriate filing fee in the amount of $400.00, and the appropriate Civil Cover Sheet, Designation Form, and Case Management Track Designation Form.

I further certify that the foregoing COMPLAINT – CLASS ACTION will be served in accordance with Federal Rules of Civil Procedure and any other applicable rules or laws.

*****

*Respectfully submitted,*
FRANCIS ALEXANDER, LLC

/s/ Francis Malofiy
Francis Malofiy, Esquire
Attorney ID No.: 208494
The Beasley Building
1125 Walnut Street
Philadelphia, PA 19107
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyer for Plaintiffs*

/d/ May 1, 2013

Case ID: 110500208
Control No.: 13081072

## VERIFICATION

ROBERT J. BALCH, ESQUIRE verifies that he is an attorney for Volvo in the within action and verifies that the statements made in the foregoing Reply Memorandum are true and correct to the best of his knowledge, information, and belief.

The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

POST & SCHELL, P.C.

By: _____
ROBERT J. BALCH

| | |
|---|---|
| MARK WEBB, Administrator for the Estate of SABINO WEBB, deceased, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| Plaintiff, | |
| v. | MAY TERM, 2011 |
| VOLVO CARS OF NORTH AMERICA, LLC, VOLVO CAR CORPORATION , GRACO CHILDREN'S PRODUCTS, INC. (d/b/t/a NEWELL RUBBERMAID, INC.), WILLIAM JULIAN and ANA (WEBB) SOARES, | NO. 0208 |
| Defendants | |

## CERTIFICATE OF SERVICE

ROBERT J. BALCH, ESQUIRE certifies that true and correct copies of this motion was served on counsel of record named below by the electronic filing system on this date:

Max Kennerly, Esquire
BEASLEY FIRM, LLC
The Beasley Building
1125 Walnut Street
Philadelphia, PA 19107
**Attorney for Plaintiff**

Francis Malofiy, Esquire
FRANCIS ALEXANDER, LLC
The Beasley Building
1125 Walnut Street
Philadelphia, PA 19107
**Attorney for Defendant, Ana Webb**

Madeline Sherry, Esquire
GIBBONS P.C.
1700 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103-2769
**Attorneys for Defendants, Graco**

Mitchell S. Berger, Esquire
RYAN, BROWN, BERGER & GIBBONS, P.C.
1600 Market Street, Suite 1416
Philadelphia, PA 19103
**Attorneys for Defendant, William Julian**

POST & SCHELL, P.C.

By: _____

ROBERT J. BALCH