IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK WEBB, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>VOLVO CARS OF N.A., LLC,<br>VOLVO CAR CORPORATION,<br>VOLVO CAR UK LIMITED,  and<br>VOLVO CARS OF N.A., INC.,<br><br>    Defendants. | Civil Action No.  13-CV-2394-MMB |

**DEFENDANT VOLVO CAR UK LIMITED'S
REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT FOR LACK OF
<u>PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2)</u>**

Volvo Car UK Limited ("VCUK") provides the following reply memorandum in support of its motion to dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

## INTRODUCTION

Plaintiffs offer two arguments in favor of finding personal jurisdiction. First, they advance the novel proposition that Pennsylvania courts may exercise personal jurisdiction over any company that places an English-language advertisement anywhere in the world.  This argument is without legal support anywhere (including in Plaintiffs' opposition) and would essentially nullify any limitations on the exercise of personal jurisdiction.  Plaintiffs' second argument

suffers from different infirmities.  Plaintiffs contend that there is jurisdiction because VCUK is the alter ego of Volvo Car Corporation ("VCC"), its Swedish parent, such that the contacts of VCC should be attributed to VCUK.  This contention suffers from three flaws, each of which is fatal.  First, there are no allegations in the Amended Complaint that VCUK is the alter ego of VCC.  Second, under this Court's choice-of-law rules, the laws of the United Kingdom apply to the question of whether to pierce the corporate veil, but Plaintiffs have cited no UK law in support of their arguments.  Third, even if Pennsylvania law applied, the evidence shows only a normal parent/subsidiary relationship.  Plaintiffs' speculation and conclusory assertions cannot overcome the strong presumption in Pennsylvania law against piercing the corporate veil.  The Court should grant VCUK's motion and dismiss the Amended Complaint.

## ARGUMENT

I.     **THE COURT SHOULD DISMISS THE AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION OVER VCUK.**

    A.     **There Are *No* Contacts by VCUK with Pennsylvania that Would Permit the Exercise of Personal Jurisdiction Over VCUK.**

Plaintiffs offer a one-paragraph argument in opposition to VCUK's evidentiary submission showing that there are no contacts by VCUK with Pennsylvania.  According to Plaintiffs, there is specific jurisdiction because "VCUK, when placing English-language ads in periodicals, knows and intends that

these ads will travel to all parts of the English-speaking world as they did in this case." (ECF No. 24, at 22.) Plaintiffs cite no law, and there is no law, to support the novel proposition that Pennsylvania jurisdiction extends to all companies that place an advertisement anywhere in the world if the advertisement is in English. The undisputed evidence shows that VCUK does not target or direct advertisements to residents of Pennsylvania or the United States, and this is fatal to Plaintiffs' argument. (ECF No. 18-2, at ¶¶ 6-7.)

> **B.  The Court Should Dismiss the Amended Complaint for Lack of Personal Jurisdiction Because VCUK Is Not the Alter Ego of VCC.**
>
>> 1.  There Are No Allegations in the Amended Complaint that VCUK Is the Alter Ego of VCC.

Plaintiffs' failure to allege that VCUK is the alter ego of VCC is fatal to finding personal jurisdiction on that theory. *See*, *e.g.*, *Newman v. Forward Lands, Inc.*, 430 F. Supp. 1320, 1322 (E.D. Pa. 1977) (the "argument that the court should 'pierce the corporate veil' and allow her to sue the individual defendants must also be rejected since the plaintiff fails to allege any misuse of the corporate form, that the individual defendants used Forward as their alter ego, or anything else that would justify disregarding the corporate entity"); *accord Pell v. Weinstein*, 759 F. Supp. 1107, 1116 (M.D. Pa. 1991), *aff'd*, 961 F.2d 1568 (3rd Cir. 1992) ("Since plaintiffs do not allege that Coated Sales was a sham or the alter ego of the officer/director defendants, they are unable to pierce the corporate veil").

2. <u>Plaintiffs Have Not Shown that VCUK and VCC Are Alter Egos Under the Laws of the United Kingdom.</u>

VCUK presented evidence that "Volvo Car UK Limited is a corporation organized under the laws of the United Kingdom." (ECF No. 18-2, at ¶ 14.) "Because piercing of corporate veil theories essentially seek to hold shareholders responsible for the liabilities of their corporations, courts use the corporate law of the targeted entity's state of incorporation." *Panthera Rail Car LLC v. Kasgro Rail Corp.*, 2013 WL 4500468, at *6 (W.D. Pa. Aug. 21, 2013); *accord In re Grejda*, 2007 WL 2792908, at *8 (W.D. Pa. Sept. 21, 2007) ("When faced with the issue of setting aside the corporate entity, Pennsylvania courts generally recognize the law of the state of incorporation as controlling"); *accord ProtoComm Corp. v. Novell, Inc.*, 55 F. Supp. 2d 319, 329 (E.D. Pa. 1999); *In re School Asbestos Litig.*, 1993 WL 209719, at *3 (E.D. Pa. June 15, 1993). The Court should reject Plaintiffs' contention that there is personal jurisdiction over VCUK under an alter ego theory because Plaintiffs have failed to demonstrate—indeed, have not even attempted to demonstrate—that VCUK can be considered the alter ego of VCC under UK law.

3. <u>Plaintiffs Have Failed to Show that VCUK and VCC Are Alter Egos Under Pennsylvania Law.</u>

"[T]here is a strong presumption in Pennsylvania against piercing the corporate veil." *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995);

*KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*, 826 F. Supp. 2d 782, 794-95 (E.D. Pa. 2011) (only in "exceptional situations"); *First United Bank & Trust v. PNC Fin. Serv. Group, Inc.*, 667 F. Supp. 2d 443, 458 (M.D. Pa. 2009) ("strong presumption ... against"); *see also Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 643 (3d Cir. 1991) ("there is a presumption that a corporation, even when it is a wholly owned subsidiary of another, is a separate entity").  A survey by the Third Circuit Court of Appeals found that the Pennsylvania Supreme Court has frequently refused to disregard the corporate form between parent and subsidiary corporations.  *See Official Comm. of Unsecured Creditors v. R.F. Lafferty &* Co., 267 F.3d 340, 353 (3d Cir. 2001) (collecting cases).  Even if Pennsylvania law applied, Plaintiffs have not presented evidence sufficient to overcome this strong presumption.

The alter ego test traditionally looks to the following factors: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." *Action Mfg. Co., Inc. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 421-22 (E.D. Pa. 2005); *accord Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484-85 (3rd Cir. 2001); *Saint Joseph Hosp.*

*v. Berks Cnty. Bd. of Assessment Appeals*, 709 A.2d 928, 936 (Pa. Commw. Ct. 1998); *Miller v. Brass Rail Tavern, Inc.*, 702 A.2d 1072, 1076 (Pa. Super. 1997). Plaintiffs offer no evidence showing even one of the traditional factors. "Plaintiffs also fail to include the requisite allegations or proof that [VCUK] use[s] its corporate structure for fraudulent, unjust or inequitable purposes."[1] *Arch v. Am. Tobacco Co.*, 984 F. Supp. 830, 839 (E.D. Pa. 1997).

      Some district courts have held that a "plaintiff can also show that a subsidiary is the alter ego of a parent corporation, such that imputing jurisdictional contacts is appropriate, by demonstrating that 'the degree of control exercised by the parent is greater than normally associated with common ownership and directorship' and that 'the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent.'" *Action Mfg. Co.*, 375 F. Supp. 2d at 422 (citation omitted). Plaintiffs rely on a multi-factor test derived from *Gammino v. Verizon Commc'ns, Inc.*, 2005 U.S. Dist. LEXIS 35873, at *7-9 (E.D. Pa. Dec. 27, 2005). Their application of the *Gammino* factors is not a correct statement of the law, however, and it would eviscerate the corporate distinctiveness doctrine in Pennsylvania for virtually all subsidiary companies. The *Gammino* Court itself upheld, as have many other Pennsylvania federal district courts, the corporate distinctiveness doctrine for

---

[1] While Plaintiffs allege a violation of the UTPCPL, they neither allege nor present any evidence that the corporate structure itself was used for fraudulent, unjust or inequitable purposes.

subsidiary and parent companies, even where the degree of control by the parent is far greater than the normal parent-subsidiary relationship that exists here. *Gammino*, 2005 U.S. Dist. LEXIS 35873, at *11; *accord, e.g.*, *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig.*, 735 F. Supp. 2d 277, 322-25 (W.D. Pa. 2010); *Action Mfg. Co.*, 375 F. Supp. 2d at 425; *Colantonio v. Hilton Int'l Co.*, 2004 WL 1274387, at *5 (E.D. Pa. June 8, 2004); *Graco Children's Prods., Inc. v. Draco Corp.*, 1995 WL 299023, at *4-5 (E.D. Pa. May 15, 1995).

Plaintiffs' arguments show only the VCUK is a wholly-owned subsidiary of VCC—this is not enough to show that its corporate distinctiveness should be disregarded. Plaintiffs make much of the fact that VCC owns 100% of VCUK's stock, but this is true of most subsidiaries, and it does provide support for piercing the corporate veil. *See, e.g.*, *Enterprise Rent-A-Car*, 735 F. Supp. 2d at 322-23 ("The sharing by the corporations of directors and the ownership by defendant parent of one-hundred percent of ERAC-Pittsburgh's stock do not implicate that defendant parent controlled the subsidiary to the extent necessary to find that ERAC-Pittsburgh is an alter ego of defendant parent"); *accord Botwinick v. Credit Exch., Inc.*, 213 A.2d 349, 353-54 (Pa. 1965).

Plaintiffs also contend that VCUK "only has one alleged officer," that this one officer is appointed by VCC, and that he is also an employee of VCC. (ECF No. 24 at 6, 17-18, 21.) The undisputed evidence shows that Plaintiffs' contention

4202762.2                                    7

that VCUK has only one officer is false. (ECF No. 18-2, at ¶ 3 ("I am Solicitor and Company Secretary for Volvo Car UK Limited").) And the fact that one (or more) VCUK officer(s) also may be employed by VCC does not support piercing the corporate veil without much more; the Supreme Court has recognized that it is "normal for a parent and subsidiary to have identical directors and officers." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (citations omitted); *Visual Sec. Concepts, Inc. v. KTV, Inc.*, 102 F. Supp. 2d 601, 606 (E.D. Pa. 2000) ("Without more, Mr. Kim's dual role is simply insufficient to invoke alter ego principles"); *Graco Children's Prods.*, 1995 WL 299023, at *5 ("Even assuming, however, that Ms. Lam did, during the relevant time period, serve as both the controller of SSI and the Treasurer of All Our Kids, such a fact is insufficient to establish an alter-ego relationship"); *Botwinick*, 213 A.2d at 354 (even where "a single individual is the active chief executive of both corporations," this will not support piercing the corporate veil if each corporation maintains a bona fide separate and distinct corporate existence).

Plaintiffs further contend that the Court should pierce the corporate veil because VCC, VCUK, and VCNA purportedly use identical marketing materials, an assertion that Plaintiffs appear to base on the similarity of one picture of a Volvo 850 in an advertising photo provided in discovery by VCC in the state court case with a picture of a Volvo 850 in a purported VCUK advertisement. (ECF No.

24, at 9; *see also id.* at 18.)  That the pictures are identical is hardly surprising since, according to Plaintiffs, the two pictures are of the same model vehicle. There is no evidence showing that all advertising is created in by VCC in Sweden, but even if there was, it would not be enough.[2]

Plaintiffs also contend that because VCUK and VCC use the "Volvo" trademark, the Court should find they are alter egos.  But there is no requirement under Pennsylvania law that Volvo vehicles in the United Kingdom be marketed under a different name in order to retain the corporate distinctiveness of VCUK. *See*, *e.g.*, *Enterprise Rent-A-Car*, 735 F. Supp. 2d at 323 ("The common marketing image and joint use of trademarked logos fail to render ERAC-Pittsburgh an alter ego of ERAC-Missouri.  Enterprise Rent-A-Car is portrayed as a single brand to the public, but this evidence does not demonstrate the necessary control by defendant parent over the subsidiaries"); *Graco Children's Products,* 1995 WL 299023, at *4-5 (evidence that "SSI sells products with the All Our Kids trademark

---

[2] Plaintiffs contend that *Directory Dividends, Inc. v. SBC Commc'ns, Inc.*, 2003 U.S. Dist. LEXIS 12214 (E.D. Pa. July 2, 2003), and *Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 676 (E.D. Pa. 2005), support piercing the corporate veil here, but neither case supports Plaintiffs' argument based on supposed common marketing.  (ECF No. 24, at 18.)  In *Directory Dividends*, there was evidence showing that the parent company's CEO repeatedly asserted that the subsidiaries had been transformed into one company with a "single identity" and many of the subsidiaries had placed links on their old websites stating that the subsidiary "is now SBC."  *Directory Dividends*, 2003 U.S. Dist. LEXIS 12214, at *13-14.  In *Simone*, the subsidiary specifically "attributed design and manufacturing of Rotax engines to itself." *Simeone*, 360 F. Supp. 2d at 678.  Furthermore, there was much more evidence of control, and the common marketing was not an important factor.  *Id.* at 676-68.  There is no similar evidence here.

on them" is not sufficient "to support a finding that SSI and All Our Kids were actually one company").

Plaintiffs' remaining contentions are similarly deficient.  First, Plaintiffs contend that because VCUK "employs only 115 people ... logic alone requires the conclusion that VCC's 20,000 plus employees do the lion's share of labor designing, building, and marketing the products." (ECF No. 24, at 19.)  However, Plaintiffs ignore the evidence showing that "Volvo Car UK Limited does not design or manufacture vehicles" and that it does not market vehicles outside the UK.  (ECF No. 18-2, at ¶ 4; *see also id.* at 5-6.)  Their speculative conclusion thus is contrary to the evidence.

Second, Plaintiffs point to a few individuals who have worked for VCUK and for other VCC subsidiaries in the past, but this is a normal practice in a multi-national company.  Unlike *Directory Dividends*, there is no evidence of significant sharing of *current* employees and no "confusion as to who works for whom in this organization." *Directory Dividends*, 2003 U.S. Dist. LEXIS 12214, at *16-17.

Third, Plaintiffs assert that because VCUK distributes and markets vehicles in the United Kingdom, VCUK and VCC share an integrated sales and product development system.  (ECF No. 24, at 19.)  Once again, Plaintiffs ignore the evidence that VCUK does not design or manufacture vehicles, and there is no evidence at all of an integrated sales system between VCC and VCUK.  In fact, the

evidence shows that the sales systems are separate since VCUK does not sell or market vehicles anywhere but in the UK. (*See* ECF No. 18-2, at ¶¶ 4-7.) But even if there were an integrated sales system, this would not be sufficient to pierce the corporate veil. *See*, *e.g.*, *Enterprise Rent-A-Car*, 735 F. Supp. 2d at 323 ("The use of an integrated sales system and use of services from defendant parent's IT and HR departments likewise are not sufficient ... [because] they do not show a high-level of operational control over the operating subsidiaries").

Fourth, Plaintiffs contend that VCUK performs business functions "normally performed by a parent company" because it acts as a marketing arm and exclusive distributor for VCC in the UK. (ECF No. 24, at 21.) This argument confuses the functions performed by VCC, which manufactures vehicles, and VCUK, which distributes and markets Volvo vehicles in the UK.

Plaintiffs' failure to show evidence that VCC exercised "any control over the internal workings or day-to-day operations of its subsidiaries" dooms their attempt to disregard the corporate distinctiveness of VCNA. *Hoffman v. Tyco Int'l, Ltd.*, 2006 WL 3759709, at *5 (E.D. Pa. Dec. 18, 2006); *see also Eastern Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 333 n.6 (3d Cir. 2000) ("Pennsylvania ... require[s] a threshold showing that the controlled corporation acted robot- or puppet-like in mechanical response to the controller's tugs on its strings or pressure on its buttons"); *Action Mfg.*, 375 F. Supp. 2d at 422 ("An alter ego ...

relationship is typified by parental control of the subsidiary's internal affairs or daily operations"). Plaintiffs have not made the requisite *prima facie* showing for personal jurisdiction based on an alter ego theory. *Gammino*, a case on which Plaintiffs extensively rely, is instructive. There, the court found that the plaintiffs showed that: "(1) the moving Defendant subsidiaries are owned − wholly or in part by VCI; (2) VCI and its subsidiaries share common officers; and, (3) VCI and its subsidiaries share a common marketing image and/or logo." 2005 U.S. Dist. LEXIS 35873, at *9. This evidence was *insufficient* to demonstrate "that VCI and the Defendants subsidiaries are a single functioning entity, such that VCI should be considered the alter ego of the subsidiaries." *Id.* The same is true here.

In sum, the totality of the evidence shows only a normal parent/subsidiary relationship, and Plaintiffs have fallen far short of overcoming the presumption against piercing the corporate veil. *See*, *e.g.*, *Enterprise Rent-A-Car*, 735 F. Supp. 2d at 324 ("The evidence of record considered as a whole does not reveal an extraordinary level of control of defendant parent over ERAC-Pittsburgh, other than the kind of control associated with parent-subsidiary relationships"); *Gammino*, 2005 U.S. Dist. LEXIS 35873, at *10 (holding that Plaintiff failed to show that subsidiary and parent companies were alter egos); *Colantonio*, 2004 WL 1274387, at *5 ("Plaintiffs neither allege, nor provide any proof, that the corporate relations involved in this action are anything more than a close relationship based,

in part, upon joint coordination and cooperation between the entities within the Hilton 'network'"); *see also In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 599 (M.D. Pa. 2009) ("These facts reflect a parent corporation's control over certain aspects of its subsidiary's business but fall short of that required for a finding of alter ego status").

      **C.    The Court Should Not Allow Jurisdictional Discovery.**

The Court should deny Plaintiffs' request for jurisdictional discovery for two reasons. First, discovery is limited to the allegations of the Amended Complaint, and Plaintiffs have not alleged that VCC and VCUK are alter egos. Second, although leave to conduct jurisdictional discovery is within the Court's discretion, *Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.*, 64 F. Supp. 2d 448, 454 (E.D. Pa. 1999), "allowing such discovery is premised on the assumption that further discovery would be worthwhile." *Id.* (denying jurisdictional discovery because it would not be worthwhile); *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 475 (D. Del. 1995) (same). In order to proceed, plaintiff must show "some competent evidence to demonstrate that personal jurisdiction over the defendant might exist." *Hansen*, 163 F.R.D. at 475; *accord Poe v. Babcock Int'l PLC*, 662 F. Supp. 4, 7 (M.D. Pa. 1985) (plaintiff failed to produce any evidence to show alter ego theory and was not permitted to conduct discovery).

*Poe* is instructive. There, the plaintiff sought to obtain jurisdiction over two parent companies on an alter ego theory. The court held that "the three defendants, though related in a parent-subsidiary fashion, are separate corporate entities." *Poe*, 662 F. Supp. at 7. The plaintiff also sought jurisdictional discovery, claiming that discovery would allow it to show the companies were alter egos. The court rejected the request because Plaintiffs had met the parent corporations' evidence with speculation only.

> Plaintiff has failed to produce any evidence that Acco is a mere "alter ego" of the other defendants and, therefore, has not met his burden. Since plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for an opportunity to conduct discovery on the matter must be denied. It would be inappropriate for this court to allow plaintiff to conduct a fishing expedition in order to construct a basis for jurisdiction.

*Id.*; *accord Ames v. Whitman's Chocolates, Div. of Pet Inc.*, 1991 WL 281798, at *3 (E.D. Pa. Dec. 30, 1991) ("since Ames has not contradicted the parent corporation's affidavit evidence, this Court is persuaded that '[i]t would be inappropriate ... to allow plaintiff to conduct a fishing expedition to construct a basis for jurisdiction'") (quoting *Poe*, 662 F. Supp. at 7).

Plaintiffs have offered only speculation and conclusory assertions in response to VCUK's evidentiary showing based on sworn testimony. The arguments in their brief fail to create a plausible basis for alter ego jurisdiction.

This Court should reject Plaintiffs' request to conduct a fishing expedition in an attempt to construct a basis for jurisdiction.  *Poe*, 662 F. Supp. at 7.

## CONCLUSION

For these reasons, Volvo Car UK Limited respectfully asks the Court to dismiss the claims in the Amended Complaint against it pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

Dated:  November 7, 2013            Respectfully submitted,

By: */s/ Peter W. Herzog III*
Peter W. Herzog III (pro hac vice)
**BRYAN CAVE LLP**
211 N. Broadway, Suite 3600
St. Louis, MO 63102
Phone: (314) 259-2000
Fax: (314) 259-2020
pwherzog@bryancave.com

Richard B. Wickersham, Jr.
**POST & SCHELL, P.C.**
Four Penn Center, 13th Floor
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103
Phone:  (215) 587-6612
Fax:  (215) 320-4875
rwickersham@postschell.com

Attorneys for Volvo Car UK Limited

4202762.2                                        15

## Certificate of Service

I, Peter W. Herzog III, certify that the foregoing was electronically filed on November 7, 2013 using the Court's CM/EMF system, and was thereby served upon all registered users in this case.

By: */s/ Peter W. Herzog III*