# United States District Court
## Eastern District of Pennsylvania

| | |
|---|---|
| Mark Webb and Ana Webb<br>Individually and on behalf of all others similarly situated,<br>*Plaintiffs*<br><br>v.<br><br>Volvo Cars of N.A., LLC<br>*and*<br>Volvo Car Corporation<br>*and*<br>Volvo Car UK Limited<br>*and*<br>Volvo Cars of N.A., Inc.<br>*Defendants* | Civil Action No.: 13-2394<br><br><br>*Jury Trial Demanded* |

## Plaintiffs' Response In Opposition to Defendants Volvo Cars N.A., LLC and Volvo Car Corporation Motion for Sanctions Pursuant to Fed. R. Civ. P. 11

Plaintiffs oppose Defendants' Motion for Sanctions pursuant to Fed. R. Civ. P. 11. The image Defendants claim was misleadingly altered was used merely to add context and clarity to Plaintiffs complaint and is actually an exhibit which was used in a state court case. In support of Plaintiffs' position, a memorandum of law and exhibits are attached.

*Respectfully submitted,*
## Francis Alexander, LLC

/s/ Francis Malofiy
Francis Malofiy, Esquire
Attorney ID No.:  208494

The Beasley Building
1125 Walnut Street
Philadelphia, PA 19107
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiffs*

/d/ November 18, 2013

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK WEBB AND ANA WEBB<br>Individually and on behalf of all others similarly situated,<br>    *Plaintiffs*<br><br>V.<br><br>VOLVO CARS OF N.A., LLC<br>    *and*<br>VOLVO CAR CORPORATION<br>    *and*<br>VOLVO CAR UK LIMITED<br>    *and*<br>VOLVO CARS OF N.A., INC.<br>    *Defendants* | CIVIL ACTION NO.: 13-2394<br><br><br>*JURY TRIAL DEMANDED* |

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS VOLVO CARS N.A., LLC AND VOLVO CAR CORPORATION
MOTION FOR SANCTIONS
PURSUANT TO FED. R. CIV. P. 11

## PREAMBLE

The Motion for Sanctions filed by Defendants Volvo Cars of N.A, LLC (VCNA) and Volvo Car Corporation (VCC) accusing Attorney Malofiy of redacting an image submitted to this Court largely ignores key contextual information, namely that this image **is an exhibit in a state court case**. It is obviously an exhibit—and this motion is therefore frivolous—because the image even retains an "exhibit" sticker identifying it as such. Volvo therefore knows that the image was not redacted to mislead the Court or manufacture evidence; instead, this motion was filed as a litigation tactic. The image was used merely to add context and clarity to Plaintiffs' Complaint

# I.   The Image in Question was Not Misleadingly Redacted, and Defendants Know This. It was Merely Used to Add Context and Clarity to Plaintiffs' Complaint

**History of the Dispute**

The central contention of this motion, that Attorney Malofiy altered a document to mislead this court, is false on its face. Furthermore, Defendants know it is false and have presented highly misleading evidence to convince this Court otherwise.

The image in question was created using an exhibit from a deposition in a state court case to provide clarity and context to the Amended Complaint filed by Plaintiffs. It looks like this:



It is almost impossible for anyone to look at this image with its red pdf text and arrow boxes and conclude that Plaintiffs tried to pass this off as an **"official"** Volvo advertisement, as Defendants maintain.

For comparison, the original brochure found in the glove box of Plaintiffs' Volvo 850 looks like this:



The two images are very different and the one included in the Amended Complaint simply could never be taken by any reasonable observer to be an actual Volvo product, much less "manufactured" evidence.

Plaintiffs included the explanatory picture in the Amended Complaint to delineate why they think the brochure supports their claims. Although the original brochure says "900 Series Side Impact Protection System," the vehicles actually depicted on the brochure are **indisputably Volvo 850s—and the brochure itself came in a Volvo 850**. Plaintiffs maintain that an average

consumer (similar to Plaintiffs) would have no idea what "900 Series Side Impact Protect System" means, and, given that the diagram with door bars is superimposed on top of a Volvo 850, would conclude that such side impact protection was provided in the Volvo 850. VCC's own corporate designee, Thomas Broberg, admitted the obvious at trial: the brochure is, at a minimum, **confusing to consumers**. <u>See</u> Broberg Trial Testimony, at pp.65–66, attached as Exhibit A.

Certain pieces of information were originally removed from the brochure for a deposition in the state case, **one where Volvo never filed for sanctions**. As part of that case, Mr. Malofiy deposed Leopold Werberg, the corporate designee for VCNA. Mr. Malofiy knew that if Werberg saw the original brochure with the 900 Series label he would maintain that the brochure, including the SIPS diagram, was for a 900 Series Volvo—even if contrary evidence was presented to him. Thus, Mr. Malofiy painstakingly erased the words on the brochure to elicit certain admissions from Mr. Werberg **before displaying the entire unedited brochure to him**.

Plaintiff first showed Mr. Werberg these images, from left to right:



This is the subject brochure with certain portions erased. Mr. Werberg agreed that these images were those of a Volvo 850. Werberg Depo., at pp.51–54, attached as Exhibit B. The bottom car's rear has the identifying label "Volvo 850 GLT" on the right, which Mr. Werberg read into the

record. Id. at p.52. Mr. Werberg also agreed that a SIPS diagram, with door bars, was superimposed on top of the bottom Volvo 850. Id. at p.67.

After securing those admissions from Mr. Werberg, Mr. Malofiy then revealed the entire unredacted brochure *with* the 900 Series text to Mr. Werberg, who then began claiming the diagram on the brochure was for a 900 Series Volvo. Id. at p.98. Volvo cites this statement by Mr. Werberg in its Motion for Sanctions as proof that this ad is for a 900 Series Side Impact Protection System. Def. Brief, at p.7. In reality, it shows that Mr. Werberg is a corporate designee willing to say whatever is most convenient for his company.

In short, Plaintiffs' contention is that Volvo advertised the 850 with rear door bars and that the brochure in question is one such advertisement. At a minimum, this brochure, included in Volvo 850 glove boxes, is highly misleading and any reasonable consumer would assume that their Volvo 850 has rear door bars.  Mr. Malofiy did not hide anything from anyone; he simply wanted to memorialize the refusal of VCNA's corporate designee to admit the obvious: the brochure depicts Volvo 850s and their putative safety features.

**Legal Standard**

Courts have noted that Rule 11 motion for sanctions "should not be sought reflexively or as matter of course" and that the "imposition of Rule 11 sanctions is properly reserved for exceptional circumstances." Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc., 315 F. Supp. 2d 623, 627 (D.N.J. 2004), *vacated on other grounds*, 30 F.3d 269, 2008 U.S. App. LEXIS 13099 (3d Cir. N.J. 2008). Notably, the way in which the motion is used by the moving party is important, and it is improper to use sanctions when the real dispute between the parties is the sufficiency of the allegations in the pleadings. Id. at 628.

The standard for testing conduct under Rule 11 is a reasonableness test under the circumstances. A court should inquire "what was reasonable to believe at time pleading, motion, or other paper was submitted." Eavenson v. Holtzman, 775 F.2d 535, 540 (3d Cir. Pa. 1985).

**Application**

In the instant case, Mr. Malofiy included one of the exhibits from Mr. Werberg's deposition in the Amended Complaint which identifies all the parts of the brochure that any reasonable consumer would associate with a Volvo 850:



It was presented to the Court to illustrate why Plaintiffs' believe their claims are warranted, and includes clear textual additions made by Attorney Malofiy that could never be mistook for the

original brochure. VCC and VCNA are certainly entitled to inform the Court why they think the brochure that came in Plaintiffs' Volvo 850, and depicts two Volvo 850s, is really for a 900 Series Volvo. But the idea that this picture was redacted to mislead the Court is completely false, absurd given that it was obviously not being passed off as an original, and belied by the fact that it was created a year before this class action was even filed.

Courts note that Rule 11 motions should not be filed reflexively or to adjudicate the merits of a case. See, e.g., Wartsila, 315 F. Supp. 2d at 627–28. Volvo's real complaint is that it disagrees with Plaintiffs' characterization of this piece of evidence, and that type of dispute is the kind that should be adjudicated through the normal litigation process. Id. Unfortunately for Volvo, ***even VCC's corporate designee agrees that such an advertisement is confusing***. Broberg Trial Testimony, at pp.65–66. This sanctions motion is baseless and should be denied.

## II.   Volvo Filed This Motion as Litigation Tactic to Increase Plaintiffs' Workload

VCNA and VCC filed this motion, knowing that it has no basis, as a tactic to increase Plaintiffs' workload during the state court case trial. Plaintiffs know it was filed for this improper purpose because Mr. Wickersham, Volvo's attorney, **has gone so far as to openly collude in filing sanctions motions with defense attorneys opposing Attorney Malofiy in an unrelated copyright infringement case**. This is apparent because Mr. Wickersham cross referenced a meritless and untimely sanctions request in that copyright case[1] in his own Motion for Sanctions, Def. Brief, at p.8 n.2, and because defense attorneys on the copyright case showed up at the state Volvo trial for opening statements. Mr. Wickersham knew who they were and made a show of shaking their hands.  The motion should be denied for this reason alone as it was clearly filed for an improper purpose.

---

[1]    That sanctions motion has not even been adjudicated yet.

III. Conclusion

VCNA and VCC filed this motion claiming Attorney Malofiy redacted an image to mislead the Court and manufacture evidence despite knowing full well that the image in question was presented in the Amended Complaint to add context and clarity to Plaintiffs' position. It is laughable to suggest that anyone would look at such an image and conclude that it was being passed off as a piece of manufactured evidence. Furthermore, there is significant evidence that Mr. Wickersham colluded with defense attorneys opposing Mr. Malofiy on another case when filing this motion to increase Mr. Malofiy's workload during trial.

For those reasons, this motion should be Denied.

*****

*Respectfully submitted,*
Francis Alexander, LLC

/s/ Francis Malofiy
Francis Malofiy, Esquire
Attorney ID No.: 208494
The Beasley Building
1125 Walnut Street
Philadelphia, PA 19107
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyer for Plaintiffs*

/d/ November 18, 2013

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing Plaintiffs' Response In Opposition to the Motion of Volvo Cars N.A. and Volvo Car Corporation for Sanctions Pursuant to Fed. R. Civ. P. 11 and supporting Memorandum of Law was filed with the United States District Court Eastern District of Pennsylvania via the ECF Filing System and thereby served upon all counsel of record:

Richard B. Wickersham, Jr., Esquire
Post & Schell, P.C.
Four Penn Center
1600 JFK BLVD. | 13th Floor
Philadelphia, PA 19103
T: (215) 587-6612
F: (215) 320-4875
E:  rwickersham@postschell.com

Peter W. Herzog, III, Esquire
Bryan Cave LLP
211 N. Broadway, Suite 3600
St. Louis, MO 63102
T: (314) 259-2000
F: (314) 259-2020
E:  pwherzog@bryancave.com

*****
*Respectfully submitted,*
Francis Alexander, LLC

/s/ Francis Malofiy
Francis Malofiy, Esquire
Attorney ID No.:  208494
The Beasley Building
1125 Walnut Street
Philadelphia, PA 19107
T:  (215) 500-1000
F:  (215) 500-1005

*Law Firm / Lawyer for Plaintiffs*

/d/ November 18, 2013

# EXHIBIT A

# In The Matter Of:

*Mark Webb, et al. v.*
*Volvo Cars of N.A., LLC, et al.*

---

*Leo Werberg*
*February 26, 2013*

---

**NEXTGEN|REPORTING**

Making Litigation Easier.                                    www.nextgenreporting.com

WORLDWIDE COVERAGE I (888) 267-1200              PHILADELPHIA I NEW YORK CITY I WILMINGTON I SILICON VALLEY

*Min-U-Script® with Word Index*

SUBJECT TO PROTECTIVE ORDER

IN THE COURT OF COMMON PLEAS
COUNTY OF PHILADELPHIA, PENNSYLVANIA
CIVIL ACTION

MARK WEBB, As Administrator    : May Term 2011
For the Estate of SABINO WEBB, :
Deceased,                       : Civil Action
            Plaintiff,          : No. 110500208
        v.                      :
                                :
VOLVO CARS OF N.A., LLC;        :
VOLVO CAR CORPORATION; GRACO    :
CHILDREN'S PRODUCTS, INC.;      :
NEWELL RUBBERMAID, INC.;        :
WILLIAM JULIAN, MARIA           :
CASTROVILLO, and                :
ANA WEBB, a/k/a ANA SOARES,     :
            Defendants. :

Tuesday, February 26, 2013

        Videotape deposition of LEO WERBERG,
subject to protective order, taken pursuant to
notice, at the offices of The Beasley Firm, 1125
Walnut St., Philadelphia, PA, on the above date,
at approximately 10:38 a.m., before Josephine
Cardillo, Professional Court Reporter and
Pennsylvania Notary Public.

        - - -

---

SUBJECT TO PROTECTIVE ORDER                      Page 3

```
 1              I N D E X

 2  WITNESS:  LEO WERBERG              PAGE

 3    By: Mr. Malofiy ------------------------ 10

 4            EXHIBITS

 5  NO.         DESCRIPTION           PAGE
```

```
 6   1   Protective Order                      8

 7   2   Response to Various Dep. Notices      8

 8   3   Witness's Resumé                      8

 9   4   Picture of Subject Volvo             18

10   5   Wheel Assembly                       19

11   6   Photograph of a Portion of a Vehicle 28

12   7   Picture of Vehicle Front End/Back End 45

13   8     "    "    "    "    "    "    "    52

14   9     "    "    "    "    "    "    "    61

15  10  "Insist on Genuine Volvo Body Parts" Ad 68

16  11     "    "    "    "    "    "    "    88

17  12  Combination of photos/illustrations  77

18  13  (Not identified in testimony)        --

19  14  Notice of Video Deposition          118

20  15  Low-resolution Digital Photograph   178

21  16  Volvo Promotional Vehicle           180

22  17  Blown-up Digital Image              267

23  18  Illustration of Vehicle             267

24  19     "         "    "    "           247
```

---

SUBJECT TO PROTECTIVE ORDER                      Page 2

```
 1  COUNSEL APPEARANCED AS FOLLOWS:

 2  FRANCIS MALOFIY, ESQUIRE
    THE BEASLEY FIRM, LLC
 3    1125 Walnut Street
      Philadelphia, PA 19107
 4    (T) 215.592.1000  (F) 215.592.8360
      francis.malofiy@beasleyfirm.com
 5  Counsel for Plaintiff

 6  RICHARD B. WICKERSHAM, JR., ESQUIRE
    POST & SCHELL
 7    Four Penn Center
      1600 John F. Kennedy Boulevard
 8    Philadelphia, PA  19103-2808
      rwickersham@postschell.com
 9    (T) 215.587.6612  (F) 215.320.4875
    Counsel for Defendant Volvo
10
    MADELINE M. SHERRY, ESQUIRE
11  GIBBONS, P.C.
      1700 Two Logan Square
12    Philadelphia, PA  19103-2769
      (T) 215.446.6201  (F) 215.446.6311
13    msherry@gibbonslaw.com
    Counsel for Defendant Graco
14
    Also Present:  David Benson,
15                 Paralegal to Francis Malofiy

16                 David Levin,
                   Video Technician
17                 NextGen Reporting

18             - - -
```

```
19

20

21

22

23

24
```

---

SUBJECT TO PROTECTIVE ORDER                      Page 4

```
 1  (Exhibits, cont'd.)

 2  NO.         DESCRIPTION           PAGE
```

```
 3  20  Page from Internet Website          266

 4  21  Hand-written Note                   230

 5  22  (Not identified in transcript)      231

 6  23  Volvo News and Information          284

 7  24  Requested Volvo 850 Info            --

 8  25  Strip of Paper With Blurb           352

 9  26     "    "    "    "    "            354

10  27  Cover of Owner's Manual             365

11  28  "Hope You Never Have to Open This"  384
        Envelope
12
    29  Driver's Accident Information Card  387
13
    30  "I Insist My Volvo Remain Volvo" Card 389
14
    31  "Insist on Genuine Volvo Body Part" 390
15
    32  Window Sticker                      373
16
    33  First Page of a Brochure            399
17
    34  Subpoena to Leo Werberg             399
18
```

```
19             - - -

20

21

22

23

24
```

MARKED QUESTIONS/ANSWERS

Page 217, Line 14:  Has Volvo Cars of North
America ever used cutaways, as you described
them, to show safety features within their
vehicle?  Yes, they have; no, they haven't?

Page :  It's your position that they haven't;
Volvo Cars of North America has not used the
term "safety cage"; is that your position, sir?

Page 283, Line 16:  So there's not one person
responsible for a destruction log or what
records are lost, misplaced, destroyed.

Page 368, Line4 :  Now, with those three
statements, are you able to tell me whether or
not this vehicle would have a door bar in the
rear of the doors?

Page 384, Line 2: So you can't tell me whether
or not, based upon this window sticker, if the
Volvo 850 has a door bar in the rear, correct?

- - -

1     (It is hereby stipulated and
2 agreed by and among counsel for the
3 respective parties that the reading,
4 signing, sealing, filing, and
5 certification, except as to the form of
6 objections, except as to the form of
7 the question, are reserved to the time
8 of trial.)
9     VIDEO TECHNICIAN: We are now on
10 the record.  My name is David Levin,
11 videographer for NextGen Reporting.  This
12 is a video deposition in the Court of
13 Common Pleas, Philadelphia County, civil
14 action for the Term 2011, Civil Action No.
15 110500208.
16     Today's date is Tuesday, February
17 26, 2013, and the videotape time is
18     10:39 a.m.  This deposition is being held
19 at 1125 Walnut Street, Philadelphia,
20 Pennsylvania, in the matter of Mark Webb,
21 as Administrator for the Estate of Sabino
22 Webb, deceased, versus Volvo Cars of NA,
23 LLC, et al.  The deponent is Leo Werberg.
24     Would all counsel please identify

1 yourself for the record and whom they
2 represent.
3     MR. MALOFIY: This is attorney
4 Francis Malofiy on behalf of Plaintiff Mark
5 Webb as Administrator for the Estate of
6 Sabino Webb; and also Joined Defendant, Ana
7 Webb.  With me here today is David Benson.
8     MS. SHERRY: Madeline Sherry, for
9 Graco.
10     MR. WICKERSHAM: Goood morning.
11 Bruce Wickersham, counsel for Volvo.
12     MR. MALOFIY: Just to set up some
13 preliminary matters, an objection for one
14 is an objection for all.
15     MR. WICKERSHAM: That's fine.
16     MS. SHERRY: (Nods head.)
17     MR. MALOFIY: And the usual
18 stipulations?
19     MR. WICKERSHAM: We will reserve
20 the right to read sign; but, otherwise,
21 that's fine.
22     MR. MALOFIY: Okay.
23     MR. WICKERSHAM: And I have a
24 couple of administrative things we can put

1 on the record.
2     MR. MALOFIY: Sure.
3     MR. WICKERSHAM: Pursuant to the
4 court's order, the protective order that
5 was entered, I'd like to mark as Werberg-1
6 a copy of the protective order, and would
7 again ask our court reporter, Josephine, if
8 she would please note the cover
9 accordingly, subject to protective order.
10     COURT REPORTER: Yes.
11     MR. MALOFIY: Take a look at
12 that, Mr. Wickersham.
13     MR. WICKERSHAM: Absolutely.  And
14 I have marked as Werberg-2 the formal
15 response to the various notices of
16 deposition for today's proceeding that was
17 served back on January.
18     And I also have brought for the
19 convenience of you, Attorney Malofiy, a
20 copy of a current resumé of Mr. Werberg
21 which marked as Werberg-3 for the record,
22 and I have copies for counsel to make use
23 of during the deposition.
24     And with that, I'm pleased to

1 present Leo Werberg on behalf of Volvo Cars
2 of North America, LLC, for the questions
3 you have for him today.
4      MR. MALOFIY: Thank you. I
5 appreciate it, Mr. Wickersham. No issue
6 with the exhibits you provided.
7      Do we have the resumé marked? We
8 do not, right?
9      MR. WICKERSHAM: We do:
10 Werberg-3. That's a personal copy for you,
11 and we've marked it.
12      MR. MALOFIY: Oh, I'm sorry.
13 Thank you.
14      Could we also have a list of
15 exhibits just so we can start marking them
16 as our court reporter's typing them. Do
17 you have that for me, Josephine?
18      (Court reporter provides supply
19 of exhibit stickers to Attorney Malofiy.)
20      LEO WERBERG, having first been
21      duly sworn according to law, was
22      examined and testified as follows:
23      VIDEO TECHNICIAN: Please
24 proceed, counsel.

1      EXAMINATION
2      BY MR. MALOFIY:
3 Q. Yes. How are you doing, Mr. Werberg?
4 A. I'm well.
5 Q. I know you had the pleasure to sit
6 with us last time, when we were deposing
7 Mr. Broberg.
8 A. Yes.
9 Q. And that was last week?
10 A. Yes.
11 Q. I'm sure you remember some of the
12 admonitions that I provided him, and I think
13 you're probably a little bit aware of the
14 process.
15      But with that being said, I want to be
16 sure that when I do ask you questions, you
17 understand the questions that I'm asking. And
18 also, I want to provide you with certain
19 warnings to be sure that your testimony is as
20 clear and is true, accurate, and correct as it
21 can be.
22      So you understand that your testimony
23 here today has the same weight as it does as if
24 you were before a judge and jury, correct?

1 A. Yes.
2 Q. And if I ask you questions you might
3 not know the answer to, or if it's an
4 approximation, please let me know you're
5 approximating. If you know an exact date or
6 know specific fact, please tell me that.
7      I don't want you to guess, and I think
8 your counsel will tell you he doesn't want you
9 to get, either.
10      MR. MALOFIY: Fair statement?
11      MR. WICKERSHAM: Fair statement.
12      BY MR. MALOFIY:
13 Q. All right. Do you understand those
14 instructions?
15 A. Yes.
16 Q. Okay. If I ask a question and you
17 respond to my question and you answer my
18 question, the record will reflect that you
19 understood my question; do you understand that?
20 A. Yes.
21 Q. If you don't understand my question or
22 if you need me to clarify one of my questions,
23 please ask me to do so.
24 A. (Witness nods head.)

1 Q. Fair?
2 A. I will do that.
3 Q. Also, your counsel may object to
4 questions throughout the course of this
5 deposition. In fact, I know Mr. Wickersham
6 will object to many questions during the course
7 of this deposition.
8      If he does so, it doesn't mean that
9 you do not answer the questions; all it means
10 is that he's preserving it for time of trial.
11 But you have to, in fact, answer the question
12 unless Mr. Wickersham instructs you not to
13 answer the question or raises a privilege issue
14 -- a privilege.
15      MR. MALOFIY: Is that fair
16 Mr. Wickersham?
17      MR. WICKERSHAM: I apologize. I
18 was not listening to what you said, but if
19 the witness understood, I'll let him
20 answer; he's here to testify.
21      BY MR. MALOFIY:
22 Q. Did you understand my instruction?
23 A. I did.
24 Q. Okay. A couple of other preliminary

1  matters.  I know I asked these questions of
2  Mr. Broberg; I have to do it.  I trust that
3  you're not under the influence of any drugs or
4  alcohol or any medication that would affect
5  your judgment or memory here today.
6  A.  That's correct.
7  Q.  Okay.  I'm going to proceed with my
8  questioning.  Before I do so -- and I haven't
9  had a chance to really go through your resumé
10 carefully, but can you tell me where you were
11 born?
12 A.  Where I was born?
13 Q.  Yeah.
14 A.  I was born in Queens, New York.
15 Q.  And did you always remain in the
16 United States?
17 A.  No.  I've been outside of the United
18 States.
19 Q.  Okay.  When have you been outside of
20 the United States?
21 A.  I'm sorry.  Once more?
22 Q.  Oh, yeah.  When have you been -- I'm
23 sorry I hit your foot there.
24 A.  That's okay.

1  Q.  When have you been outside the United
2  States?
3  A.  I've been outside of the United States
4  on many occasions.
5  Q.  Okay.  For business? for pleasure? for
6  both?
7  A.  For both business and pleasure.
8  Q.  Okay.  Now, where have you traveled
9  to?
10 A.  I've been to Japan, I've been to
11 Russia, I've been to Morocco, I've been to
12 Namibia, I've been to South Africa, I've been
13 to Denmark, I've been to Norway, I've been to
14 Sweden.
15    Shall I continue?
16 Q.  Yeah.
17 A.  I've been to Germany.
18 Q.  Okay.
19 A.  I've been to Italy.
20 Q.  Okay.
21 A.  I've been to France, to Luxembourg.
22 I've been to Italy.
23 Q.  Okay.
24 A.  I've been to... Thailand.  I may be

1  forgetting some countries, but those are the
2  ones that come to mind.
3  Q.  All right.  So you're well-traveled;
4  fair statement?
5  A.  I've traveled a bit in my life, yes.
6     MR. WICKERSHAM: Mr. Werberg, I'm
7  going to ask you, if you'd be so kind, when
8  you're situated, if you'll turn your chair
9  towards the table.  Josephine's having a
10 hard time --
11    THE WITNESS: Oh, I'm sorry.
12    MR. WICKERSHAM: -- hearing you.
13 It's necessary that she get the record --
14    THE WITNESS: I was trying to
15 make sure Mr. Malofiy --
16    MR. WICKERSHAM: I know it's a
17 reaction to turn when we talk to somebody,
18 but if you cold stay in that orientation.
19    COURT REPORTER: Thank you.
20    MR. WICKERSHAM: And if you have
21 any further problems, you just speak up,
22 okay?
23    COURT REPORTER: Thank you.  I
24 will.

1     MR. WICKERSHAM: I'm sorry to
2  interrupt.
3     MR. MALOFIY: I'm guessing you
4  also want it for purposes of the video so
5  that --
6     MR. WICKERSHAM: I'm not
7  concerned about the video.  We're here to
8  make sure Josephine gets a clean record.
9  She's the lady in charge.
10    THE WITNESS: It's just my
11 natural reaction.  If you're talking to me,
12 of course, I want to face you.
13    MR. MALOFIY: No, it make a lot
14 of sense.
15 BY MR. MALOFIY:
16 Q.  Would you agree that Volvos are sold
17 in most of these countries, or would you know
18 that?
19    MR. WICKERSHAM: Form objection.
20    THE WITNESS: No, I don't know
21 exactly which countries Volvos are sold in
22 or not sold in.
23 BY MR. MALOFIY:
24 Q.  All right.  You've been to Sweden?

SUBJECT TO PROTECTIVE ORDER                                           Page 17

 1  A.   Yes.
 2  Q.   How many times have you been to
 3  Sweden?
 4  A.   I don't know exactly how many times
 5  I've been to Sweden.
 6  Q.   Mm-hmm.
 7  A.   Would you like me to estimate?
 8  Q.   Yeah.
 9  A.   I've probably been to Sweden between
10  ten and twenty times.
11  Q.   Okay.  And what was the nature of your
12  visits to Sweden?
13  A.   I've been to Sweden on both business
14  and pleasure.
15  Q.   Okay.  Now, when you say you were
16  going to Sweden for business, is that part of
17  your employment at Volvo Cars?
18  A.   Yes.
19  Q.   Okay.  A couple of things.  You were
20  at the inspection of the Volvo that we had -- I
21  believe it was back in November.
22       MR. MALOFIY: Is that correct,
23  Mr. Wickersham?  Do you remember --
24       MR. WICKERSHAM: Is that a

SUBJECT TO PROTECTIVE ORDER                                           Page 18

 1  question of the witness or a question of
 2  me?
 3       MR. MALOFIY: That's not a
 4  question to you.  If you want to respond to
 5  it.  I believe it was November 18th, 19th
 6  --
 7       MR. WICKERSHAM: Mr. Werberg was
 8  present at the vehicle inspection in this
 9  case as assistant to counsel, that's
10  correct.
11       BY MR. MALOFIY:
12  Q.   Okay.  Do you recognize this exhibit,
13  which we'll mark as Exhibit 4, Werberg-4.
14       MR. MALOFIY: Oh, I'm sorry.
15       THE WITNESS: Thank you.
16       MR. MALOFIY: I apologize.
17       MR. WICKERSHAM: Got it.
18       MR. MALOFIY: And let the record
19  reflect that I'm marking this as Werberg-4.
20       THE WITNESS: Allow me to just
21  have a look at the picture before
22  answering.
23       BY MR. MALOFIY:
24  Q.   Sure.

SUBJECT TO PROTECTIVE ORDER                                           Page 19

 1  A.   Yes, I recognize this.  This was the
 2  vehicle at inspection that we conducted toward
 3  the end of last year.
 4  Q.   And you'd agree that this is the Volvo
 5  that's subject to this lawsuit, correct?
 6  A.   Yes.  I have no reason to believe that
 7  it's not the vehicle that's in subject --
 8  that's subject in this lawsuit.
 9       MR. MALOFIY: Okay.  Let the
10  record reflect that Mr. Benson is assisting
11  me and is bringing in a wheel onto the
12  table right there.  And I'm going mark this
13  wheel as Werberg-5.
14       I want you to put it up like this
15  so it can face the camera, Mr. Benson.
16       MR. WICKERSHAM: And will you
17  identify for the record, Mr. Malofiy, the
18  source of this vehicle -- or the model year
19  or make of vehicle it came from?
20       MR. MALOFIY: No, not for
21  purposes of this questioning, not at this
22  time.
23       Can we zoom in on that with the
24  camera, sir.  Zoom in on the tire and the

SUBJECT TO PROTECTIVE ORDER                                           Page 20

 1  wheel first.  Then I'll ask subsequent
 2  questions related to that wheel.
 3       Mr. Benson, can you tilt this or
 4  turn this so that it's pointed towards
 5  Mr. Werberg, the facing part of the rim.
 6       BY MR. MALOFIY:
 7  Q.   Are you familiar with this rim, sir?
 8       MR. WICKERSHAM: The rim?
 9       BY MR. MALOFIY:
10  Q.   Yeah, this style of rim.
11  A.   I can only say that I don't dispute
12  the fact that you represent this to be a wheel.
13  Q.   Okay.
14  A.   It's a wheel assembly --
15  Q.   Okay.
16  A.   -- that you just walked in with.
17  Q.   Right, that's correct.  Do you
18  recognize it to be a certain wheel manufactured
19  by a certain car company?
20       MR. WICKERSHAM: Form objection.
21  You're asking if the tire was
22  manufactured --
23       MR. MALOFIY: No --
24       MR. WICKERSHAM: -- by a car

---

SUBJECT TO PROTECTIVE ORDER                          Page 21

1   company?
2       MR. MALOFIY: -- I'm talking
3   about the wheel.  I'll be specific when I
4   say "the tire" or "the tire."  The tire is
5   what's wrapped around the wheel itself.
6   The wheel I'm referring to is the inner
7   most portion.
8       BY MR. MALOFIY:
9   Q.  Do you understand that when I'm --
10      MR. WICKERSHAM: For purposes of
11  the visual record, you're talking about the
12  difference between the gray piece and the
13  black piece?
14      MR. MALOFIY: Yeah.  The one's
15  metal, the one's rubber.
16      MR. WICKERSHAM: Okay.
17      MR. MALOFIY: Some form of metal.
18      BY MR. MALOFIY:
19  Q.  Would you agree with me that the
20  center silver part is some form of metal?
21  A.  Well, I can describe what I see here.
22  Q.  Sure.
23  A.  I -- I agree with your representation
24  that this is a wheel assembly.  There is a

---

SUBJECT TO PROTECTIVE ORDER                          Page 22

1   alloy wheel rim, there's a tire, there's a
2   valve stem and core.  And I can't see if
3   there's any other components in, on, around --
4   Q.  Would you like to take a look --
5   A.  -- the assembly.
6   Q.  -- around the vehicle -- around the
7   wheel assembly, as you referred to it as?
8   A.  No.  I'm comfortable with that.
9   There's also at least one wheel weight.
10  Q.  Okay.  Now, in looking at this wheel,
11  I'm referring to the rim or the silver part in
12  the center.
13  A.  Yeah.  Let's call this what it is:
14  This is a wheel rim, this is a tire.
15  Q.  Okay, a wheel rim.  Are you familiar
16  with that wheel rim?
17  A.  This particular --
18      MR. WICKERSHAM: Form objection.
19  Go ahead.
20      THE WITNESS: This particular
21  wheel rim I am not familiar with more than
22  I agree with your representation that it's
23  a wheel rim.
24

---

SUBJECT TO PROTECTIVE ORDER                          Page 23

1       BY MR. MALOFIY:
2   Q.  Sure.  Are you familiar with Volvo
3   wheel rims?
4       MR. WICKERSHAM: Form objection.
5       THE WITNESS: I think it's a
6   quite general question, but I can say that
7   yes, I'm generally familiar with Volvo
8   wheel rims.
9       BY MR. MALOFIY:
10  Q.  All right.  Are you familiar with the
11  Volvo 850?
12  A.  Yes.  It's also quite a general
13  question, but I'm familiar with the Volvo 850.
14  Q.  All right.  We have marked there for
15  you a picture from the inspections of the Volvo
16  -- of Werberg-4, I believe --
17  A.  Yes.
18  Q.  -- is that correct?
19  A.  Yes.  This photo here is identified as
20  Exhibit Werberg-4.
21  Q.  All right.  If you notice there,
22  there's one wheel rim depicted in that picture
23  from the inspection.  Do you recognize that?
24  A.  Yes.  In this photo, the -- at least

---

SUBJECT TO PROTECTIVE ORDER                          Page 24

1   the right-front wheel is mounted to the
2   vehicle.
3   Q.  Okay.  Does this wheel, Werberg-5,
4   that I have before you appear to be the same
5   wheel or the same model wheel as the Volvo 850
6   wheel that we have in Werberg-4?
7       MR. WICKERSHAM: Let me
8   understand what you're asking the witness
9   to do.  You're asking him to look at a tire
10  on the table and try and match it with a
11  black-and-white photograph that's marked as
12  W-5; is that the task?
13      MR. MALOFIY: Yes.
14      MR. WICKERSHAM: Form objection.
15      MR. MALOFIY: In essence.
16      THE WITNESS: I would have no way
17  of knowing whether this loose auto part on
18  the table is the same as this individual
19  auto part pictured on this vehicle.
20      I can say that it is of the same
21  general characteristic:  It's round; it
22  appears to be the same colors; it appears
23  to be approximately the same size, shape,
24  style.

---

---

SUBJECT TO PROTECTIVE ORDER                    Page 25

1    But I would have no way of
2  knowing the origin of this specific
3  component that you've put on the table.
4    BY MR. MALOFIY:
5  Q.  I'm not asking so much of the origin,
6  but if you can tell me that it -- whether or
7  not it's the same model rim that you see on the
8  picture that we -- that's the Volvo 850 in
9  Werberg-4.  Not the origin, but if it's the
10  same style.
11    MR. WICKERSHAM: Same objections.
12    THE WITNESS: Again, the shape is
13  reminiscent.  Do you have a year and model
14  to go with this auto part you put in front
15  of me?
16    BY MR. MALOFIY:
17  Q.  Mm, at this point, I'm the person's
18  who's questioning.  I'm not providing you with
19  the year and model; that's the purpose of this
20  question to a degree.
21    Can we count the spokes on Werberg-4?
22  Can you tell me how many spokes are on
23  Werberg-4?
24  A.  Six spokes.

---

SUBJECT TO PROTECTIVE ORDER                    Page 26

1  Q.  Did you look at the picture to be
2  sure?
3  A.  Yes.
4  Q.  So we have Werberg-5 in front of you.
5  The wheel assembly and the rim specifically I'm
6  referring to.  Can you count how many spokes
7  are on the Werberg-5 exhibit?
8  A.  It has six spokes.
9  Q.  Okay.  You've worked for Volvo for how
10  long?
11  A.  Started at Volvo in 1999.
12  Q.  Does this look like a Volvo wheel?
13  A.  You can't provide me with a model
14  year, a model vehicle identification number?
15  Q.  I'm not -- I'm not providing you with
16  a model year and identification number.  What
17  I'm trying to do is get a sense if you can
18  recognize a Volvo wheel when you see it as it
19  sits before you.
20    Can you recognize that this is a Volvo
21  wheel as it sits before you, or are you
22  struggling to determine whether or not this is
23  a Volvo wheel?
24    MR. WICKERSHAM: Form objection.

---

SUBJECT TO PROTECTIVE ORDER                    Page 27

1    THE WITNESS: This wheel appears
2  to be a Volvo wheel rim.  I don't know the
3  origin of it, I don't have any
4  documentation to indicate whether it's an
5  original part, a spare part, an imitation
6  part.  But I can look at it and say that
7  it's reminiscent of a Volvo wheel rim.
8    BY MR. MALOFIY:
9  Q.  Does it appear to be reminiscent of
10  the Volvo whole rim on Werberg-4, the picture
11  of the Volvo from the vehicle inspection?
12    MR. WICKERSHAM: Form objection.
13    THE WITNESS: I think we just
14  answered that question.
15    BY MR. MALOFIY:
16  Q.  Is that a yes, sir?
17  A.  This wheel assembly is reminiscent of
18  the one pictured on the front of the 850 --
19  Q.  So --
20  A.  -- in the picture.
21  Q.  -- you would agree that it's
22  reminiscent of a Volvo 850 wheel rim; fair
23  statement?
24    MR. WICKERSHAM: Form objection.

---

SUBJECT TO PROTECTIVE ORDER                    Page 28

1    THE WITNESS: I would say that
2  this wheel rim is reminiscent of the wheel
3  rim shown in the picture mounted to the
4  front of that Volvo 850.
5    MR. MALOFIY: Okay.  My question
6  is through with this wheel assembly marked
7  as Werberg-5.  We'll set it aside.
8    We can go off the video record
9  for a moment.
10    VIDEO TECHNICIAN: The time is
11  10:58 a.m.  Off the video record.
12    (Short break taken.)
13    (Deposition resumes.)
14    MR. MALOFIY: Back on the video
15  record.
16    VIDEO TECHNICIAN: Stand by,
17  please.  The time is 11 a.m.  We are back
18  on the record.
19    MR. MALOFIY: This is marked as
20  Werberg-6.  Please let the record reflect
21  I'm handing Mr. Werberg Werberg-6.
22    BY MR. MALOFIY:
23  Q.  Do you recognize that wheel that's
24  depicted on Werberg-6?

---

1 A.  Do you have any type of model or
2 model-year information?
3 Q.  By looking at that vehicle on
4 Werberg-6, can you identify what type of Volvo
5 that is, sir?
6     MR. WICKERSHAM: Form objection.
7     THE WITNESS: Do you have a
8 vehicle identification number?
9     BY MR. MALOFIY:
10 Q.  No, you're not here to ask me
11 questions; I'm here to ask you questions.  Can
12 you identify which Volvo model that car is,
13 sir?
14 A.  Well, you've handed me a -- it looks
15 like a photograph of a portion of a vehicle, so
16 I cannot definitively say what this picture
17 represents.
18 Q.  What do you -- what model do you think
19 that photo represents?
20     MR. WICKERSHAM: Form objection.
21     THE WITNESS: My understanding is
22 that I am not here to -- to guess or assume
23 but to answer the questions to the best of
24 my ability.  So I'm going to say that this

1 picture does not give me enough information
2 to definitively say what it is.
3     BY MR. MALOFIY:
4 Q.  What would you need in order to
5 definitively say what model that picture is,
6 what Volvo model?
7 A.  I'd like to have a model, a year, and
8 preferably a vehicle identification number.
9 Q.  Well, I understand.  If I had that
10 information, what would be the point of my
11 question to you?
12     My question to you is:  As you sit
13 here, Volvo Cars of North America, I'm asking
14 you -- you just identified a six-spoke wheel as
15 a Volvo 850 -- what appears to be a Volvo 850
16 wheel.
17     We just saw from Werberg-4 there is
18 the car from the inspection which has a
19 six-spoke wheel, which appears, as you
20 testified, to be reminiscent of a Volvo 850
21 wheel.
22     Now you're looking at this picture of
23 Werberg-6, and I'm asking you:  Does this wheel
24 appear to be reminiscent of a Volvo 850 wheel?

1     MR. WICKERSHAM: Form objection.
2     BY MR. MALOFIY:
3 Q.  Take a look at it.
4 A.  So I'll need you to repeat the
5 question.  You just asked me about the car; now
6 it appears you're asking me about the wheel?
7 Q.  Yeah.  Does this wheel appear to be
8 reminiscent of a Volvo 850, as depicted in
9 Werberg-6?
10     MR. WICKERSHAM: Are you talking
11 about a wheel rim or the tire?
12     MR. MALOFIY: Uh, no.  What I'm
13 talking about -- when I say "wheel," I mean
14 the actual wheel itself, not the tire.
15     THE WITNESS: So your question is
16 not in reference to the vehicle, as you
17 originally stated; your question is in
18 reference to the wheel assembly.
19     BY MR. MALOFIY:
20 Q.  Sure.
21 A.  This wheel assembly pictured here also
22 has the same features as the wheel assembly in
23 this picture and the previous exhibit you
24 showed me.

1 Q.  And you're referring to Werberg-4 and
2 Werberg-5, correct?
3 A.  Yes.  It looks to be a round, silver
4 wheel rim with a black tire on it with six
5 spokes.  They're not completely dissimilar.
6 Q.  That picture of a vehicle, can you
7 tell me whether or not that's a Volvo?  Does it
8 appear to be a Volvo?
9     MR. WICKERSHAM: Form objection.
10 Asked and answered.
11     THE WITNESS: Are you now asking
12 me about the wheel, not the vehicle?
13     BY MR. MALOFIY:
14 Q.  The vehicle, right.  Now that you've
15 testified as to the wheel itself, I'm asking
16 about the wheel.  Does that appear to be a
17 Volvo, sir?
18     MR. WICKERSHAM: Form objection.
19     THE WITNESS: I think you asked
20 it a few times, and I answered it, that
21 looking at a picture of a portion of a
22 vehicle, I don't have enough information to
23 definitively say what vehicle it is.
24

Mark Webb, et al. v.
Volvo Cars of N.A., LLC, et al.

Leo Werberg
February 26, 2013

SUBJECT TO PROTECTIVE ORDER                                          Page 33

1     BY MR. MALOFIY:
2   Q.  I know.  But given the fact -- or
3   excuse me.  Given your testimony, as you have
4   just testified to, that the wheel looks similar
5   to the wheel you've identified as an 850 wheel,
6   my question to you is:
7        Does it help you, now that you've had
8   a chance to sort of distill some of these
9   similarities that you had mentioned of a 850
10  wheel, which is reminiscent of the wheel
11  identified as Werberg-5, the wheel in
12  Werberg-4, and also what's depicted in here as
13  Werberg-6, does that help you identify whether
14  or not this a Volvo model vehicle in the
15  picture depicted in Werberg-6?
16       MR. WICKERSHAM: Counsel, I
17  object to the form and incorporate my prior
18  objections.  Someone can take a 850 wheel
19  and put it on a VW Volkswagen.
20       MR. MALOFIY: If there's any --
21       MR. WICKERSHAM: It doesn't make
22  it a Volkswagen.
23       MR. MALOFIY: If there's going to
24  be any speaking objections, we're going to

SUBJECT TO PROTECTIVE ORDER                                          Page 34

1   have to ask him to leave.
2        MR. WICKERSHAM: Why don't you
3   ask a question that's relevant and why
4   don't you ask a question --
5        MR. MALOFIY: Please --
6        MR. WICKERSHAM: -- and listen to
7   the witness's answers.
8        MR. MALOFIY: I'll ask my
9   questions, Mr. Wickersham, and you can
10  object to them.  If they're improper, I'm
11  sure you can -- it will be discarded at the
12  time of trial but --
13       MR. WICKERSHAM: Form objection.
14       MR. MALOFIY: -- these questions
15  are directly on point.
16       BY MR. MALOFIY:
17  Q.  After having identified this wheel as
18  being a Volvo 850 wheel and similar to the
19  Volvo -- to the Exhibit Werberg-5 and
20  Werberg-4, does this picture, to you, appear to
21  be, appear to be, a Volvo model on Werberg-6?
22       MR. WICKERSHAM: Form objection.
23       THE WITNESS: I'm not sure that I
24  agree with your statement that I've

SUBJECT TO PROTECTIVE ORDER                                          Page 35

1   identified that wheel as a Volvo 850 wheel.
2   What I stated --
3        BY MR. MALOFIY:
4   Q.  Fair.
5   A.  What I stated is that the picture
6   you've put in front of me here shows a wheel
7   assembly which includes a wheel rim, which is
8   reminiscent of the wheel rim of the on the
9   front of the 850 in that picture and of the
10  Exhibit No. 5.
11  Q.  Okay.  Now coming to those
12  conclusions, does it help you -- or can you
13  tell me whether or not this appears to be a
14  Volvo depicted in the picture Werberg-6?
15       MR. WICKERSHAM: Form objection.
16       BY MR. MALOFIY:
17  Q.  Does it is appear to be a Volvo to
18  you?  And if it doesn't, it doesn't.  I'm just
19  asking, does it appear to be a Volvo?
20       MR. WICKERSHAM: Form objection.
21       BY MR. MALOFIY:
22  Q.  Not a specific model.  Just does it
23  appear to be a Volvo, that picture in
24  Werberg-6?

SUBJECT TO PROTECTIVE ORDER                                          Page 36

1        MR. WICKERSHAM: Form objection.
2        THE WITNESS: I think I've
3   already stated that if you'd like me to
4   identify a vehicle, I'm I happy to do so.
5   Show me a complete picture of the vehicle
6   and --
7        BY MR. MALOFIY:
8   Q.  That's not my question, sir.  My
9   question is:  This picture, Werberg-6, does it
10  appear to be a Volvo; yes or no?
11       MR. WICKERSHAM: Counsel, don't
12  raise your voice to my witness, please.
13       THE WITNESS: I see that you're
14  visibly upset now, and I'm doing my best to
15  answer your questions.
16       BY MR. MALOFIY:
17  Q.  Okay.  I'm asking you:  Does it appear
18  to be a Volvo?
19       MR. WICKERSHAM: Asked and
20  answered.  Form objection.
21       THE WITNESS: If you'd like to
22  show me a picture of a complete vehicle and
23  describe it with a model, a model year,
24  and/or a vehicle identification number, we

Mark Webb, et al. v.
Volvo Cars of N.A., LLC, et al.

Leo Werberg
February 26, 2013

SUBJECT TO PROTECTIVE ORDER                                          Page 37

1    can identify it.
2        BY MR. MALOFIY:
3    Q.  Of course, we can if we have a VIN
4    number and we have the model and the year.  I
5    wouldn't need to ask you the question.
6        And my question to you is:  As you sit
7    here today, can you look at a picture of a
8    Volvo and know that that's a picture of a
9    Volvo?  Or are you struggling whether or not
10   the picture depicted -- the vehicle depicted in
11   Werberg-6 is a Volvo?
12       MR. WICKERSHAM: Form objection.
13   Asked and answered.  You showed the witness
14   a portion of the photograph.  He's already
15   identified to you that there's not enough
16   in the picture to visually identify the
17   model year.  So either do as you
18   represented and show him an actual picture
19   of a Volvo, or please move on to a relevant
20   question.
21       MR. MALOFIY: Well, for the
22   record, I am showing a relevant -- a
23   picture of a Volvo.  And for the record,
24   I'm not asking about a year; I'm asking

SUBJECT TO PROTECTIVE ORDER                                          Page 38

1    about:
2        BY MR. MALOFIY:
3    Q.  Can you identify whether or not this
4    is a Volvo?  Can you identify whether or not
5    Werberg-6 is a picture of a Volvo.
6        MR. WICKERSHAM: Objection.
7    Asked and answered.
8        THE WITNESS: You've asked the
9    question several times, sir.  I've answered
10   it several times.
11       BY MR. MALOFIY:
12   Q.  You've answered it by asking -- by
13   responding that you cannot know unless I
14   provide you a VIN number, make, model, and
15   year.  That's not my question.
16       My question is:  Can you tell me
17   whether or not this appears to be a Volvo to
18   you?
19       MR. WICKERSHAM: Form objection.
20       BY MR. MALOFIY:
21   Q.  Does this appear to be a Volvo to you,
22   sir?
23   A.  This is a portion -- a picture of a
24   portion of a vehicle, or appears to be --

SUBJECT TO PROTECTIVE ORDER                                          Page 39

1    represents a portion of a vehicle.
2        MR. WICKERSHAM: Mr. Werberg,
3    will you please turn the exhibit around to
4    the camera so that everybody can understand
5    what it is you're being asked to look at.
6        (Witness complies.)
7        Thank you.  That's good.
8        THE WITNESS: So this is a
9    blank -- this is a blank piece of paper.
10   It's a faded, poor-quality picture of a
11   portion of what appears to be a vehicle.
12   It could be a vehicle, it could be a model
13   of a vehicle, it could be an illustration.
14       What -- where's the rest of it?
15       BY MR. MALOFIY:
16   Q.  Yeah, I know, and that's not my
17   question, sir.  I'm asking a very specific
18   question.
19       How about this:  Let me circle it with
20   a pen.  There is a -- an insignia on the side
21   of this picture.  Does that read "Volvo" to
22   you, sir?  Or you're having -- you're
23   struggling with the word "V-O-L-V-O"?
24       MR. WICKERSHAM: Form objection.

SUBJECT TO PROTECTIVE ORDER                                          Page 40

1        BY MR. MALOFIY:
2    Q.  Can you see what I circled on
3    Werberg-6, and can you identify this car as a
4    Volvo from the picture?
5    A.  I would --
6        MR. WICKERSHAM: Form objection.
7        THE WITNESS: I would dispute
8    your statement that I'm struggling; I'm not
9    having any struggle whatsoever.
10       BY MR. MALOFIY:
11   Q.  Can you read "Volvo" on the side of
12   that picture, sir?  Or can you not read
13   "Volvo"?
14       MR. WICKERSHAM: Form objection.
15       THE WITNESS: I can both read and
16   write.
17       BY MR. MALOFIY:
18   Q.  Okay.
19   A.  And you've circled what appears to be
20   an emblem; it's a black rectangle, and it
21   appears to have the word "Volvo" on it.
22   Q.  Okay.  Now, looking at Werberg-6,
23   after having identified the emblem that's
24   saying "Volvo" on it, after having identified

Mark Webb, et al. v.
Volvo Cars of N.A., LLC, et al.

Leo Werberg
February 26, 2013

---

SUBJECT TO PROTECTIVE ORDER                    Page 41

1   the wheel as reminiscent of a Volvo 850 wheel,
2   can you now tell me, does this appear to be a
3   Volvo model to you?
4       MR. WICKERSHAM: Form objection.
5       THE WITNESS: I think you've
6   asked me that question several times, and I
7   think I've answered it several times.
8       BY MR. MALOFIY:
9   Q.  But you've failed to identify the
10  badge insignia there, which is "Volvo" on the
11  side. So now, having identified the badge
12  insignia which says "Volvo" on the side, my
13  question to you is:  Does this picture appear
14  to be a Volvo to you?
15      MR. WICKERSHAM: Form objection.
16      THE WITNESS: This picture shows
17  a portion of what appears to be a vehicle,
18  or a model of a vehicle.
19      There is a wheel rim on it that
20  is reminiscent of the wheel rim on the 850
21  in Exhibit 4 and the wheel rim you showed
22  me in Exhibit 5. And there is what appears
23  to be a black rectangle with the word
24  "Volvo" on it.

---

SUBJECT TO PROTECTIVE ORDER                    Page 42

1       BY MR. MALOFIY:
2   Q.  All right. And you've worked for
3   Volvo for how long?
4   A.  I started working at Volvo in 1999.
5   Q.  All right. Now, you're looking at
6   this picture of a wheel assembly which appears
7   to be a Volvo 850, you're looking at a fender
8   which has an emblem which has "Volvo" on it;
9   and with your knowledge, experience, training,
10  with the time you spent at Volvo, looking at
11  Volvo vehicles, you're not able to tell me
12  whether or not this appears to be a Volvo to
13  you?
14      MR. WICKERSHAM: Form objection.
15      BY MR. MALOFIY:
16  Q.  You can't say: Yes, this appears to
17  be a Volvo, or; no, this doesn't appear to be a
18  Volvo?
19      MR. WICKERSHAM: Form objection.
20      BY MR. MALOFIY:
21  Q.  And that's what I'm asking. I'm not
22  asking you what this picture is a part of; what
23  the grade, shading of the picture is.
24      I'm asking you specifically: From

---

SUBJECT TO PROTECTIVE ORDER                    Page 43

1   looking at this picture -- not any other
2   picture, I'm not asking you the VIN number.
3   From looking at this picture, does it appear to
4   be a Volvo to you, sir?
5       MR. WICKERSHAM: Form objection.
6       THE WITNESS: I cannot
7   definitively answer what this picture
8   represents.
9       BY MR. MALOFIY:
10  Q.  Well, I understand that. I understand
11  you didn't take the photograph; I don't believe
12  you took the photograph.
13      What I'm asking you is: From looking
14  at this picture, does it appear to be a Volvo
15  to you, sir?
16      MR. WICKERSHAM: Form objection.
17  Asked and answered at least ten times now.
18      MR. MALOFIY: It has not been
19  answered.
20      THE WITNESS: You've shown me a
21  picture that shows a portion of a vehicle
22  --
23      BY MR. MALOFIY:
24  Q.  No, I understand that.

---

SUBJECT TO PROTECTIVE ORDER                    Page 44

1   A.  -- that appears to --
2   Q.  I'm asking you is: What I've shown
3   you what, I've shown you as you sit here today,
4   does this picture appear to be a Volvo; yes or
5   no? If it doesn't, that's fine. If you can't
6   tell, you can't tell.
7       But does it appear to be a Volvo from
8   your -- from what you know?
9       MR. WICKERSHAM: Form objection.
10      THE WITNESS: I cannot
11  definitively say what this picture
12  represents.
13      BY MR. MALOFIY:
14  Q.  Do you believe that this is a picture
15  of a Volvo, sir?
16      MR. WICKERSHAM: Form objection.
17      THE WITNESS: I'm not here to
18  guess or assume.
19      BY MR. MALOFIY:
20  Q.  So it's really -- with identifying the
21  wheel assemblies of a Volvo 850, or being it
22  appears to be a Volvo 850, with identifying the
23  badge on the side of the vehicle with the same
24  Volvo, you're still struggling whether or not

---

Mark Webb, et al. v.
Volvo Cars of N.A., LLC, et al.

Leo Werberg
February 26, 2013

---

SUBJECT TO PROTECTIVE ORDER                    Page 45

1   this appears to be a Volvo.
2       MR. WICKERSHAM: Form objection.
3       THE WITNESS: There is not enough
4   information here.
5       MR. MALOFIY: All right.  Please
6   let the record reflect that I'm handing
7   Mr. Werberg Werberg-7.
8       And if we could hold that up for
9   the camera.  Cameraman, can you zoom in on
10  that, please.
11      VIDEO TECHNICIAN: Sure.  Okay.
12      BY MR. MALOFIY:
13  Q.  All right.  Now... Now that we see
14  these two pictures, does this help you identify
15  whether or not this vehicle's a Volvo?
16      MR. WICKERSHAM: Form objection.
17  The photograph shows the front end of --
18      MR. MALOFIY: Objection. I'm
19  going to object. If you want to put
20  speaking objections on, that's fine, but
21  you're going to have to ask -- the witness
22  is going to have to leave.
23      MR. WICKERSHAM: I'm not asking
24  anybody to leave.

---

SUBJECT TO PROTECTIVE ORDER                    Page 46

1       The photograph presented on the
2   record shows the front end of one vehicle
3   of one color, and the back end of another
4   vehicle of another color.
5       Will you represent why it is.
6       MR. MALOFIY: No.  I'm going to
7   object to your speaking objections.  If you
8   want him to leave --
9       MR. WICKERSHAM: I don't wish him
10  to leave.  I wish him to be here to try and
11  answer relevant questions.
12      MR. MALOFIY: Well, he's not
13  going to be here while you're making
14  speaking objections.
15      MR. WICKERSHAM: The objection's
16  on the record.
17      MR. MALOFIY: The exhibit is what
18  it is, it will speak for itself, it will be
19  attached.
20      MR. WICKERSHAM: Your
21  representation and introduction of the
22  exhibit is inappropriate and incomplete
23  'cause you represented it was the same
24  vehicle.

---

SUBJECT TO PROTECTIVE ORDER                    Page 47

1       MR. MALOFIY: Okay.  It is the
2   same vehicle.
3       MR. WICKERSHAM: Okay.  So it
4   just happens that the front end and back
5   end are different colors.
6       MR. MALOFIY: Mr. -- okay, you're
7   not here to testify.  If you want to
8   testify, I can ask you the questions.
9       MR. WICKERSHAM: Form objection.
10      MR. MALOFIY: Mr. Wickersham,
11  would you like me to ask you the questions?
12      MR. WICKERSHAM: Sure.  It's not
13  the same car.
14      MR. MALOFIY: Okay.  No, that's
15  false.
16      MR. WICKERSHAM: Go ahead.
17      MR. MALOFIY: If you want to make
18  yourself a fact witness, that's fine.
19      MR. WICKERSHAM: Mr. Werberg,
20  again, if you'll orient yourself so that
21  the court reporter can hear you.
22      Go ahead.  The question pending
23  is what?
24

---

SUBJECT TO PROTECTIVE ORDER                    Page 48

1       BY MR. MALOFIY:
2   Q.  Does this help you identify whether or
3   not this vehicle is a Volvo?
4       MR. WICKERSHAM: Form objection.
5       THE WITNESS: Help me with what?
6   Please state the question again.
7       BY MR. MALOFIY:
8   Q.  Now seeing Werberg-7, does this appear
9   to be a Volvo?
10      MR. WICKERSHAM: Form objection.
11      THE WITNESS: This exhibit that
12  you put in front of me, labeled
13  "Werberg-7," appears to show portions of
14  passenger vehicles.
15      BY MR. MALOFIY:
16  Q.  So you'd agree that they're passenger
17  vehicles.
18      MR. WICKERSHAM: Form objection.
19      THE WITNESS: It appears to be...
20      BY MR. MALOFIY:
21  Q.  Let's not confuse you.  Let's do this.
22      MR. WICKERSHAM: Excuse me.  The
23  witness oriented some photographs, exhibits
24  that you used to assist himself.  So please

---

SUBJECT TO PROTECTIVE ORDER                                    Page 49

1   don't mess with what the witness --
2       MR. MALOFIY: This is not subject
3   to my questioning.  My questioning is not a
4   trick, Mr. Wickersham --
5       MR. WICKERSHAM: It exactly is a
6   trick, Counsel, and --
7       MR. MALOFIY: No, it's not.  My
8   questioning is about Werberg-7.
9       MR. WICKERSHAM: Okay.
10      MR. MALOFIY: All right.  If you
11  want to follow up with questioning of your
12  witness, you can do so at the end.
13      MR. WICKERSHAM: Mr. Werberg,
14  would you like to utilize the other
15  exhibits to answer this question?
16      THE WITNESS: I'm not really sure
17  I really understand the question.  I'm not
18  sure I really understand --
19      BY MR. MALOFIY:
20  Q.  Well, what part don't you understand,
21  sir?
22  A.  Please restate the question.
23      MR. MALOFIY: Yeah.  Could you
24  read it back, Josephine?

SUBJECT TO PROTECTIVE ORDER                                    Page 50

1       COURT REPORTER: "So you'd agree
2   that they're passenger vehicles."
3       THE WITNESS: Yeah.  To me,
4   they -- absolutely.  This picture appears
5   to show the portion of what looks like two
6   passenger vehicles.  That's what I see in
7   this picture.  I'm not really sure what it
8   is.  Are they, um --
9       BY MR. MALOFIY:
10  Q.  Sure, let's -- let's break it down.
11  A.  What's the orientation?
12  Q.  Yeah, let's break it down.
13      Do you see a -- an emblem on the top
14  passenger vehicle, as you described it, that's
15  saying "Volvo" on it?  Do you see that, sir?
16      MR. WICKERSHAM: Form objection.
17      BY MR. MALOFIY:
18  Q.  Yes or no?
19  A.  The portion of the vehicle that
20  appears in the upper right-hand corner of this
21  picture does have a black rectangle on it,
22  which appears to have the word "Volvo" on it.
23  Q.  All right.  And you would agree that
24  this wheel assembly appears to be a Volvo 850

SUBJECT TO PROTECTIVE ORDER                                    Page 51

1   wheel assembly; fair statement?
2       MR. WICKERSHAM: Form objection,
3   incorporating all of objections to the
4   exact, same in the prior exhibit.
5       BY MR. MALOFIY:
6   Q.  That's what you testified to sir, is
7   it not?
8   A.  I disagree with that statement.  I did
9   not identify that as an 850 wheel.  I can -- I
10  can restate, if you like, what I stated several
11  times.
12  Q.  It appears to be reminiscent of a
13  Volvo 850 wheel.
14  A.  What I stated was:  This wheel rim
15  appears to be reminiscent of the wheel rim
16  shown in Exhibit 4.
17  Q.  Okay.
18  A.  It also appears to be reminiscent of
19  the wheel rim identified as Exhibit 5 --
20  Q.  Okay.
21  A.  -- in that it is round, it appears to
22  be silver, it has a black tire on it, and it
23  has six spokes.  That's what I stated.
24  Q.  The bottom picture -- or the bottom

SUBJECT TO PROTECTIVE ORDER                                    Page 52

1   portion of the picture has a passenger vehicle,
2   as you described it.  Does this appear to be a
3   Volvo to you, sir?
4       MR. WICKERSHAM: Form objection.
5       THE WITNESS: The bottom...
6       BY MR. MALOFIY:
7   Q.  The bottom picture of Werberg-7, does
8   this appear to be a Volvo to you?
9   A.  The lower picture here is, again, a
10  lower portion of a passenger vehicle.  There's
11  some writing on it.
12  Q.  What writing do you see, sir?
13  A.  It says "Volvo 850 GLT KHS895."
14  Q.  Okay.  I'll show you what's been
15  marked as Werberg-8.
16      MR. MALOFIY: Counsel?
17      I'm going to ask that you to
18  cease all speaking objections.
19      MR. WICKERSHAM: Ask what you
20  wish.
21      MR. MALOFIY: And if you want to,
22  I'll ask him to leave the room --
23      MR. WICKERSHAM: Counsel, you've
24  handed me Werberg-8, which is now the

Mark Webb, et al. v.
Volvo Cars of N.A., LLC, et al.

Leo Werberg
February 26, 2013

SUBJECT TO PROTECTIVE ORDER                           Page 53

1   exact, same item as Werberg-7, except
2   you've now added additional and black-and-
3   yellow box.
4       MR. MALOFIY: Again, I'm going to
5   object to -- to your characterization of
6   what's here.  Please review it.  And if you
7   want to make an objection, we'll ask the
8   witness to leave.
9       BY MR. MALOFIY:
10  Q.  I have what's been marked as Werberg-8
11  here.
12  A.  Let's get all of the exhibits, uh --
13  let's get all of the exhibits in front of me --
14  Q.  Sure.
15  A.  -- so I can see them properly.  3, 4,
16  5, 6, 7, and now you've handed me 8.
17  Q.  Yes.
18  A.  Okay.  What was your question?
19  Q.  Now, you just testified that the
20  writing on this vehicle says, "Volvo 850 GLT."
21  You agree with that, correct?
22  A.  One of the -- one of the three
23  illustrations on this page has writing on it.
24  Q.  Yes.

SUBJECT TO PROTECTIVE ORDER                           Page 54

1   A.  And the writing on that illustration
2   is "Volvo 850 GLT KHS895."
3   Q.  Okay.  Now, there's also a picture on
4   top of that Volvo 850 on the bottom there of
5   Werberg-8, correct?
6   A.  No.
7   Q.  Oh, let me identify what has a
8   yellow -- like yellow, I guess, heading on top
9   of it.  It's on top of the Volvo 850 passenger
10  car, on the bottom-most portion.
11      Now, do you see that?  If you want, I
12  can circle it for you, sir.
13  A.  I do not agree that it's a picture.
14  Q.  Well, what do you -- what do you
15  believe it is?
16  A.  Are you referring to this box --
17  Q.  Yeah.
18  A.  -- with the yellow bar?
19  Q.  Let's circle it here.
20      MR. MALOFIY: For the record,
21  Mr. Werberg is circling the box on top of
22  the passenger vehicle on the bottom-most
23  portion of Werberg-8.
24      THE WITNESS: I would not -- no,

SUBJECT TO PROTECTIVE ORDER                           Page 55

1   I would not refer to that as "a picture."
2       BY MR. MALOFIY:
3   Q.  And what would you refer to this as?
4   A.  I would call that "an illustration."
5   Q.  An illustration.  So you'd agree that
6   an illustration is on top of the passenger car
7   on the bottom-most portion of Werberg-8,
8   correct?
9   A.  It's starting to look a bit like a
10  collage or some sort of abstract art project.
11  Q.  Okay.  But you'd agree that it's on
12  top of the Volvo 850 GLT; fair statement?
13  A.  I agree that there's an illustration
14  on this page, that it looks like someone has
15  placed next to a picture or a photograph.
16  Q.  Can you tell me what that illustration
17  is of, sir?  Can you tell me if that's a Volvo
18  in that illustration?
19      MR. WICKERSHAM: Form objection.
20      BY MR. MALOFIY:
21  Q.  The illustration that's circled on
22  Werberg-8, can you tell me what that
23  illustration is of?
24  A.  Do you have any identifying

SUBJECT TO PROTECTIVE ORDER                           Page 56

1   information to go with this illustration?
2   Q.  I'm asking you, sir.  You're here.
3   You're here on behalf of Volvo Cars of North
4   America to testify.
5       My question to you is:  Can you -- can
6   you tell me what this illustration is of, which
7   is -- which you identified as an illustration,
8   circled as Werberg-8?
9       MR. WICKERSHAM: Form objection.
10      THE WITNESS: Do you have any
11  identifying information to go with this
12  illustration?
13      BY MR. MALOFIY:
14  Q.  No.  I'm asking you to take your eyes,
15  look at Werberg-8, look at what's been circled
16  as this illustration, as you've identified it,
17  not as a picture, but an illustration, and tell
18  me what that appears to be, or what you believe
19  that appears to be.
20      MR. WICKERSHAM: Form objection.
21      THE WITNESS: It's an
22  illustration.
23      BY MR. MALOFIY:
24  Q.  Of what, sir?

SUBJECT TO PROTECTIVE ORDER                    Page 57

1  A.   This is the illustration -- or an
2  illustration of what appears to be a, um... a
3  structure.
4  Q.   A structure.  Do you know -- can you
5  identify what make or model that structure is,
6  sir?
7      MR. WICKERSHAM: Form objection.
8      THE WITNESS: Make or model?
9      BY MR. MALOFIY:
10 Q.   The make or model of the structure.
11 You said that appears to be a structure.  Can
12 you tell me what make?
13 A.   No, I cannot identify what make or
14 model this structure is.
15 Q.   Okay.  If you look at that
16 illustration on Werberg-8, can you identify
17 door bars, what appears to be door bars, in the
18 illustration?
19     MR. WICKERSHAM: Form objection.
20     THE WITNESS: I don't even see
21 any doors in this illustration.
22     BY MR. MALOFIY:
23 Q.   Okay.  Well, is there some form of
24 structure in that illustration where the doors

SUBJECT TO PROTECTIVE ORDER                    Page 58

1  would be?
2      MR. WICKERSHAM: Form objection.
3      THE WITNESS: This illustration
4  appears to show a structure.  There's a
5  large -- there's a large, yellow arrow on
6  one side of it, and then there's many, many
7  small, yellow arrows flowing through the
8  structure.
9      BY MR. MALOFIY:
10 Q.   Let me -- let me identify what I'm
11 referring to specifically.  I will use a -- I
12 will mark -- your mic, I think, fell off.
13 A.   Oh, thank you.
14 Q.   Yes.  I will circular within the
15 circle on Werberg-8 one, two, three, four
16 smaller circles within Werberg-8 to
17 orientate -- or to get the orientation of what
18 I'm referring to for purposes of this witness.
19 If you look here now, at Werberg-8, you'll see
20 my -- my four circles.
21 A.   (Witness looks at Werberg-8.)
22 Q.   Four circles.  Do you see those four
23 smaller circles within the bigger circles?
24 A.   I see that you've drawn four ovals.

SUBJECT TO PROTECTIVE ORDER                    Page 59

1  Q.   Okay.  Do you see the door bars
2  contained within those circles, sir?
3      MR. WICKERSHAM: Form objection.
4      THE WITNESS: What I see in your
5  four ovals is, uh... is part of the
6  illustration showing some sort of
7  structure.
8      BY MR. MALOFIY:
9  Q.   But you do see some -- some sort of
10 structure in those four circles, correct?
11     MR. WICKERSHAM: Form objection.
12     THE WITNESS: I see that you've,
13 uh...
14     BY MR. MALOFIY:
15 Q.   No, I'm asking what you see.  Do you
16 see those -- the four structures which are --
17 what you just testified to?  Do you see those
18 four structures in those circles?
19     MR. WICKERSHAM: Form objection.
20     THE WITNESS: I see that you've
21 drawn four ovals around what appears to be
22 a part of this structure.
23     BY MR. MALOFIY:
24 Q.   Okay.  Would you identify that as door

SUBJECT TO PROTECTIVE ORDER                    Page 60

1  bars?
2      MR. WICKERSHAM: Form objection.
3      THE WITNESS: I would not
4  identify that without having more
5  information; maybe a better picture.
6      This illustration is clearly
7  trying to point out something since it has
8  bright-yellow arrows, and the underlying
9  structure is very dark and gray and shaded
10 and -- and not very clear at all.
11     BY MR. MALOFIY:
12 Q.   The parts that I circled, what do you
13 identify those structural parts, as you
14 referred to them as?
15     MR. WICKERSHAM: Form objection.
16     BY MR. MALOFIY:
17 Q.   How would you refer to those parts of
18 an automobile?
19     MR. WICKERSHAM: Same objection.
20     BY MR. MALOFIY:
21 Q.   Or that structure?
22 A.   I did not state that they're
23 automobile parts; that was you who stated that.
24     I stated that they are part of the

SUBJECT TO PROTECTIVE ORDER                          Page 61

1  underlying structure that this illustration is
2  using to try to point out some sort of flow
3  with the bright-yellow arrows.
4  Q.  All right.  But the parts that I
5  circled, you're not able to tell me if that's a
6  door bar or if it's an anti-intrusion door bar
7  or what that appears to be in this picture,
8  correct?
9  A.  No.  They're not --
10      MR. WICKERSHAM: Form objection.
11      THE WITNESS: They're not at all
12  included in the --
13      BY MR. MALOFIY:
14  Q.  That's fine.
15  A.  They're not at all --
16  Q.  Let's go to the next picture.
17  A.  I wasn't quite finished yet.
18  Q.  I'm sorry.  I apologize.
19  A.  They're not all included in the
20  underlying point of this illustration.
21  Q.  Okay.  Let -- let me move forward to
22  my next question, sir.  Thank you.
23      I have what's marked here as
24  Werberg-9.  Werberg-9.  Now --

SUBJECT TO PROTECTIVE ORDER                          Page 62

1      MR. MALOFIY: Can the camera see
2  that?
3      VIDEO TECHNICIAN: Yes.
4      BY MR. MALOFIY:
5  Q.  You've identified the car on the
6  bottom of this picture as a Volvo 850 GLT.  You
7  said you were having difficulty identifying the
8  make and model of the illustration.  My
9  question to you is now: There's some
10  additional text on Werberg-9, correct?
11      MR. WICKERSHAM: Form objection.
12  Again, for the record, this is a document
13  that was created by counsel.
14      MR. MALOFIY: I'm going to object
15  to Counsel's characterization, and I'm
16  going to continue on with my questions.
17      BY MR. MALOFIY:
18  Q.  Can you see text on Werberg-9 now,
19  sir?
20  A.  The document presented to me labeled
21  "Werberg-9" does include text.
22  Q.  Yes.  Now, can you read that text to
23  me, sir?
24  A.  Yes, I can read this text.

SUBJECT TO PROTECTIVE ORDER                          Page 63

1  Q.  Slowly, please.
2  A.  "Side Impact Protection System is a
3  unique Volvo safety development which involves
4  strengthening of the B pillar and floor
5  members, a reinforced door sill and roof
6  something.  These enhancements play an
7  important role in dissipating crash forces
8  through the car body by redirecting them around
9  the safety cage.
10      "In addition, genuine Volvo interior
11  door panels have the flexibility needed to
12  provide even greater crash energy absorption."
13  Q.  Now, this text is over the top of the
14  Volvo GLT, which you've identified on the
15  bottom-most portion of the picture, correct?
16      MR. WICKERSHAM: Form objection.
17      THE WITNESS: The text that I
18  just read --
19      BY MR. MALOFIY:
20  Q.  Right.  Where's the text on this
21  picture?
22  A.  The text that I just read is over the
23  picture or photograph that seems to represent a
24  part of a vehicle.

SUBJECT TO PROTECTIVE ORDER                          Page 64

1  Q.  But which you previously identified
2  from the writing as a Volvo 850 GLT, correct,
3  sir?
4      MR. WICKERSHAM: Form objection.
5      THE WITNESS: No, I did not
6  identify the vehicle.  What I stated was
7  that there's text on this vehicle.
8      BY MR. MALOFIY:
9  Q.  Oh, I'm sorry.
10  A.  And the text states "Volvo" -- I
11  believe it states "Volvo 850 GLT KHS895."
12  Q.  Okay.  So you'd agree that this
13  writing, this text, talking about SIPS, you
14  understand SIPS to be a side impact protection
15  system offered by Volvo, correct?
16      MR. WICKERSHAM: Form objection.
17      THE WITNESS: I am familiar with
18  the term "SIPS."
19      BY MR. MALOFIY:
20  Q.  Do you understand it to be a side
21  impact protection system offered by Volvo?
22  A.  SIPS --
23      MR. WICKERSHAM: Form objection.
24      THE WITNESS: SIPS is an acronym

SUBJECT TO PROTECTIVE ORDER                    Page 65

1    that stands for "Side Impact Protection
2    System."
3        BY MR. MALOFIY:
4    Q.  Is this offered by any other company
5    that you're aware of, or is it a product -- a
6    patented product from Volvo?
7        MR. WICKERSHAM: Form objection.
8        THE WITNESS: I'm not involved in
9    design and manufacturing patents.
10       BY MR. MALOFIY:
11   Q.  Oh.  Do you understand SIPS to be a
12   safety feature marketed and advertised by
13   Volvo?
14       MR. WICKERSHAM: Form objection.
15       THE WITNESS: Side impact
16   protection system is a feature of Volvo
17   cars.
18       BY MR. MALOFIY:
19   Q.  Is it a performance feature, or is it
20   a safety feature?
21   A.  No, it's a safety feature.
22   Q.  Okay.  So we can agree that the side
23   impact protection system is a safety feature
24   offered by Volvo cars, correct?

SUBJECT TO PROTECTIVE ORDER                    Page 66

1        MR. WICKERSHAM: Form objection.
2        THE WITNESS: The side impact
3    protection system is one of the many
4    patented safety features.
5        BY MR. MALOFIY:
6    Q.  Yeah.  You would agree with me that,
7    on Werberg-9, the text is on top of the
8    passenger vehicle, which you've identified from
9    its writing as a Volvo GLT; fair statement?
10       MR. WICKERSHAM: Form objection.
11       THE WITNESS: Please ask a
12   question instead of asking me to agree with
13   you.  If you ask a question, I'll gladly
14   answer.
15       BY MR. MALOFIY:
16   Q.  That is a question, sir.  No, sir,
17   that is a question.  That's how it's done.
18   That's a question.
19       I'm asking you:  Do you agree with
20   that statement?
21   A.  Okay, please repeat it.
22   Q.  So my question to you:  You've
23   identified the passenger vehicle in the
24   bottom-most portion of Werberg-9, from its

SUBJECT TO PROTECTIVE ORDER                    Page 67

1    writing, as a Volvo GLT; fair statement?
2    A.  What I stated was that the portion of
3    the -- of what appears to be a passenger
4    vehicle has writing on it that says "Volvo" --
5    what I believe to read "850 GLT KHS895."
6    Q.  Okay.  And you'd agree with me that
7    the text where it says "SIPS" is placed on top
8    of this passenger vehicle in the bottom-most
9    portion, which reads" Volvo GLT," correct?
10   A.  The text that I just read is placed on
11   top of this picture.
12   Q.  Okay.  And you'd agree that the
13   illustration, which you've identified as an
14   illustration, is on top also of this passenger
15   vehicle in the bottom-most portion; fair
16   statement?
17       MR. WICKERSHAM: Form objection.
18       THE WITNESS: The illustration
19   that's in the middle of this page is
20   partially covering what I believe to be a
21   picture of part of a passenger vehicle in
22   the background.
23       BY MR. MALOFIY:
24   Q.  Thank you.

SUBJECT TO PROTECTIVE ORDER                    Page 68

1        I'm going to show you what's been
2    marked as Werberg-10.
3        MR. MALOFIY: Counsel?
4        BY MR. MALOFIY:
5    Q.  This is Werberg-10.
6    A.  (Witness looks at Werberg-10.)
7    Q.  Besides being able to identify a wheel
8    assembly, which appears to be from a Volvo 850,
9    and a car on the upper-most portion, which
10   appears to be an insignia for Volvo, and
11   besides the car the bottom-most portion, which
12   appears to be a Volvo GLT from the writing on
13   it, can you identify any other make or model of
14   Volvo on that page, sir?
15       MR. WICKERSHAM: Form objection.
16       THE WITNESS: What you've put in
17   front of me appears to be some sort of, um,
18   advice or advertisement titled, "Insist on
19   Genuine Volvo Body Parts."  And there's a
20   lot of text on this page.
21       But it's clearly -- this is
22   clearly some sort of advice or
23   advertisement, just as it states, to insist
24   on genuine Volvo body parts.  That's what

SUBJECT TO PROTECTIVE ORDER                    Page 69

1   I -- that's what I see here.
2       BY MR. MALOFIY:
3   Q.  Do you believe this to be a Volvo
4   advertisement, sir?
5   A.  It states --
6       MR. WICKERSHAM: Form objection.
7       THE WITNESS: The document states
8   "Volvo" on it.  I don't see any indication
9   here as to who wrote or printed this
10  document.
11      BY MR. MALOFIY:
12  Q.  Okay.  Besides what you previously
13  identified in my previous questions is what
14  appears to be a Volvo 850 or a wheel of a Volvo
15  850 or an insignia of a Volvo or the bottom-
16  most portion of the Volvo 850 based upon what's
17  written on that advertisement, as you have
18  called it, my question to you is:  Is there any
19  other make or model of Volvo that you can
20  identify on Werberg-10?
21      MR. WICKERSHAM: Form objection.
22      THE WITNESS: Do you have any
23  better copy of these pictures so I can have
24  a closer look at this illustration?

SUBJECT TO PROTECTIVE ORDER                    Page 70

1       BY MR. MALOFIY:
2   Q.  Sir, I don't, uh, but that's not my
3   question.  My question for you is -- is:  Can
4   you identify any other make or model of Volvo
5   represented in this advertisement other than
6   the Volvo 850?
7       MR. WICKERSHAM: Form objection.
8   You don't have another picture to respond
9   to --
10      MR. MALOFIY: I'm not responding
11  to his questions.
12      MR. WICKERSHAM: Okay.  Are you
13  asking him to identify the make and model
14  of the illustration, sir?
15      MR. MALOFIY: That's right.
16      MR. WICKERSHAM: Okay.  So the
17  witness has asked you, do you have an
18  actual picture that he can see of that make
19  or model?
20      MR. MALOFIY: And I'm -- I'm
21  responding:  That is the picture.
22      MR. WICKERSHAM: So this is the
23  best he's going to get is what you're
24  saying?

SUBJECT TO PROTECTIVE ORDER                    Page 71

1       BY MR. MALOFIY:
2   Q.  From this -- from what I've shown you
3   here, from what I've shown you here, can you
4   identify any other Volvo make or model from
5   Werberg-10 other than the Volvo 850 GLT, sir?
6       MR. WICKERSHAM: Form objection.
7       THE WITNESS: We don't have any
8   other background or identifying information
9   to go with this?
10      MR. WICKERSHAM: He's saying he's
11  not going to give it to you.  The question
12  is:  Can you do it from that document?
13      MR. MALOFIY: That's not what I'm
14  saying.
15      BY MR. MALOFIY:
16  Q.  I'm saying the question is pertaining
17  to this document, not any other document.  My
18  question is to you.
19      MR. WICKERSHAM: Form objection.
20      THE WITNESS: There could be -- I
21  mean, this illustration that's, um, showing
22  some sort of flow indicated by the bright-
23  yellow arrows has an underlying structure
24  behind it.  It could be, uh -- by hearing

SUBJECT TO PROTECTIVE ORDER                    Page 72

1   your questions that you're assuming that
2   it's a vehicle, I would --
3       BY MR. MALOFIY:
4   Q.  Do you believe that illustration to be
5   a vehicle, sir?
6   A.  I would agree --
7       MR. WICKERSHAM: Form objection.
8       THE WITNESS: I would agree
9   that -- I would agree that the underlying
10  structure that's not that clearly seen is
11  supposed to represent a car body.
12      BY MR. MALOFIY:
13  Q.  Okay.
14  A.  It could be any one of a number of
15  models.
16  Q.  Okay.  As you read this, do you
17  understand the SIPS system, the SIPS, to be
18  discussing a feature on the Volvo 850 GLT?
19      MR. WICKERSHAM: Form objection.
20      THE WITNESS: Nowhere -- nowhere
21  in the text do I see a model or a model
22  year identified.  I see just a general -- a
23  very general description of the SIPS
24  system.

Mark Webb, et al. v.
Volvo Cars of N.A., LLC, et al.

Leo Werberg
February 26, 2013

---

SUBJECT TO PROTECTIVE ORDER                    Page 73

1     BY MR. MALOFIY:
2 Q.  Yes.  If you -- you did identify on
3 that -- on that Werberg-10, you could identify
4 that the car depicted on the bottom-most
5 portion is a Volvo GLT from the text, correct?
6     MR. WICKERSHAM: Form objection.
7     THE WITNESS: There is text on
8 the back of this portion of the vehicle.
9     BY MR. MALOFIY:
10 Q.  And then the text -- the text is
11 placed on top, SIPS.  The SIPS text is placed
12 on top of that vehicle.  Do you understand it
13 to mean it's referring to the SIPS system on
14 the Volvo GLT, sir?
15     MR. WICKERSHAM: Form objection.
16     THE WITNESS: It may or may not.
17 I read it as a complete document about
18 insisting on genuine Volvo body parts.
19     BY MR. MALOFIY:
20 Q.  Do you see any other make or model
21 identified on this advertisement, sir?
22     MR. WICKERSHAM: Asked and
23 answered several times.
24     MR. MALOFIY: He never answered,

---

SUBJECT TO PROTECTIVE ORDER                    Page 74

1 sir.
2     BY MR. MALOFIY:
3 Q.  Can you identify by writing, by text,
4 by anything which I've shown you in Werberg-10
5 identifying any other make or model vehicle?
6     MR. WICKERSHAM: Form objection.
7     THE WITNESS: There is what
8 appears to be two photos here, and then
9 there's one illustration.
10     BY MR. MALOFIY:
11 Q.  Right.  And from those two photos and
12 that one illustration, can you identify any
13 other make and model other than the Volvo 850
14 GLT?
15     MR. WICKERSHAM: Form objection.
16     THE WITNESS: It could be any one
17 of a number of models represented by this
18 illustration.
19     BY MR. MALOFIY:
20 Q.  No, I'm asking you not just the
21 illustration.  Can you identify any other
22 model, make or model, on Werberg-10 other than
23 a Volvo 850 GLT?
24     MR. WICKERSHAM: Objection to

---

SUBJECT TO PROTECTIVE ORDER                    Page 75

1 form.  Asked and answered.
2     THE WITNESS: You appear to be
3 asking me the same question several times.
4     BY MR. MALOFIY:
5 Q.  I'm -- but I'm getting -- but I'm not
6 getting a clear, straight answer.
7 A.  I'm giving you --
8     MR. WICKERSHAM: You're not
9 listening to the answer, Counsel.
10     THE WITNESS: I'm giving you my
11 honest answer to the question.  And you're
12 welcome to continue to ask me the same
13 question, and I'm going to continue to give
14 you the same answer.
15     BY MR. MALOFIY:
16 Q.  Okay.  So you cannot identify any
17 other model other than a Volvo 850 GLT on this
18 advertisement, correct?
19     MR. WICKERSHAM: Form objection.
20     THE WITNESS: There could be any
21 one of a number of models.
22     BY MR. MALOFIY:
23 Q.  I understand that, but I'm asking if
24 can you identify any other model other than the

---

SUBJECT TO PROTECTIVE ORDER                    Page 76

1 Volvo 850 GLT, not that there can be any other
2 number of one, not that you can list me a
3 thousand or a million.  Can you identify any
4 other model, make or model, of the vehicle on
5 this document Werberg-10 other than the 850
6 GLT, which you've already identified?
7     MR. WICKERSHAM: Form objection.
8     THE WITNESS: There can be any
9 one of a number of models represented by
10 this illustration.
11     BY MR. MALOFIY:
12 Q.  Name one.
13 A.  Well, I can tell you what it clearly
14 isn't.
15 Q.  Is it a farm tractor?
16 A.  I would say that no, this is not --
17 this illustration does not represent a farm
18 tractor.
19 Q.  Is it a Volvo?
20 A.  I can't say for certain.  It appears
21 to represent what I would call "a four-door
22 passenger sedan."
23 Q.  All right.  Fair enough.
24     MR. WICKERSHAM: Do you need a

---

SUBJECT TO PROTECTIVE ORDER                    Page 77

1  quick break?
2     MR. MALOFIY: Just about five
3  more minutes of questions.  Then we can
4  take a quick break or even pause for lunch,
5  if you want to do lunch this early.
6     Are you okay?
7     THE WITNESS: Not a problem.
8     BY MR. MALOFIY:
9  Q.  I'm going to show you what's marked as
10  Werberg-12.
11     MR. WICKERSHAM: There is not
12  going to be a Werberg-11 for the record?
13     MR. MALOFIY: No, not at this
14  time.
15     MR. WICKERSHAM: Okay.  I just
16  want to keep my notes clear.
17     BY MR. MALOFIY:
18  Q.  Can you identify in the middle of
19  Werberg-11 -- excuse me, of Werberg-12 the make
20  or model of the center automobile?
21  A.  So let me have a minute just to digest
22  this document you put in front of me.
23     So this is another collage of, um, a
24  combination of photographs and illustrations.

SUBJECT TO PROTECTIVE ORDER                    Page 78

1  Some of them are very abstract.  Some of them
2  are very abstract, some of them are more
3  distinct.
4  Q.  The one in the middle, can you
5  identify what make or model vehicle that is?
6  Not year, just make or model.
7  A.  It's just a clipped portion of a --
8  it's almost an artist's rendition here.  It's a
9  clipped portion of what I would say is a
10  passenger vehicle and --
11  Q.  Does it appear to be a Volvo 850 to
12  you, sir?
13  A.  I can't say for certain what model it
14  is.
15  Q.  Do you -- does it appear to be a Volvo
16  850?  Not for certain.  Does it appear to be a
17  Volvo 850?  I'm not asking you to be certain, a
18  hundred percent certain.  I'm asking you what
19  it appears to be as you --
20     MR. WICKERSHAM: Form objection.
21     BY MR. MALOFIY:
22  Q.  -- as you sit here and you testify.
23  A.  I'm not comfortable guessing or
24  assuming with the very limited information.

SUBJECT TO PROTECTIVE ORDER                    Page 79

1  Q.  So it would be a guess to you to
2  make -- to make a statement of whether or not
3  this appears to be a Volvo 850.
4     MR. WICKERSHAM: Form objection.
5     BY MR. MALOFIY:
6  Q.  You'd be guessing; you really wouldn't
7  know.
8     MR. WICKERSHAM: Form objection.
9     THE WITNESS: I cannot
10  definitively say what model or model year
11  is represented by this illustration.
12     BY MR. MALOFIY:
13  Q.  So, in other words, when you say
14  "definitively," that means you're definite.
15  You can't be definitely sure what model this
16  is?
17  A.  I cannot be sure what model is, uh,
18  represented here.  I can't even, um -- I can't
19  even identify if this is a photograph, an
20  illustration.  Is it a part of a complete
21  vehicle?  Is it an assembly of spare parts?
22  There's no wheels on it.
23  Q.  It appears to be a picture, though,
24  does it not?

SUBJECT TO PROTECTIVE ORDER                    Page 80

1  A.  I would think that it's just a --
2  Q.  It appears to be a picture of a Volvo?
3  A.  I would think that this is just a
4  poor-quality reproduction of a whole
5  photograph.
6  Q.  All right.  Let's take a look at this
7  center emblem.  I'm going to circle it on
8  Werberg-12.  Have you ever seen that emblem
9  before?
10  A.  Yes.
11  Q.  What's that emblem of?  On the grille,
12  right in the front of the car.
13  A.  It's difficult to see in this picture,
14  but this appears to be, um, an iron mark.
15  Q.  An iron mark?  Who uses an iron mark?
16  A.  I'm sorry.  Repeat your question.
17  Q.  Who uses an iron mark?  You referred
18  to the term, it appears to be an iron mark on
19  the grille.
20  A.  Yes.
21  Q.  What's an iron mark?
22  A.  An iron mark is the old symbol for
23  iron.
24  Q.  Oh.  Do you ever see cars, they have

SUBJECT TO PROTECTIVE ORDER                                Page 81

1   some sort of a hood ornament, or they have
2   emblems on the front of their grille, like the
3   Mercedes ones that are really easy to identify.
4   It almost sort of looks like a peace sign.
5       Who uses an iron mark as an emblem for
6   their vehicles; do you know what that does
7   that, sir?
8   A.  Yes, I do.
9   Q.  All right.  What company is that?
10  A.  It appears to be a Volvo emblem.
11  Q.  Okay.  Now, recognizing the iron mark
12  on the grille and recognizing that the iron
13  mark is an emblem used by Volvo, does it help
14  you identify whether or not the model of this
15  car -- excuse me, the make of this car is a
16  Volvo?
17      MR. WICKERSHAM: Form objection.
18      THE WITNESS: I'm not sure what's
19  being represented here.  I can say that
20  yes, it appears to be a Volvo emblem, the
21  iron mark in the center of the picture.
22  It's an assembly of auto parts, or parts of
23  auto parts.  I don't know that this is a...
24  complete vehicle.

SUBJECT TO PROTECTIVE ORDER                                Page 82

1       BY MR. MALOFIY:
2   Q.  No, I'm just asking what the
3   picture -- what you believe the pictures
4   depicts.
5       Now, the bottom -- the bottom picture
6   of Werberg-12, can you identify what that is,
7   sir?
8       MR. WICKERSHAM: Form objection.
9       THE WITNESS: Are we now, um...
10      BY MR. MALOFIY:
11  Q.  The bottom-most picture, the side view
12  of a vehicle; you'd agree that that's a
13  vehicle, right?
14  A.  And now we're moving on to this
15  picture?
16  Q.  We're not moving on; we're just moving
17  down on the page, to the bottom most of the
18  picture.  Would you agree that's a Volvo, sir?
19  A.  This is a much better picture than the
20  previous ones you've shown me.  That's more
21  information.  Thank you for that.
22      What's your question exactly about
23  this picture?
24  Q.  Does that appear to be a Volvo?  Does

SUBJECT TO PROTECTIVE ORDER                                Page 83

1   it appear to be a passenger car?  Does it
2   appear to be a tractor-trailer?
3       MR. WICKERSHAM: Form objection.
4       BY MR. MALOFIY:
5   Q.  What does it appear to be to you, sir?
6   A.  This appears to be a combination of a
7   picture and an illustration of a Volvo
8   passenger car.
9   Q.  Do you know what model; what model
10  passenger car, or what make passenger car?
11  A.  There's limited information.  Yes, I
12  cannot say definitively, but I can make a good
13  estimation as to what make and model this is.
14  Q.  Okay.  A good estimation.
15  A.  I can make a good estimation as to
16  what make and model this represents.
17  Q.  Do you see any emblem on that picture,
18  any emblem which would identify which make or
19  model it is?
20  A.  There's no clear emblem or identifying
21  marks, but I think I could make a good
22  estimation as to what model this may be.
23  Q.  Okay.
24  A.  Based on this picture.

SUBJECT TO PROTECTIVE ORDER                                Page 84

1   Q.  What make or model does it appear to
2   be to you, sir?
3   A.  This is either -- I believe this is
4   either a 700- or a 900-series Volvo passenger
5   car.
6   Q.  Okay.
7   A.  I can't say for certain if it's a 7 or
8   a 900 due to the fact that there's limited
9   information here.  It's either a 700- or a 900-
10  series Volvo passenger car.
11  Q.  You're familiar with Volvo passenger
12  cars, correct?
13  A.  Yes.
14  Q.  And you're having a difficult time in
15  determining what model it is, correct?
16      MR. WICKERSHAM: Form objection.
17      BY MR. MALOFIY:
18  Q.  Fair statement?  You're saying it's
19  either, you're not sure, you need more
20  information.
21      It's difficult to determine what model
22  that car in the bottom-most portion of that
23  advertisement is; fair statement?
24      MR. WICKERSHAM: Form objection.

---

SUBJECT TO PROTECTIVE ORDER                    Page 85

1   BY MR. MALOFIY:
2   Q.  There's no emblem on it, correct?
3       MR. WICKERSHAM: Form objection.
4       THE WITNESS: Well, it... it's
5   very difficult to say maybe just due to the
6   quality of the reproduction of whatever the
7   original was.  But I believe that it states
8   "Volvo" on the wheel center caps.
9       BY MR. MALOFIY:
10  Q.  Okay, the wheel center caps?
11  A.  Yeah.
12  Q.  Okay.  Can you circle those?
13  A.  There's two wheel center caps shown on
14  this picture.  One is obstructed by the
15  overlying illustration.  The other one is only
16  partially obstructed by the overlying
17  illustration.
18      And it's my best judgment that it
19  states "Volvo" on the center wheel cap.
20  Q.  Are you one hundred percent sure this
21  is a Volvo, this bottom picture?
22      MR. WICKERSHAM: Form objection.
23      THE WITNESS: I mean, this is
24  a -- this is a picture that you've come in

---

SUBJECT TO PROTECTIVE ORDER                    Page 86

1   and put in front of me, so I can't be a
2   hundred percent sure of what its origin is.
3       BY MR. MALOFIY:
4   Q.  Not the origin, the picture as the
5   appears to you.  Are you -- does it appear to
6   be a Volvo to you?  Are you pretty sure on
7   that?
8   A.  This picture with the overlying
9   illustration, in my best judgment, appears to
10  be either a Volvo 700- or 900-series passenger
11  car.
12  Q.  Why can't you determine which one it
13  is?  Why can't you tell me definitively if it's
14  a 700 or if it's a 900?
15  A.  I guess the 700 and the 900 are quite
16  similar in that they're both four-door
17  passenger sedans.  And this photograph is
18  somewhat obstructed by an illustration, so
19  there is an illustration overlaying the
20  underlying photograph, which makes identifying
21  what vehicle it is a little bit more difficult.
22  Q.  I'm going to show you what's been
23  marked as Werberg-11.
24      MR. WICKERSHAM: Are you going to

---

SUBJECT TO PROTECTIVE ORDER                    Page 87

1   point it out, or shall I?
2       MR. MALOFIY: No, I'm not.  I'm
3   going to -- I'm going to ask my question,
4   and I'll --
5       MR. WICKERSHAM: Point out for
6   the record to me --
7       MR. MALOFIY: No.
8       MR. WICKERSHAM: -- Werberg-11 --
9       MR. MALOFIY: No, it's not up to
10  you --
11      MR. WICKERSHAM: -- and
12  Werberg-10 --
13      MR. MALOFIY: Mr. Wickersham, I'm
14  going to ask him to leave.  It's not for
15  you to talk and make speaking objections.
16  If you want, he can leave, and you can
17  quote what it appears to you.
18      Now, I'm going to ask him
19  questions, and you can come back and ask
20  him questions after I'm finished.  You can
21  object to my questions.  You know the rules
22  here, but I'm going to ask you to withhold
23  any speaking objections.
24      These questions are very critical

---

SUBJECT TO PROTECTIVE ORDER                    Page 88

1   to my case.  And if you do you want to do
2   that, I'll just kindly ask him to leave,
3   you can state what you want to state, and
4   then I'll ask my specific questions to him.
5       MR. WICKERSHAM: Werberg-10
6   and -11 appear to be the same document with
7   the completion of the yellow box.
8       MR. MALOFIY: Thank you for
9   coaching your witness.
10      BY MR. MALOFIY:
11  Q.  What we have here is Werberg-11.
12  A.  Okay.  I've been handed another
13  document here that's identified as Werberg-11.
14  I'd like to have just a minute to digest it.
15      Yes, I've had a look at it.
16  Q.  Can you identify the make and model of
17  the vehicle in the top right-hand corner of
18  Werberg-11?
19      MR. WICKERSHAM: Form objection.
20  Asked and answered.
21      MR. MALOFIY: There's additional
22  information available to the witness.  I'm
23  asking him if he can now identify the car
24  at the top right-hand corner of Werberg-11.

---

SUBJECT TO PROTECTIVE ORDER                           Page 89

1      MR. WICKERSHAM: Same objection.
2      BY MR. MALOFIY:
3  Q.  Without going through all the past
4  exhibits, I'm referring to specifically this
5  exhibit, sir.  So, again --
6      MR. WICKERSHAM: Excuse me,
7  Counsel.  Do not touch the exhibits that
8  the witness is trying to look at.
9      MR. MALOFIY: That's not what I'm
10 asking him.  And if you want to come back
11 and ask him questions --
12     MR. WICKERSHAM: No, sir.
13     MR. MALOFIY: -- on that, you can
14 do that.
15     MR. WICKERSHAM: No, sir.  Do not
16 disrupt --
17     (Indiscernible; parties talking
18     over each other.)
19     MR. MALOFIY: That's not the
20 rules.  He does not have unlimited
21 resources to look at whatever he wants.
22     MR. WICKERSHAM: Do not disrupt
23 the witness.
24     THE WITNESS: Hold on, hold on.

SUBJECT TO PROTECTIVE ORDER                           Page 90

1  These are documents that you put in front
2  of me.
3      BY MR. MALOFIY:
4  Q.  No.  This is not the purpose of my
5  questioning, sir.
6  A.  Okay.
7  Q.  That's fine.  That's not the purpose
8  of my questioning.
9      (Indiscernible; parties talking
10     over each other.)
11 A.  This is a document I came with.
12 Q.  If you want to come to the judge, we
13 can do that.  And what I'm asking you
14 specifically is on Werberg-11, which is before
15 you.  Please put these down.  Your counsel's
16 going to ask you follow-up questions if
17 necessary.
18     MR. WICKERSHAM: Is there a
19 question pending?
20     BY MR. MALOFIY:
21 Q.  Yeah.  Can you identify, on
22 Werberg-11, the car on the upper right-most
23 corner of this page, the make and model?
24     MR. WICKERSHAM: Form objection.

SUBJECT TO PROTECTIVE ORDER                           Page 91

1  Asked and answered.
2      THE WITNESS: It's my judgment
3  that the picture in the upper right-hand
4  corner of this document is the same picture
5  that we've discussed many, many times
6  today.  And, therefore, my answer would be
7  the same:  That it's a part -- it's part of
8  the vehicle, it's disappearing more.
9      As you give me documents with
10 more and more information that appear to be
11 more and more complete, the underlying
12 photo, picture, illustration disappears
13 more and more into the background.
14     And, if anything, I would say
15 that it's becoming more and more difficult
16 for me to focus on the vehicle, and I am
17 more and more drawn to tell you what this
18 document is, that it's some kind of a --
19 it's a piece of advice.
20     BY MR. MALOFIY:
21 Q.  Advertisement, as you --
22 A.  To use genuine Volvo body parts.
23 Q.  You used the term "advertisement,"
24 correct?

SUBJECT TO PROTECTIVE ORDER                           Page 92

1  A.  This could be seen as a piece of
2  advice or an advertisement is what I stated.
3  Q.  Now, my question Werberg-11 --
4  A.  Yes.
5  Q.  It's in front of you, correct?
6  A.  Yes.
7  Q.  You're looking at it?  The top
8  right-hand picture of a vehicle, can you
9  identify what make or model that is?
10     MR. WICKERSHAM: Form objection.
11 Asked and answered.
12     THE WITNESS: The picture in the
13 top right hand of this document appears to
14 show part of a vehicle.
15     BY MR. MALOFIY:
16 Q.  Okay.  Let me ask more simple
17 questions for you.  Can you identify whether or
18 not the picture on the right -- the top right
19 hand of that Werberg-11, can you identify
20 whether or not that picture is a Volvo 850, yes
21 or no?
22     MR. WICKERSHAM: Form objection.
23 Asked and answered.
24     THE WITNESS: The picture in the

Mark Webb, et al. v.
Volvo Cars of N.A., LLC, et al.

Leo Werberg
February 26, 2013

SUBJECT TO PROTECTIVE ORDER                              Page 93

1 upper right-hand corner here represents --
2 appears to represent a passenger car, a
3 piece of a passenger car.
4      BY MR. MALOFIY:
5 Q.  Okay.  Let me ask you my question
6 again.  Can you identify this as a Volvo 850
7 definitively, yes or no?
8      MR. WICKERSHAM: Form objection.
9 Asked and answered.
10      BY MR. MALOFIY:
11 Q.  If it -- if you can't, just say no.
12 If you can, say, "Yes, it's a Volvo 850."  But
13 I'm not asking you anything other than a very
14 specific yes or no question.
15      Can you identify the car on the top
16 right-hand corner of this advertisement as a
17 Volvo 850?
18      MR. WICKERSHAM: Which you've
19 asked a dozen times now, and he's given you
20 the same answer each and every time.
21      MR. MALOFIY: There is additional
22 information on this page, Mr. Wickersham,
23 that I've shown him and a -- and it's a
24 specific question I'm going to ask again.

SUBJECT TO PROTECTIVE ORDER                              Page 94

1      BY MR. MALOFIY:
2 Q.  Can you identify definitively what
3 make and model vehicle is depicted in the top
4 right-hand-most portion of Werberg-11?  Is it a
5 Volvo 850, yes, no, or you don't know?
6      MR. WICKERSHAM: Form objection.
7 Asked and answered.
8      THE WITNESS: The picture in the
9 upper right-hand corner of this document
10 appears to represent a vehicle, a passenger
11 vehicle.
12      BY MR. MALOFIY:
13 Q.  If you can't identify this as a Volvo
14 850 or a different mod -- Volvo model, how is a
15 consumer supposed to do that, sir?
16      MR. WICKERSHAM: Form objection.
17      BY MR. MALOFIY:
18 Q.  How is a consumer supposed to know
19 what make or model that vehicle is if Volvo
20 Cars of North America, who handles the
21 advertising and the marketing for Volvo cars,
22 if they can't identify what make and model
23 vehicle this is?
24      MR. WICKERSHAM: Form objection.

SUBJECT TO PROTECTIVE ORDER                              Page 95

1      BY MR. MALOFIY:
2 Q.  You're standing here on behalf of
3 Volvo Cars of North America, you're their
4 corporate designee who knows more about the
5 advertising and marketing of their cars than
6 anyone, and as you're looking at an
7 advertisement, which appears to be from Volvo,
8 you can't identify what make and model vehicle
9 is on the top right-hand portion of Werberg-11;
10 fair statement?
11      MR. WICKERSHAM: Form objection.
12      THE WITNESS: (Indiscernible.)
13      MR. WICKERSHAM: Excuse me one
14 moment.
15      Counsel, you're now badgering the
16 witness.  You know from the record that my
17 client did not advertise this vehicle and
18 we didn't sell this vehicle.
19      You're harassing this witness;
20 it's improper.  Ask an appropriate
21 question.
22      MR. MALOFIY: He can answer with
23 a yes or no.  And it's a -- I can ask
24 leading questions.

SUBJECT TO PROTECTIVE ORDER                              Page 96

1      MR. WICKERSHAM: It's not
2 leading, Counsel.  You're badgering the
3 witness --
4      MR. MALOFIY: No, I'm not
5 badgering --
6      MR. WICKERSHAM: My client didn't
7 even sell this vehicle or advertise this
8 vehicle, and you're trying to ask him --
9      MR. MALOFIY: Are you testifying
10 now, Mr. Wickersham?
11      MR. WICKERSHAM: You have this
12 information on the record, Counsel.
13      MR. MALOFIY: Do you want to
14 testify now?
15      MR. WICKERSHAM: I don't
16 understand what your question is.
17      MR. MALOFIY: All right.
18      MR. WICKERSHAM: I want you to
19 stop badgering the witness.
20      MR. MALOFIY: I'm not badgering
21 the witness.  I'm asking a simple question;
22 I deserve a simple answer.
23      MR. WICKERSHAM: Form objection.
24      THE WITNESS: You just made many

1  statements which I dispute --
2      MR. MALOFIY: Well, let me break
3  it down.
4      MR. WICKERSHAM: Let the witness
5  answer.
6      THE WITNESS: You've just made
7  many statements with which I would
8  dispute --
9      MR. MALOFIY: Okay.
10     THE WITNESS: -- most, if not
11  all.  If you have a specific question, I'm
12  more than happy to answer; that's what I'm
13  here to do.
14     BY MR. MALOFIY:
15  Q.  Besides the Volvo 850 GLT, which
16  you've identified on Werberg-11 from the script
17  on the back of the picture, at the bottom-most
18  portion, are you able to identify any other
19  make or model Volvo on Werberg-11?
20     MR. WICKERSHAM: Form objection.
21     THE WITNESS: Werberg-11 appears
22  to be... very similar to Werberg-10, with
23  the addition of some information.
24

1      BY MR. MALOFIY:
2  Q.  That's not my question, if it appears
3  to be similar.  I didn't ask you if it appears
4  to be similar; I didn't ask you if it has
5  additional information.
6      My question -- my question was:  Can
7  you identify any other make or model on
8  Werberg-11 other than the Volvo 850 GLT, which
9  you have previously identified from the script
10  on the back of the Volvo?
11     MR. WICKERSHAM: Form objection.
12     THE WITNESS: There could be one
13  of many models represented by the
14  illustration.  There is additional
15  information on this exhibit, Werberg-11,
16  compared with the previous exhibit,
17  Werberg-10.  That additional information
18  appears to indicate what vehicle is in the
19  illustration.
20     BY MR. MALOFIY:
21  Q.  Does it indicate the make, that
22  additional information; does it give you the
23  make of that additional information?
24  A.  The additional information --

1  Q.  What's it state?  Maybe that's easier
2  just for the record.  What's the additional
3  information stated on Werberg-11?  And if you
4  would, I'll hand you my pen, and you can circle
5  it, sir.
6  A.  To answer that, I'd have to look at
7  Werberg-10, but you got visibly upset last time
8  I did that, so I'm going to reach out now and
9  grab Werberg-10 if you're going to answer --
10  ask me that question again.
11  Q.  Well, let me do this.  Let me identify
12  the yellow, uh, heading on top of the
13  illustration.
14  A.  Please do, please do.
15  Q.  I'm going to circle this.
16  A.  Please do.
17  Q.  And I believe this was what you were
18  referring to.
19  A.  Yes.
20  Q.  Is that the additional piece of
21  information which you're referring to, which
22  your counsel coached you on by identifying this
23  as the additional yellow bar with information
24  on it?

1      MR. WICKERSHAM: Form objection.
2      THE WITNESS: Please state your
3  question.
4      BY MR. MALOFIY:
5  Q.  Yes.  Can you please read the
6  additional information which we're discussing
7  into the record?  What's it say?
8  A.  Are you asking me to read what you've
9  circled on the document?
10  Q.  Sure.
11  A.  Yes, I can do that.
12  Q.  Go ahead.
13  A.  It says, "900 Series Side Impact
14  Presentation System."
15  Q.  Okay.  Does it provide the make where
16  it reads -- when you read that, does it
17  identify the make of this 900-series side
18  impact protection, yes or no?
19      Can you tell me, or can you circle,
20  the make of that Volvo 900-series -- excuse me,
21  of the 900-series side impact protection
22  system?
23  A.  The information that you've circled
24  here, in this exhibit, states, "900 Series Side

SUBJECT TO PROTECTIVE ORDER   Page 101

1   Impact Presentation System."
2   Q.   Does it identify the make --
3   A.   I wasn't quite finished.
4       It states, "900 Series Side Impact
5   Protection System"; nothing more, nothing less.
6   That's exactly what's stated in the circle
7   you've drawn on this exhibit.
8   Q.   And it doesn't identify the make as
9   being Volvo, correct?
10  A.   What you've circled here does not
11  state anything about a -- a make.
12  Q.   How about what I circled there and the
13  illustration below it, the heading and the
14  illustration, does that identify this
15  illustration being a Volvo?
16  A.   Which heading are you referring to?
17  Q.   The one we circled, sir.  The one that
18  reads, "900 Series Side Impact Protection
19  System."  And that has an illustration which
20  we've been talking about throughout the course
21  of this morning.
22      Anywhere on that illustration or on
23  that heading, does it identify Volvo?
24      MR. WICKERSHAM: Form objection.

SUBJECT TO PROTECTIVE ORDER   Page 102

1       THE WITNESS: This document has a
2   main heading, not the one you've circled.
3       BY MR. MALOFIY:
4   Q.   Yeah, that's not what I'm referring
5   to.
6   A.   There's a main heading, and that says,
7   "Insist on Genuine Volvo Body Parts."
8       So anyone continuing to read this
9   document would, of course, make the conclusion
10  that it has something to do with Volvo and not
11  some other make of vehicle.
12  Q.   Okay, okay.  So anyone would come to
13  the conclusion that the cars depicted in this
14  Werberg-11 are Volvos, correct?
15      MR. WICKERSHAM: Form objection.
16      BY MR. MALOFIY:
17  Q.   I'm just trying to follow your
18  thoughts there, sir.
19  A.   It states, "Insist on genuine Volvo
20  body parts."  It states, "Over the years, Volvo
21  has built a reputation for safe, reliable,
22  long-lasting cars."
23  Q.   We don't have to read it into the
24  record; that's not the purpose of my

SUBJECT TO PROTECTIVE ORDER   Page 103

1   questioning.
2   A.   So one looking at this document would
3   assume that it's discussing Volvo Cars and not
4   some other make of car.
5   Q.   Did the Volvo ever make a 900-series
6   model specifically?
7   A.   Volvo Car Corporation produced a 900-
8   series model.
9   Q.   Was it called a 900 series model, or
10  was it called a 940 or a 960 specifically?  Did
11  you ever a car that was called "Volvo 900
12  series," or is that the term that's used for
13  that platform?
14      MR. WICKERSHAM: Form objection.
15      THE WITNESS: The term "900
16  series" is used to describe a number of
17  models.
18      BY MR. MALOFIY:
19  Q.   Okay.  What models?
20  A.   For example, the 940 and the 960.
21  Q.   So was there ever a Volvo model that
22  said "900," 9-0-0, on it?  Have you ever seen
23  that?  Ever.
24  A.   I'm not aware of a model called "The

SUBJECT TO PROTECTIVE ORDER   Page 104

1   900," as you said.  I'm aware of the Volvo 900-
2   series, as it's stated here.
3   Q.   The 900 series, but you're not aware
4   of a model with 9-0-0, correct?
5   A.   This illustration does not seem to be
6   about a specific car model.
7   Q.   All right.
8   A.   As we discussed earlier, the
9   illustration is clearly trying to point out
10  something very specific --
11  Q.   Yes.
12  A.   -- some sort of flow.  It has a large
13  yellow arrow.  Then it has many -- I don't know
14  exactly how many -- smaller yellow arrows.
15  Q.   Yes.  Let me ask you my questions more
16  specifically.  Volvo never manufactured a 900;
17  there was never a 900 model ever manufactured,
18  correct?
19      MR. WICKERSHAM: Form objection.
20      BY MR. MALOFIY:
21  Q.   That you're aware of?
22  A.   I'm not a hundred percent aware of
23  every model ever designed and manufactured by
24  Volvo Car Corporation.

Mark Webb, et al. v.
Volvo Cars of N.A., LLC, et al.

Leo Werberg
February 26, 2013

---

SUBJECT TO PROTECTIVE ORDER                     Page 105

1  Q.   As you sit here today, have you ever
2  seen a model Volvo 900, 9-0-0, an insignia on
3  the back as such?
4  A.   I don't personally recall ever seeing
5  a Volvo called "a 900."
6  Q.   Have you ever seen a Volvo called "an
7  850"; have you ever seen that?
8  A.   Yes.
9  Q.   Yes.  How about an 850 GLT; have you
10 ever seen that?
11 A.   I'm aware of the model called "The 850
12 GLT."
13 Q.   And you'd agree with me that the only
14 make and model vehicle identified on Werberg-11
15 is a Volvo 850 GLT?
16      MR. WICKERSHAM: Form objection.
17      THE WITNESS: I'm not --
18      BY MR. MALOFIY:
19 Q.   Fair statement?
20 A.   No.
21 Q.   Okay.  What other Volvo make and model
22 can you identify on this document, other than
23 the Volvo 850 GLT, which you previously had
24 done?

---

SUBJECT TO PROTECTIVE ORDER                     Page 106

1       MR. WICKERSHAM: Form objection.
2       THE WITNESS: I believe that I
3  can also identify what would appear to be a
4  Volvo 944 or 964.
5       BY MR. MALOFIY:
6  Q.   A 944 or a 964.
7       How -- do you see "944" or "964"
8  written anywhere on Werberg-11?
9       And if you do, what we're going to do
10 is, I'm going to have you circle where you see
11 that.  So I'm going to hand you the pen.
12      MR. MALOFIY: And let the record
13 that I'm handing Mr. Werberg the pen to
14 circle "944" or "964" identified on this
15 advertisement.
16      THE WITNESS: I do not see the
17 specific model 944 or 964 identified here.
18 What I see here is an illustration that is
19 now finally labeled as the 900-series side
20 impact protection system.  I see that it
21 is -- appears to be a four-door sedan.
22      BY MR. MALOFIY:
23 Q.   Does it appear to be on top of the
24 Volvo 850 GLT picture?

---

SUBJECT TO PROTECTIVE ORDER                     Page 107

1       MR. WICKERSHAM: Form objection.
2       BY MR. MALOFIY:
3  Q.   Yes or no?
4  A.   There's a number of pictures and
5  illustrations on this document.
6  Q.   Mm-hmm.
7  A.   The illustration that's labeled "900
8  Series Side Impact Protection System" is
9  partially covering the photo in the background.
10 Q.   Of the Volvo 850 GLT which you
11 identified previously, correct?
12      MR. WICKERSHAM: Form objection.
13      BY MR. MALOFIY:
14 Q.   Fair statement, correct, sir?
15      MR. WICKERSHAM: Form objection.
16      THE WITNESS: The picture of that
17 is in the background of this 900-series
18 picture has some text on it, which is now
19 further obscured by the additional text
20 that you've added.
21      BY MR. MALOFIY:
22 Q.   Okay.  Does it appear to be a Volvo
23 850 GLT, sir, which you identified previously?
24      MR. WICKERSHAM: Form objection.

---

SUBJECT TO PROTECTIVE ORDER                     Page 108

1  Asked and answered.
2       THE WITNESS: What I can now
3  read -- on the text on the picture that
4  you're referring to, what I can now read is
5  "Volvo 50GKHS8."
6       BY MR. MALOFIY:
7  Q.   You're referring to the license plate?
8  A.   I'm referring to all text I can read
9  on the picture you're referring to, "Volvo
10 50GKHS8."
11 Q.   Okay.  Can you circle on that page any
12 Volvo model, a specific Volvo model like 944,
13 964, 960, 940?  Can you -- 850?  Can you
14 identify where that is on the page, if at all,
15 where it specifically identifies a Volvo model?
16      MR. MALOFIY: And let the record
17 reflect that I'm handing Mr. Werberg a pen
18 so he can circle anywhere on the page that
19 he sees on the page that he sees
20 specifically not a series of models but a
21 specific identification of not just a Volvo
22 but a specific Volvo model.
23      MR. WICKERSHAM: Form objection.
24      THE WITNESS: The only clear

---

1  identification on this document is right
2  here, where it states "900 Series Side
3  Impact Protection System."
4      I do not see any complete model
5  names when I once again look at the
6  document as such, as a complete document.
7      BY MR. MALOFIY:
8  Q.  Yeah, you don't see any specific Volvo
9  names; that's what you just testified to,
10  right?
11      MR. WICKERSHAM: Form objection.
12      BY MR. MALOFIY:
13  Q.  Previously, you recognized the 850 on
14  the page; now you're not recognizing that, are
15  you?
16  A.  Which, um --
17      MR. WICKERSHAM: Form objection.
18      THE WITNESS: Which exhibit are
19  you referring to, sir?
20      BY MR. MALOFIY:
21  Q.  I'm referring to what's in front of
22  you right now.
23  A.  I'm looking at Exhibit 11.
24  Q.  Yeah.

1  A.  Werberg-11.
2  Q.  Sure.  Do you still agree with me that
3  the picture on the top right-hand portion has
4  wheels that are reminiscent of a Volvo 850?
5      MR. WICKERSHAM: Form objection.
6  Asked and answered about twenty times now.
7      THE WITNESS: Do you want to talk
8  about this drawing now again?
9      BY MR. MALOFIY:
10  Q.  Not the drawing, the wheel.
11  A.  You want to talk about the wheel
12  rim --
13  Q.  Yeah.
14  A.  -- again?
15  Q.  On wheel -- on Werberg-11.
16  A.  Yeah, we can talk about this wheel
17  rim.
18  Q.  It appears to be the Volvo 850 wheel
19  rim that we were discussing throughout the
20  course of this morning; fair statement?
21      MR. WICKERSHAM: Form objection.
22  Prior answers incorporated by reference.
23      THE WITNESS: Once again, if I
24  want to answer that question correctly, I

1  would turn over those others exhibits you
2  presented to me, which made you visibly
3  upset when I did so earlier.
4      BY MR. MALOFIY:
5  Q.  Well, there's rules, sir.  There's
6  rules to the way we conduct depositions.  And
7  when I ask you a specific question about a
8  specific document --
9  A.  But in your question --
10  Q.  Stop --
11  A.  -- you referred to a previous
12  document.
13  Q.  Stop.  That's what I'm referring to.
14  No, I didn't refer to a previous document; you
15  wanted to refer to a previous document.  And
16  that wasn't the -- and that wasn't my question
17  to you.
18  A.  Please restate your question.
19  Q.  Fair statement, you can't circle a
20  Volvo model, a specific model, on that page, or
21  identify a specific model other than the
22  previously -- the previous one you identified
23  as the Volvo 850 GLT, correct?
24      MR. WICKERSHAM: Form objection.

1      THE WITNESS: I do not agree with
2  your statement.
3      BY MR. MALOFIY:
4  Q.  Did you previously identify the
5  bottom-most portion of this picture as a Volvo
6  850 GLT, yes or no?
7      MR. WICKERSHAM: Form objection.
8      THE WITNESS: What picture are
9  you referring to now when you say "bottom-
10  most portion"?
11      BY MR. MALOFIY:
12  Q.  What picture did you refer to as a
13  Volvo 850 GLT, sir?
14      MR. WICKERSHAM: Form objection.
15      BY MR. MALOFIY:
16  Q.  The bottom-most picture of a passenger
17  vehicle, did you not?
18  A.  I believe when you presented this to
19  me, Werberg-11, we had discussed a few things,
20  that it is advice to insist on genuine Volvo
21  body parts, as I stated here.
22      Then we went specifically into --
23  Q.  No, I'm not asking you to give me the
24  chronology of what we did all morning.  What

Mark Webb, et al. v.
Volvo Cars of N.A., LLC, et al.

Leo Werberg
February 26, 2013

---

SUBJECT TO PROTECTIVE ORDER                                    Page 113

1   I'm asking you specifically is a specific
2   question, and maybe you're having trouble with
3   my question.
4       Do you remember a discussing a Volvo
5   850 GLT, which you identified as the vehicle on
6   bottom-most portion of this advertisement?
7       MR. WICKERSHAM: Form objection.
8       BY MR. MALOFIY:
9   Q.  Yes or no?
10  A.  I would dis -- I would dispute the way
11  that you're, um, making statements and then
12  asking me to -- asking me to agree with them.
13  Q.  Did you ever talk about a Volvo 850
14  GLT and reference a picture on this document?
15  A.  This document, Werberg-11, which was
16  presented to me a few minutes ago, no, I do not
17  recall talking about a specific model.
18  Q.  Okay.  Thank you.
19      MR. MALOFIY: Take a break?  Do
20  you want to do lunch, guys?
21      MR. WICKERSHAM: It's 12:20, for
22  the record.  Why don't I suggest that we
23  reconvene at 1 o'clock and be ready to
24  roll.

---

SUBJECT TO PROTECTIVE ORDER                                    Page 114

1       MR. MALOFIY: Sounds good.
2       VIDEO TECHNICIAN: That concludes
3   DVD No. 1.  The time is now 12:17 p.m.  We
4   are off the record.
5       (Lunch break taken.)
6       (Deposition resumes.)
7       VIDEO TECHNICIAN: Stand by,
8   please.  This is the beginning of DVD No.
9   2.  The time is 1:18 p.m.  We are on the
10  record.
11      MR. MALOFIY: Now, we were, uh,
12  just here during the morning; now we're
13  continuing with the deposition of
14  Mr. Werberg.
15      BY MR. MALOFIY:
16  Q.  Have you ever been in trouble for
17  lying under oath?
18  A.  No.
19  Q.  No.  Have you ever been arrested for a
20  crime of dishonesty?
21  A.  I have never been arrested for any
22  reason.
23  Q.  Okay.  Have you ever gotten in trouble
24  for anything relating to testifying improperly?

---

SUBJECT TO PROTECTIVE ORDER                                    Page 115

1       MR. WICKERSHAM: Form objection.
2       BY MR. MALOFIY:
3   Q.  Or wrong?
4   A.  I've never testified.
5   Q.  Okay.  You understand you're here as
6   the corporate designee for Volvo Cars of North
7   America?
8   A.  I am here as the corporate designee
9   for Volvo Cars of North America, LLC.
10  Q.  Okay.  And you're aware that you're
11  here on behalf of Volvo Cars of North America,
12  LLC, as the corporate designee for custodial
13  records?
14  A.  Yes.
15  Q.  All right.  And you understand that
16  you're here on behalf of Volvo Cars of North
17  America as the corporate designee for the Volvo
18  side impact protection system?
19  A.  VCNA, LLC, for side impact protection
20  system.
21  Q.  If I use the term "VCNA," do you
22  understand what I'm referring to?
23  A.  Well, the name of the company that I
24  work for is Volvo Cars of North America, LLC.

---

SUBJECT TO PROTECTIVE ORDER                                    Page 116

1   Q.  Right.  If I use the term "VCNAA,"
2   does that confuse you? would that be easier?
3   Or would you like me to use "Volvo Cars of
4   North America, LLC"?
5   A.  I prefer if you use the proper legal
6   name.
7   Q.  Okay.  Are you aware that you're here
8   as the corporate designee for Volvo Cars of
9   North America, LLC, for the incident model?
10  What I'm referring to when I'm talking about
11  incident model, subject vehicle, is the Volvo
12  850 subject to this accident and subject to
13  this lawsuit.
14  A.  Yes.
15  Q.  And do you agree that you're here as
16  the corporate designee for Volvo Cars of North
17  America, LLC, in relation to federal vehicle --
18  motor vehicle safety standards?
19  A.  Yes.
20  Q.  Are you aware that you're here on
21  behalf of Volvo Cars North America, LLC, as the
22  corporate designee for advertising, marketing,
23  and sales material?
24  A.  Yes.

---



**EXHIBIT**
**5**





EXHIBIT
WEINBERG
6



EXHIBIT
WEISBERG
7
PENGAD 800-631-6989



EXHIBIT

_8_

PENGAD 800-631-6989



**S.I.P.S.**

**S**ide Impact Protection System is a unique Volvo safety development which involves strengthening of the B-pillar and floor members, a reinforced door sill and roof rail.  These enhancements play an important role in dissipating crash forces throughout the car body by redirecting them around the safety cage.  In addition, Genuine Volvo interior door panels have the flexibility needed to provide even greater crash energy absorption.

EXHIBIT

*wensene*

9

PENGAD 800-631-6989

**O**ver the years, Volvo has built a reputation for safe, reliable, long lasting cars.  But when you're cruising comfortably down the highway in your Volvo, you may not be thinking about the components that make up this very unique automobile.  Beneath the brilliant finish of every Volvo are some 5,500 parts; each a product of extensive research and development, expertly engineered to work in harmony, interacting to create a car with very special characteristics.

But if your Volvo has been in an accident, some insurance companies may try to save money by telling you to install what they call "quality replacement parts" or "imitations" instead of Genuine Volvo body parts.  These imitation parts may save *them* money, but using them could be very costly for you in terms of performance, value and **SAFETY**.

The stringent requirements that make a Volvo what it is go into every component in the vehicle.  Non-genuine parts may look just like the genuine part, but looks can be very deceiving.  Here are some important reasons why:



## S.I.P.S.

**S**ide Impact Protection System is a unique Volvo safety development which involves strengthening of the B-pillar and floor members, a reinforced door sill and roof rail.  These enhancements play an important role in dissipating crash forces throughout the car body by redirecting them around the safety cage.  In addition, Genuine Volvo interior door panels have the flexibility needed to provide even greater crash energy absorption.

## FIT

**I**mitation body parts are simply not made to Volvo's rigid specifications. Genuine Volvo body parts are manufactured to the tightest tolerances so you get parts that fit like new.

## SAFETY

**T**he structural integrity of your Volvo depends on the quality of every body part used.  They all work together as part of a complex system designed to optimize your safety in the event of an accident.

Genuine Volvo hoods, for example, are an integral part of the front energy absorbing structure.  In the event of an accident, the genuine hood is designed to fold so that it doesn't go through the windshield. It is also designed to stay firmly attached to the car body.  Non-genuine hoods could go right through the windshield.  Pieces of the hood assembly may break loose, which could pose a serious threat to your safety.

Another good example is Genuine Volvo glass.  Non-genuine glass may **NOT** be manufactured to Volvo's specifications and high quality standards.  This can result in improper fit, which could cause the glass to break more easily or come loose during an accident.

## DISCLOSURE

**D**id you know that you've got the right to decide what parts are installed on your car?  Many states have passed laws specifically defining these rights.  So find out about your state's disclosure laws, and read your auto insurance policy carefully before signing.  Be sure to ask for an explanation of your repair estimate and always **DEMAND** that only Genuine Volvo body parts be installed on your Volvo.

EXHIBIT
*WENBERG*
10

PENGAD 800-631-6989

Over the years, Volvo has built a reputation for safe, reliable, long lasting cars. But when you're cruising comfortably down the highway in your Volvo, you may not be thinking about the components that make up this very unique automobile. Beneath the brilliant finish of every Volvo are some 5,500 parts; each a product of extensive research and development, expertly engineered to work in harmony, interacting to create a car with very special characteristics.

But if your Volvo has been in an accident, some insurance companies may try to save money by telling you to install what they call "quality replacement parts" or "imitations" instead of Genuine Volvo body parts. These imitation parts may save *them* money, but using them could be very costly for you in terms of performance, value and **SAFETY**.

The stringent requirements that make a Volvo what it is go into every component in the vehicle. Non-genuine parts may look just like the genuine part, but looks can be very deceiving. Here are some important reasons why:



**900 Series Side Impact Protection System**

### S.I.P.S.

Side Impact Protection System is a unique Volvo safety development which involves strengthening of the B-pillar and floor members, a reinforced door sill and roof rail. These enhancements play an important role in dissipating crash forces throughout the car body by redirecting them around the safety cage. In addition, Genuine Volvo interior door panels have the flexibility needed to provide even greater crash energy absorption.

### FIT

Imitation body parts are simply not made to Volvo's rigid specifications. Genuine Volvo body parts are manufactured to the tightest tolerances so you get parts that fit like new.

### SAFETY

The structural integrity of your Volvo depends on the quality of every body part used. They all work together as part of a complex system designed to optimize your safety in the event of an accident.

Genuine Volvo hoods, for example, are an integral part of the front energy absorbing structure. In the event of an accident, the genuine hood is designed to fold so that it doesn't go through the windshield. It is also designed to stay firmly attached to the car body. Non-genuine hoods could go right through the windshield. Pieces of the hood assembly may break loose, which could pose a serious threat to your safety.

Another good example is Genuine Volvo glass. Non-genuine glass may **NOT** be manufactured to Volvo's specifications and high quality standards. This can result in improper fit, which could cause the glass to break more easily or come loose during an accident.

### DISCLOSURE

Did you know that you've got the right to decide what parts are installed on your car? Many states have passed laws specifically defining these rights. So find out about your state's disclosure laws, and read your auto insurance policy carefully before signing. Be sure to ask for an explanation of your repair estimate and always **DEMAND** that only Genuine Volvo body parts be installed on your Volv

PERGAD 800-631-6989

EXHIBIT
Weinberg
11

# INSIST ON GENUINE VOLVO BODY PARTS

**O**ver the years, Volvo has built a reputation for safe, reliable, long lasting cars.  But when you're cruising comfortably down the highway in your Volvo, you may not be thinking about the components that make up this very unique automobile.  Beneath the brilliant finish of every Volvo are some 5,500 parts; each a product of extensive research and development, expertly engineered to work in harmony, interacting to create a car with very special characteristics.

But if your Volvo has been in an accident, some insurance companies may try to save money by telling you to install what they call "quality replacement parts" or "imitations" instead of Genuine Volvo body parts.  These imitation parts may save *them* money, but using them could be very costly for you in terms of performance, value and **SAFETY**.

The stringent requirements that make a Volvo what it is go into every component in the vehicle.  Non-genuine parts may look just like the genuine part, but looks can be very deceiving.  Here are some important reasons why:


900 Series Side Impact Protection System



## S.I.P.S.

**S**ide Impact Protection System is a unique Volvo safety development which involves strengthening of the B-pillar and floor members, a reinforced door sill and roof rail.  These enhancements play an important role in dissipating crash forces throughout the car body by redirecting them around the safety cage.  In addition, Genuine Volvo interior door panels have the flexibility needed to provide even greater crash energy absorption.

## FIT

**I**mitation body parts are simply not made to Volvo's rigid specifications.  Genuine Volvo body parts are manufactured to the tightest tolerances so you get parts that fit like new.

## SAFETY

**T**he structural integrity of your Volvo depends on the quality of every body part used.  They all work together as part of a complex system designed to optimize your safety in the event of an accident.

Genuine Volvo hoods, for example, are an integral part of the front energy absorbing structure.  In the event of an accident, the genuine hood is designed to fold so that it doesn't go through the windshield. It is also designed to stay firmly attached to the car body.  Non-genuine hoods could go right through the windshield.  Pieces of the hood assembly may break loose, which could pose a serious threat to your safety.

Another good example is Genuine Volvo glass.  Non-genuine glass may **NOT** be manufactured to Volvo's specifications and high quality standards.  This can result in improper fit, which could cause the glass to break more easily or come loose during an accident.

## DISCLOSURE

**D**id you know that you've got the right to decide what parts are installed on your car?  Many states have passed laws specifically defining these rights.  So find out about your state's disclosure laws, and read your auto insurance policy carefully before signing.  Be sure to ask for an explanation of your repair estimate and always **DEMAND** that only Genuine Volvo body parts be installed on your Volvo.

EXHIBIT
Wennberg
31

PENGAD 800-631-6989

# EXHIBIT B

**2**

```
 1    IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
 2         FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
               CIVIL TRIAL DIVISION
 3                    - - -
 4    MARK WEBB, Administrator  :  MAY TERM, 2011
      for the Estate of SABINO  :
 5    WEBB, deceased,           :
 6            Plaintiff         :
 7          vs.                 :
 8    VOLVO CARS OF NORTH       :
      AMERICA, LLC, VOLVO CAR   :
 9    CORPORATION, GRACO        :
      CHILDREN'S PRODUCTS, INC.,:
10    WILLIAM JULIAN and ANA    :
      WEBB,                     :
11                             :
            Defendants         :  NO.: 0208
12                    - - -
13                 JURY TRIAL
14                    - - -
15         Tuesday, November 12, 2013
16         Courtroom 483, City Hall
17         Philadelphia, Pennsylvania
18                    - - -
19    BEFORE:  THE HONORABLE JOHN MILTON YOUNGE, J.
20                    - - -
21
22         KIMBERLY A. WILSON, RPR
23         OFFICIAL COURT REPORTER
24    100 SOUTH BROAD STREET, 2ND FLOOR
         PHILADELPHIA, PA  19110
25         (215) 683-8010
```

```
 1    APPEARANCES:
 2
 3         FRANCIS ALEXANDER MALOFIY, ESQUIRE,
           FRANCIS ALEXANDER, LLC
 4         1125 Walnut Street
           Philadelphia, PA  19107
 5         (215)500-1000
 6         MAXWELL S. KENNERLY, ESQUIRE,
           The Beasley Firm, LLC
 7         1125 Walnut Street
           Philadelphia, PA  19107
 8         (215)931-2634
 9         Counsel for Plaintiff and Defendant,
           Ana Webb
10
11         RICHARD B. WICKERSHAM, JR., ESQUIRE,
           Post & Schell, P.C.
12         13th Floor
           Four Penn Center
13         1600 John F. Kennedy Blvd.
           Philadelphia, PA  19103
14         (215)587-6612
15         ROBERT J. BALCH, ESQUIRE,
           Post & Schell, P.C.
16         13th Floor
           Four Penn Center
17         1600 John F. Kennedy Blvd.
           Philadelphia, PA  19103
18         (215)587-1006
19         Counsel for Defendants Volvo Cars
           of North America, LLC, Volvo Car
20         Corporation
21
22
23
24
25
```

**3**

```
 1    APPEARANCES:  (Cont'd)
 2
 3         JOSEPH J. KRASOVEC, ESQUIRE,
           Schiff Hardin, LLP
 4         6600 Sears Tower
           Chicago, IL  60606
 5         (312)258-5639
 6         HEIDI K. OERTLE, ESQUIRE,
           Schiff Hardin, LLP
 7         6600 Sears Tower
           Chicago, IL  60606
 8         (312)258-5771
 9         Counsel for Defendant Graco
           Children's Products, Inc.
10
11         DAVID C. RAY, ESQUIRE,
           Bennett Bricklin & Saltzburg
12         Building B - Suite 100
13         960 Harvest Drive
           Blue Bell, PA  19422
14         (267)654-1102
15         LISA GOODISON FADEN, ESQUIRE,
           Ryan, Brown, Berger & Gibbons, P.C.
16         1600 Market Street, 14th Floor
           Philadelphia, PA  19103-7240
17         (215)564-3800
18         Counsel for Defendant William Julian
19
20
21
22
23
24
25
```

**4**

```
 1                 I N D E X
 2
 3         D E F E N S E     E V I D E N C E
 4
      WITNESS              DR    CR    RD    RC
 5
 6    Thomas Broberg
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

T. Broberg - Cross

1  Q.    Okay, look here.  Do you recognize this as the
2  Volvo 850?
3  A.    It's there, I can't really see from here
4  what's on the right-hand corner there.
5            THE COURT:   Is it easier to look at
6  the screen?
7            THE WITNESS:   Oh, I'm sorry, thank
8  you.  Yes, yes, yes, it seems to be a Volvo
9  850 there, looks like.
10           THE COURT:   Again, it's not on my
11  screen so I am blocked from the big screen so
12  I need my screen to be illuminated, please.
13           MR. MALOFIY:   Yes, sure, please.
14           THE COURT:   It was working this
15  morning.
16           Let's take a break.
17           Would you mind moving that exhibit.
18           Jurors, we will take a short break.
19           (The jury left the courtroom.)
20           MR. WICKERSHAM:   Judge, if I may?
21           THE COURT:   The jurors are not out
22  of the room yet.
23           Mr. Broberg, you're currently
24  undergoing cross-examination, you may not
25  discuss your testimony with your counsel or

T. Broberg - Cross

1  any other party or other witness or anyone
2  else during the break.  You may step down.
3            Yes, sir?
4            MR. WICKERSHAM:   Just what you just
5  said.
6            THE COURT:   All right.
7            THE WITNESS:   May I go to the
8  restroom?
9            THE COURT:   Yes.
10           (Brief recess.)
11           (The jury entered the courtroom.)
12           THE COURT:   Mr. Malofiy, you may
13  continue.
14           MR. MALOFIY:   Thank you, Your Honor.
15  BY MR. MALOFIY:
16  Q.    We were just talking about, before the brief
17  break for the technology issues, and I asked you to
18  identify the car in the top right corner of this
19  pamphlet, the safety pamphlet that was in the Volvo
20  850.
21           MR. MALOFIY:   And can we blow up the
22  top right-hand corner just to confirm that
23  answer.
24  BY MR. MALOFIY:
25  Q.    Mr. Broberg, you do agree that's a Volvo 850,

T. Broberg - Cross

1  right, sir?
2  A.    Yes, I believe I agree to that, yes.
3  Q.    Is it yes?
4  A.    Yes.
5            MR. MALOFIY:   And can you pull out
6  of that and go to right down here.
7  BY MR. MALOFIY:
8  Q.    Would you also agree with me, sir, that's a
9  Volvo 850 on the bottom left-hand corner of the
10  safety pamphlet that was in the Volvo 850, correct?
11  A.    Yes.
12           MR. MALOFIY:   Now, can we leave up
13  this right here, excuse me, right here.
14  BY MR. MALOFIY:
15  Q.    And you would agree that superimposed on top
16  of this Volvo 850 is language that says, SIPS, Side
17  Impact Protection System, is a unique Volvo safety
18  development, and then it goes on to describe SIPS;
19  is that correct?
20  A.    Yeah, that's correct.
21  Q.    And do you agree that this description of SIPS
22  is superimposed of top of the Volvo 850, correct?
23  A.    Yes, the text is on top of the picture, yes.
24           MR. MALOFIY:   Now, if we can come
25  out, gentlemen, and we focus the picture and

T. Broberg - Cross

1  then we will get the full title as well.
2  Let's focus on the picture for now.  I want to
3  blow this picture up for Mr. Broberg.
4  BY MR. MALOFIY:
5  Q.    Take a look at the picture, sir, I'm going to
6  direct your attention to something very specific.
7  Do you see this, sir, right here?  See what I'm
8  pointing at?
9  A.    Yes, sir.
10  Q.    What is that, sir?
11  A.    That seems to be a rod there in the door
12  opening.
13  Q.    A rod?  A door bar?
14  A.    Might even be a door bar, I don't know.
15  Q.    Well, if Volvo doesn't know, who does know?
16  Because you're the top safety guy from Volvo who is
17  supposed to identify, should know safety features.
18  I'm asking you if you know why Volvo is showing the
19  SIPS system with a door bar in it?  And you're
20  having trouble knowing whether it's a door bar or a
21  rod?
22  A.    Well, I haven't seen the whole -- I would need
23  to see the whole leaflet and if it's produced by
24  Volvo Car Corporation.  I don't know.  I haven't
25  studied this document specifically, no.

T. Broberg - Cross

1    Q.    Do you want to take a moment to study the
2    document?
3    A.    Yes, can I have a look at it?
4    Q.    Sure, here.
5          I will represent to you, and it was testified,
6    that this was the 850 owner's manual with the
7    safety pamphlet and the window sticker which was
8    inside the Volvo 850 that was the subject of this
9    accident.
10         It does say, Safety is no accident, correct?
11   A.    This is a document that was produced by Volvo
12   Cars of North America, Incorporated in 1992.
13   Q.    Okay. Does that mean it's any more true or
14   untrue than what it states there? Do you have any
15   reason to dispute it as Volvo's safety director?
16             MR. WICKERSHAM:   Objection.
17             THE COURT:   Overruled.
18   BY MR. MALOFIY:
19   Q.    Do you dispute the information that's on that
20   page, sir?
21   A.    Well, I don't know where the -- and actually,
22   if you look at the picture it says a 900 series
23   side impact protection system.
24   Q.    Right, that's on the 850 in the glove box of
25   the Volvo 850. It's a bit confusing, would you

T. Broberg - Cross

1    agree?
2    A.    Yes. I don't know why.
3    Q.    Yes, it's confusing, correct, sir?
4             MR. WICKERSHAM:   Form, Judge.
5             THE COURT:   Sustained.
6             Counsel, please allow answers.
7             MR. MALOFIY:   Sure.
8             THE WITNESS:   Once again? Sorry.
9    BY MR. MALOFIY:
10   Q.    Would you agree that it's a bit confusing when
11   you see a safety pamphlet that has pictures
12   superimposed on a Volvo 850 talking about SIPS with
13   door bars on all four doors, when, in fact, we know
14   the Volvo 850 doesn't have door bars in the rear
15   doors?
16             MR. WICKERSHAM:   Objection.
17             THE COURT:   Sustained. I don't
18        understand that question.
19             MR. MALOFIY:   Okay, I'll move
20        forward.
21   BY MR. MALOFIY:
22   Q.    Having had a chance to look at the safety
23   manual, you drew the distinction that it was from
24   Volvo Cars of North America, Inc., who is Volvo
25   Cars of North America, Inc., sir?

T. Broberg - Cross

1    A.    It's the market company in the U.S., I
2    believe, in 1992, Volvo marketing company in the
3    U.S.
4    Q.    Volvo has a lot of marketing companies
5    throughout the world, does it not?
6    A.    Yes, we have different marketing companies in
7    different parts of the world.
8    Q.    Now, if we look at this marketing
9    advertisement about safety does it not have Volvo's
10   logo?
11   A.    Yes, it has Volvo's logo on it, yes.
12   Q.    Do you have any reason to believe that Volvo
13   did not authorize that advertisement to be issued
14   throughout the world?
15             MR. WICKERSHAM:   Form, Judge.
16             THE COURT:   Sustained.
17   BY MR. MALOFIY:
18   Q.    Do you have any reason to believe that that
19   logo was used improperly?
20   A.    That, I wouldn't know at that time.
21   Q.    Volvo owns, operates and controls the
22   marketing companies in the different countries 100
23   percent; isn't that true?
24             MR. WICKERSHAM:   Objection.
25             THE COURT:   Overruled. If you know.

T. Broberg - Cross

1    If you know.
2             THE WITNESS:   No, I'm not sure
3        exactly how the legal properties of our
4        marketing companies are being put in every
5        country of the world, no.
6    BY MR. MALOFIY:
7    Q.    Okay. You would agree with me that Volvo Car
8    Corporation, who you're here on behalf of, owns the
9    copyright for Volvo, owns Volvo's copyright,
10   correct?
11   A.    If you mean the logo?
12   Q.    Yes.
13   A.    The logo, no, is co-owned by Volvo Car
14   Corporation and AB Volvo, the Volvo Group which is
15   the truck and bus company. So it's a co-owned
16   brand and co-owned -- but at this particular point
17   of time I don't know what the legal circumstances
18   around that was, no.
19   Q.    This document that's in front of you, you have
20   it there, right?
21   A.    Yes, I have this document in front of me and
22   it says, Insist on genuine Volvo body parts.
23   Q.    And you do see the four door bars in all four
24   doors, correct?
25   A.    I see that there are rods in the door openings