# Exhibit A

```
                UNITED STATES BANKRUPTCY COURT
            FOR THE DISTRICT OF PENNSYLVANIA EASTERN


IN RE:                        )  Bankruptcy No. 13-10087-SR
                              )  Chapter 11
                              )
                              )
                              )
NTP MARBLE, INC.,             )
                              )
                              )  Philadelphia, PA
                              )  June 19, 2013
         Debtor.              )  10:35 a.m.


                     TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE STEPHEN RASLAVICH
                 UNITED STATES BANKRUPTCY JUDGE



APPEARANCES:

For the Debtor:              ALBERT A. CIARDI, III, ESQUIRE
                             JENNIFER E. CRANSTON, ESQUIRE
                             CIARDI, CIARDI & ASTIN, PC
                             2005 Market Street
                             Suite 1930
                             Philadelphia, PA 19103

For Tasos Papadopoulos:      MAXWELL S. KENNERLY, ESQUIRE
                             THE BEASLEY FIRM, LLC
                             1125 Walnut Street
                             Philadelphia, PA 19107

For Committee of
Unsecured Creditors:         RICHARD RILEY, ESQUIRE
                             RUDOLPH J. DIMASSA, JR., ESQUIRE
                             DUANE MORRIS LLP
                             30 South 17th Street
                             Philadelphia, PA 19103-4196

For the Chapter 13           POLLY A. LANGDON, ESQUIRE
Trustee, Frederick           2901 St. Lawrence Avenue
L. Reigle:                   P.O. Box 4010
                             Reading, PA   19606
```

```
For MS International:      ANTHONY M. SACCULLO, ESQUIRE
                           A.M. SACCULLO LEGAL, LLC
                           27 Crimson King Drive
                           Bear, DE 19701

For US Trustee:            GEORGE M. CONWAY, ESQUIRE
                           UNITED STATES TRUSTEE
                           833 Chestnut Street
                           Suite 500
                           Philadelphia, PA 19107

For Tasos Papadopoulos:    EDMOND M. GEORGE, ESQUIRE
                           DAVID ALEXANDER BARNES, ESQUIRE
                           OBERMAYER, REBMANN, MAXWELL &
                           HIPPEL, LLP
                           1617 JFK BLVD.
                           Suite 1900
                           Philadelphia, PA 19103-4210

Audio Operator:            LINDA LOBOSCO

Transcribed by:            DIANA DOMAN TRANSCRIBING
                           P. O. Box 129
                           Gibbsboro, NJ  08026
                           Office: (856) 435-7172
                           Fax:    (856) 435-7124


                           Email:  dianadoman@comcast.net
```

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

Mr. George                                                                9

1       Your Honor, then I guess I then would have the next to
2   address the next business sort of issue would be the critical
3   vendor motion.
4       THE COURT: Yes.
5       MR. CIARDI: And I'd ask Your Honor's preference. You
6   may have some thoughts on the motion that may address it up
7   front, without knowing what the treatment will be to creditors
8   under the plan, and how we intend to address that, or -- I
9   don't know whether you'd rather see that in the context of the
10  agreements that are reached with the Committee, with all
11  creditors, so that you could view it in that context as well.
12      So I -- I'm prepared to argue the critical vendor
13  motion. I'm also prepared to adjourn that one week so that
14  Your Honor has the plan, the proposed plan and the treatment
15  that's been agreed to hopefully by the Committee, in front of
16  you as part of that argument.
17      I don't know what Your Honor's preference for that
18  would be. It maybe easier to have every --
19      THE COURT: Well I would agree -- yes, I have a pretty
20  good feeling about not approving it until the rest of the stuff
21  it seems sorted out to me.
22      So if you are out of that, that I'll just put it over
23  until next week as well.
24      MR. CIARDI: That's fine, Your Honor.
25      THE COURT: Okay. Now then does that just leave us

```
                              The Court                              10
 1    with --
 2            MR. CIARDI:  That just leaves, I think, the motion
 3    to --
 4            THE COURT:  Expedited hearing.  Well I think that it
 5    was beneficial that -- are you smiling, Mr. Barnes?
 6            MR. BARNES:  No, I'm not, Your Honor.
 7            THE COURT:  Good.  I think it was beneficial that when
 8    I saw this I think last Monday or Tuesday, that I didn't speed
 9    it up and put it on for a hearing last Wednesday, and in the
10    alternative put it on for a hearing this Wednesday, because it
11    gave me time to calm down.
12            And over the course of the week, I assure you that I
13    not only researched the legal issues of conduct at depositions
14    and the scope of depositions, and so forth, but I read and
15    reread the transcript.
16            And your behavior, Mr. Ciardi, was far from exemplary.
17            However, in 20 years I have never seen behavior as
18    disgraceful as -- how do I pronounce that gentleman's name?
19            MR. KENNERLY:  Mallife (phonetic), Your Honor.
20            THE COURT:  Mallife.  I see that Mr. Mallife is not
21    present.  I would have thought he would have had the courage
22    and the dignity to appear here and face the consequences of
23    what I have just characterized as the most disgraceful behavior
24    I have seen in 20 years.
25            And I don't need to describe it any more, because it
```

The Court                                                              11

1   speaks for itself. There's a transcript. Shocking. It made
2   me sick to my stomach to read his sarcastic, arrogant,
3   braggadocio, his repeated, relentless attacks on his opponent's
4   family, for goodness sakes.
5          And you were there, Mr. Barnes. He was most notably
6   an embarrassment, a total embarrassment to himself, but an
7   embarrassment to our entire profession, to the members of the
8   Bar, to the members of the public. I felt terrible for the
9   people who had to witness those immature, out-of-control,
10  unprofessional tirades.
11         I felt sorry for the lawyers in the room. I felt
12  sorry for the lay people, the court reporter, the interpreter.
13  I simply cannot understand, under any set of circumstances
14  under the sun, how a member of our profession could conduct
15  himself in that fashion in a deposition.
16         I was stunned. And so, so disappointed. You've asked
17  for sanctions, Mr. Ciardi. And I'm going to hold that aspect
18  of it in abeyance, because I read Mr. George's motion today and
19  I'm not particularly happy with the picture that's been painted
20  of Ms. Papadopoulos, and her absence from the scheduled
21  deposition at the last minute based on a claim of illness.
22         But I will address myself to certain other things.
23  Oh, and one reason I'm inclined to hold the sanctions motion in
24  abeyance, is because both sides failed to do what they should
25  have done, what they repeatedly threatened each other with

The Court                                                                 12

1   doing throughout the session, which was to call the Judge.
2       Both sides said any number of times, I'm going to call
3   the Judge, I'm going to call the Judge. Both sides said to
4   each other, so call the Judge, so call the Judge. Nobody
5   called the Judge.
6       Had you called the Judge, I would have resolved the
7   issues for you early on and avoided what followed. I don't
8   know if Mr. Papadopoulos took pleasure in seeing this
9   out-of-control gunslinger of his make such a fool of himself at
10  the deposition.
11      Maybe he thinks that's good, zealous advocacy. But,
12  you know, people with your depth of experience have to know
13  that there's a day reckoning. Every word was being taken down.
14  Sooner or later, someone was going to read this and say, what
15  do you think you are doing?
16      Every objection is overruled. Mr. Papadopoulos will
17  reappear for a continued deposition, and he will answer
18  questions about all of those issues that were raised about his
19  background, about his business dealings, about his contacts
20  with people at the operation. And I took notes of Mr.
21  Mallife's objection to Mr. Papadopoulos being asked to identify
22  the people who were providing him with this information from
23  the company, because he feared that he would be discharged in
24  retaliation.
25      And I don't take that lightly. But he will identify

```
                                    The Court                          13
 1    them.  And if they are discharged in retaliation, then I'm sure
 2    consequences will follow from that.  But he is going to testify
 3    to those matters.  And what we're going to do is schedule it on
 4    a date that's mutually convenient for both sides and me.
 5         (Transcriber change)
 6              MR. GEORGE:  I'm sorry, Judge, I --
 7              THE COURT:  -- and me as well.  And I'll be sitting by
 8    the phone.  And if there are objections or there is misconduct,
 9    I expect to be called.
10              Mr. George, I'm disappointed in your office.  Mr.
11    Barnes, you were there.  You should have done something.  I
12    don't know whether this man needs anger management therapy,
13    ethics training, or both.  I suspect it's the latter.  I
14    suspect it's both.
15              MR. BARNES:  I apologize to the Court, Your Honor.
16              THE COURT:  I found myself wondering whether Mr.
17    Mallife had mentors in his past, whether he has a family,
18    whether in his past; law professors, perhaps.  Maybe his law
19    partners, maybe adult-aged children.  And I wondered if he had
20    such acquaintances whether he would be proud to have them read
21    that deposition.  To say his conduct was disgraceful does a
22    disservice to those who are merely disgraceful.  I had half a
23    mind to simply bundle it up and send it to the Disciplinary
24    Board.  He needs discipline or help of some kind.  That was
25    atrocious.  You know that, don't you?
```

                                The Court                              14

1    MR. GEORGE: Yes, Judge. And I -- I take
2    responsibility for it. Even though I wasn't there, Your Honor,
3    it was my office's responsibility to make sure he behaved
4    himself, and I failed at that.
5        THE COURT: Grievously. I began by saying he didn't
6    have the courage or dignity to appear, and, Mr. Kennerly, you
7    seem to want to reply to that?
8        MR. KENNERLY: Yes, Your Honor, because I must share
9    in some of the blame for that. And the reason why he's not
10   here is because when he first received the scheduling of it for
11   today, he -- that same day -- where he is today, he's in
12   another jurisdiction. He has two weeks left on a product
13   liability case. He's the only counsel on it. It's the only
14   testing they can do for it.
15       He took the issue to me. I went through -- there's a
16   discovery master on that case. It's been extended three times.
17   I went through all the hearings of the discovery master to see
18   if there was any opportunity that the discovery deadline could
19   be reestablished because the testing has to be scheduled weeks
20   or months in advance. I went through all that. I looked
21   through his experts, what he was going to do. And upon
22   reviewing that, I told him that for that case he really had no
23   option, that there was no chance he could move discovery
24   several weeks or months. And so I conferred with him on that.
25       He -- it's my understanding that either he or Mr.

The Court 15

1 Barnes -- I don't want to involve Mr. Barnes, but I can't
2 remember who called the Court to see if it could be rescheduled
3 earlier and the answer was no. So I conferred with him, and I
4 told him I felt for that case he simply was the only person --
5 he's the only counsel of record. He had to go to that testing.
6 That had to occur or his client there was going to be
7 sanctioned or precluded from evidence or whatnot. And so I --
8 I advised him that I would come here, even though it would be
9 obviously not the ideal or preferable source. So, Your Honor,
10 I must share in the blame for that.
11        The -- the second that I'd say to Your Honor is, in
12 terms of Your Honor's remarks of -- Mr. Mallife, I know, has in
13 the past spoken with Mr. Sam Stretton about some of how to
14 practice law. And what I would offer to the Court is I can go
15 right back to my office and I can send that deposition to Mr.
16 Stretton. And I assure you that whatever Mr. Stretton tells
17 him about it would be taken very well to heart.
18        I think that would be an appropriate -- I would not
19 say final resolution, I know Your Honor is waiting for more on
20 this, but I think that would be a -- a good faith effort
21 forward on what to do. And I will certainly convey to Mr.
22 Mallife the severity of the problem and importance to Your
23 Honor, and convey the same to Mr. Stretton.
24        THE COURT: And suggest to Mr. Mallife that he
25 acquaint himself with the seminal decision in this jurisdiction

```
                          The Court                           16
 1    on these issues, being Judge Gawthrop's decision back in '93,
 2    Clifton Precision.  He should also read Judge Pollak's 2008
 3    decision in Hopkins v. New Day Financial, where Judge Pollak
 4    talks about the, quote, defense of depositions, end quote, and
 5    issues of relevance.  Judge Pollak in that case was faced with
 6    counsel defending a deposition.  And he said that the counsel
 7    took what could be described as, quote, an active role, closed
 8    quote.
 9           I do not share, unfortunately, the temperance of Judge
10    Pollak -- the late Judge Pollak, for whom I have the greatest
11    respect.  So I am compelled to vent some of my umbrage at what
12    transpired, no doubt, in a way that Judge Pollak would have
13    managed to avoid.
14           There are a legion of other cases germane to this
15    topic.  I think one of the comments that stuck with me in
16    particular when Mr. Mallife, obviously in a loud tone of voice,
17    since he was remonstrated to lower his voice any number of
18    times, declared himself to, quote, be in control here, end
19    quote.  And I thought this man is -- is an out-of-control
20    megalomaniac.  He had a very limited role there that day.  He
21    was not, quote, in control, closed quote.  Shocking.
22           Confirm on yourselves and come up with a series of
23    three dates, so that I can attempt to accommodate them into my
24    schedule sometime over the next two or three weeks.  It's
25    summer; it's the holiday.  So do that, and then contact my
```