IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA 2013 DEC 19 ᵖ 3: 52

| | |
|---|---|
| ANA WEBB,<br>Individually and on behalf of all others<br>similarly situated,<br>　　　*Plaintiffs*<br><br>　　　　V.<br><br>VOLVO CARS OF N.A., LLC<br>　　*and*<br>VOLVO CAR CORPORATION<br>　　*and*<br>VOLVO CAR UK LIMITED<br>　　*and*<br>VOLVO CARS OF N.A., INC.<br>　　*Defendants.* | USDC-EDPA<br><br>CIVIL ACTION NO.: 13-2394<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff, Ana Webb, brings this action against defendants Volvo Cars of North America, LLC, Volvo Car Corporation, Volvo Car UK Limited, and Volvo Cars of North America, Inc. (collectively, "Volvo"[1]), by and through the law firm Francis Alexander, LLC, individually and on behalf of all others similarly situated, and allege as follows:

### PREAMBLE

1.　　This class action lawsuit is brought by Plaintiff, Ana Webb, on her own behalf and

---

[1] All averments made in this Second Amended Complaint are made against each Volvo defendant individually and jointly; just as all claims are made against each Volvo defendant individually and jointly.

a nationwide class of current owners and lessees of the Volvo 850 for the model years 1992-1997 (the "Class Vehicles").

2.    Ana Webb (may be referred to hereinafter as "Webb") purchased a Volvo 850 because she wanted to purchase what she reasonably believed was one of the safest automobiles available in the United States for transporting her family.

3.    Webb bought the Class Vehicle under the belief as it was advertised and marketed by Volvo, that the Class Vehicle had an innovative Side Impact Protection System (called "SIPS" by Volvo) that included solid-steel anti-intrusion door bars[2] on all four doors to protect against side-impact crashes.

4.    What Webb and any other purchaser of a Class Vehicle could not have known is that the Volvo 850 in fact did not contain door bars, an essential and industry-standard safety feature, in the rear passenger doors.

5.    The Class Vehicles were defectively designed and manufactured, were not crashworthy, and were not advertised accurately. Further, Volvo deceptively omitted to advertise to consumers the dangers of their product.

6.    Webb justifiably relied upon Volvo's false, misleading and deceptive representations, including advertising, marketing, promotions, sales materials, owner's manual materials, safety materials, express and implied warranties, and press statements

---

[2]  Since 1973, it is has been industry-standard for passenger vehicles sold in the United States to include solid-steel horizontal anti-intrusion structures, commonly referred to as "door bars," within all four passenger doors. Additionally, *every model of Volvo other than the 850 series* had front and rear door bars.

and releases that Volvo provided to its customers, consumers and users of the Class Vehicles.

7.      The Volvo 850 and its falsely advertised and deceptively marketed SIPS is a classic example of "Deceptive Trade Practices." Volvo advertising and marketing of its purported **safety** provided a false sense of safety to Webb and all owners of lessees of the Class Vehicle.

8.      Further, Volvo has taken no steps to remedy their past bad acts, thus ensuring that the false sense of security deceptively created by Volvo continues to affect owners and lessees of the Class Vehicles, who to this day are driving the Class Vehicles unaware of the danger the car presents to themselves and their loved ones, especially in the unfortunate but not uncommon event of an angular side-impact collision.

9.      The Class Vehicles were falsely advertised and deceptively marketed to the public as manufactured with solid steel anti-intrusion door bars on all four doors; but, in fact **none** of the Class Vehicles had **any door bars of any type** in **any of the rear passenger doors**.

10.     The Class Vehicles have been shown by experts to be **uncrashworthy in an angular side-impact collision**, a common and especially deadly type of car accident, which poses an especially serious risks to passengers in the rear seats, who are disproportionately children. **The uncrashworthiness of the Class Vehicles is a direct result of the absence of any door bars in the rear doors.**

11.     Volvo created an extensive marketing campaign for the Class Vehicles, which included press releases, advertisements, and pictures of their Side Impact Protection System (SIPS) *with door bars in the rear doors*; but, the Class Vehicle was not manufactured as advertised and originally designed, resulting in the fact that the Class Vehicles as actually sold had absolutely no door bars in the rear passenger doors.

12.     Because of the absence of industry-standard and essential door bars in the rear passenger doors, the Class Vehicles are uniformly and inherently defective in design and fail to provide an industry-standard level of protection in an angular side-impact collision.

13.     On information and belief, Volvo has at all times been aware of the absence of door bars in the rear passenger doors of the Class Vehicles and of the fact that rear passenger door bars are both an essential and industry-standard safety feature. Further, Volvo has knowingly -- both through false advertisement and omission -- represented to the public that the rear passenger doors of the Class Vehicles were safe and did contain solid steel anti-intrusion door bars.

14.     Volvo has directly benefited from the false advertisement and defective design of the Class Vehicles. These direct benefits include, *inter alia*, saving millions of dollars by not supplying the advertised solid-steel anti-intrusion doors bars and the significant premium paid by owners and lessees of the Class Vehicles in justifiable reliance on Volvo's false, misleading, and deceptive advertising of superior safety.

15.    The significant safety risks posed by the Class Vehicles because of the absence of door bars in the rear passenger doors remains hidden from consumers because the presence or omission of door bars is not observable unless a car door is torn apart. In fact, Volvo's false and misleading representations and omissions were not discovered until a crash investigator identified the problem following a 2009 angular side-impact collision in which a rear-seat passenger in a Class Vehicle was tragically killed.

16.    As a result of Volvo's unfair and deceptive business practices, as set forth herein, the Class Vehicles have a lower market value and are inherently worth less than they would be in the absence of the door bar issue.

## THE PARTIES

17.    Plaintiff, Ana Webb, is a citizen of the Commonwealth of Pennsylvania and resides in Philadelphia, Pennsylvania. Ana Webb purchased a 1997 Volvo 850 on May 1, 2009, a Class Vehicle with VIN: YV16S5540V1396426.

18.    Defendant, Volvo Cars of N.A., LLC, is a limited liability company existing under the laws the State of Delaware. Volvo Cars of N.A., LLC, has a registered address at and a principal place of business at: 1 Volvo Drive, Rockleigh, New Jersey 07647; and, a telephone number at: 210-768-7300. Volvo Cars of N.A., LLC, is a subsidiary of Volvo Car Company.

19.    Defendant, Volvo Car Company, is an entity of unknown form believed to be existing under the laws of Sweden. Volvo Car Company has a registered address and a

principal place of business at: VAK Building, Assar Gabrielssons väg Gothenburg SE-40-5

31, Sweden; and, a telephone number at: +46-31-59-00-00.

20.     Defendant, Volvo Car UK Limited, is an entity of unknown form with a

registered address believed to be at: Scandinavia House; Norreys Drive; Maidenhead;

Berkshire, SL6 4FL; and, a telephone number at: 01628 422200. Volvo Car UK Limited

is a subsidiary of Volvo Car Company.

21.     Defendant, Volvo Cars of N.A., Inc., is a corporation believed to be

incorporated under the laws the State of Delaware. Upon information and belief, Volvo

Cars of N.A., Inc., has a registered address at and a principal place of business at: 1 Volvo

Drive, Rockleigh, New Jersey 07647. Volvo Cars of N.A., Inc., is a subsidiary of Volvo

Car Company.

22.     Defendants Volvo Cars of North America, LLC, Volvo Car Corporation,

Volvo Car UK Limited, and Volvo Cars of North America, Inc. (collectively, "Volvo")

develop, manufacture, and market automobiles, including the Class Vehicles. Volvo

distributes and markets its products throughout the world, including the United States of

America.

23.     The Plaintiff Class is defined as and consists of: All current owners and

lessees of Volvo 850 vehicles for the model years 1992-1997.[3]

## VENUE AND JURISDICTION

---

[3] Plaintiffs reserve the right to amend or add to the vehicle models included in the Class Vehicles after conducting discovery.

24.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because: (1) there are 100 or more class members; (2) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (3) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

25.     This Court has personal jurisdiction over Volvo because Volvo is authorized to conduct business in the Commonwealth of Pennsylvania and does conduct business in the Commonwealth, and has sufficient minimum contacts with this Commonwealth and/or sufficiently avails itself of the markets of this Commonwealth through its marketing, sales and advertising such that the exercise of jurisdiction within this Commonwealth is permissible.

26.     Venue in the Eastern District of Pennsylvania is proper because:

a.      Volvo regularly conducts business in Pennsylvania and enters their products into the stream of commerce;

b.      Volvo marketed and advertised Class Vehicles in this district, and/or their marketing and advertising material was distributed, disseminated, or entered the borders of the Eastern District of Pennsylvania and was viewed, read, considered, and relied upon by consumers;

c.     Volvo has received substantial revenue and profits from their sales and/or leasing of Class Vehicles in the Eastern District of Pennsylvania; thus, a substantial part of the events and omissions giving rise to the claims occurred, in part, within the Eastern District of Pennsylvania;

d.     and, Plaintiff Ana Webb purchased her Class Vehicle in the Eastern District of Pennsylvania.

27.     Accordingly, Volvo has conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the Eastern District of Pennsylvania and throughout the United States of America.

## TOLLING OF STATUTE OF LIMITATIONS

28.     Any applicable statute(s) of limitations have been tolled by Volvo's knowing and active concealment and denial of the facts alleged herein. Webb and the other members of the Class could not possibly have discovered the truth about the rear passenger doors, since the fact that the advertised door bars were missing was concealed within the interior of the doors.

## FACTUAL ALLEGATIONS

29.     Plaintiffs hereby incorporate by reference each and every allegation in this Complaint as if set forth fully herein at length.

30.     On or about May 1, 2009, Ana Webb purchased a 1997 Volvo 850 designed, manufactured, sold, marketed and advertised by Volvo.

31.     Between the years 1991 and 1996 (model years 1992-1997) Volvo manufactured, sold, marketed and advertised more than 1,300,000 Volvo 850 sedans, and the 850 model was Volvo's top-selling automobile in the United States of America.

32.     Throughout the period that the Volvo 850 was manufactured, sold, marketed and advertised by Volvo, steel anti-intrusion door bars were an industry-standard safety feature contained in every door of every passenger vehicle for sale in the United States, with the sole exception of certain automobiles sold by Volvo.

33.     Upon information and belief, the Volvo 850 was the **only** new model of sedan marketed, sold and advertised in the United States during the years 1992-1997 that did not contain solid-steel anti-intrusion door bars in every single passenger door.

34.     Upon information and belief, Volvo is the **only** major automobile manufacturer during the years 1992-1997 to have failed to include the standard safety feature of solid-steel anti-intrusion doors bars in every passenger door.

35.     Before deciding to remove rear passenger door solid-steel anti-intrusion doors bars from the design of the Volvo 850, Volvo conducted **no** angular side-impact collision testing; or, if such testing has been conducted by Volvo, Volvo denies having done it and has concealed the results of that testing. Had Volvo conducted such testing, the testing would have revealed that a passenger sedan without solid-steel anti-intrusion

doors bars in every passenger door is not crashworthy, especially in an angular side-impact collision where a rear passenger door is struck.

36.     Upon information and belief, all new passenger sedans sold in the United States today – **including** all new models sold by Volvo – contain solid-steel anti-intrusion doors bars in every passenger door, as has been industry-standard since 1973.

37.     Moreover, Volvo both expressly and implicitly advertised and marketed solid-steel anti-intrusion doors bars in every passenger door as a safety feature of the Volvo 850 in advertising, marketing, promotions, sales materials, owner's manual materials, safety materials, express and implied warranties, and press statements and releases that Volvo provided to its customers, consumers and users of the Class Vehicles.

38.     Side-impact collisions are common and especially likely to result in fatalities. Side-impact collisions are more likely than other types of collisions to result in fatalities because little besides a passenger door often stands between the striking vehicle and a human being.

39.     Volvo distinguished itself in the marketplace by concentrating its advertising and marketing of the Volvo 850 around the side-impact safety features of the Volvo 850.

40.     Volvo defines, advertises and promotes its brand as being **built on safety** and has extensively leveraged this public image of safety and the purported safety of their vehicles as a substantial part of their business design, image, and branding.

41.     Prior to strong government safety regulations, Volvo promoted itself as in the forefront of safety engineering.

42.     Volvo has promoted its brand by stating that the **guiding principle behind everything made at Volvo is safety and it must remain safety**.

43.     Volvo defines, advertises and promotes its brand as adhering to the motto: **"Safety First. *Always First.*"** Volvo also expressly warrants that **"Safety is the cornerstone for Volvo."**

44.     Volvo defines, advertises and promotes its brand by declaring that every Volvo built is the sum of 70 years of focusing on safety. This is defined by Volvo to mean that the consumer is not just buying a car, ***they are buying and driving the promise of safety.***

45.     The general public recognizes the Volvo brand as defined, advertised and promoted by Volvo to represent that Volvo automobiles are safer than other automobiles.

46.     Specifically, Volvo advertised and promoted the 850 model side-impact protection system to represent to the general public that in a side-impact collision a Volvo 850 was safer than other automobiles, even though the Volvo 850 lacked basic, essential, industry-standard safety features required in the event of an angular side-impact collision.

46.     Volvo defines safety as the reduction of injuries. Volvo defines its role as to reduce injuries in that Volvo recognizes that while accidents may always happen they do not have to result in injuries.

47.     Volvo claims that no modification or change is made to the design of a Volvo without its effect on safety being evaluated and verified.

48.     Since the 1970's, Volvo designed, built, advertised and sold its automobiles as containing solid-steel anti-intrusion door bars in all passenger doors.

49.     Although Volvo heavily advertises and promotes the safety features it includes in its products, Volvo has never publicly advertised or marketed the Volvo 850 as **not having** industry-standard solid-steel anti-intrusion door bars in the rear doors.

50.     The Volvo 850 does have solid-steel anti-intrusion door bars welded in to the **front** passenger doors.

51.     Volvo has taken no steps to remedy the failure to include solid-steel anti-intrusion door bars in the rear passenger doors of the 850 model or to correct its false, misleading and deceptive advertising that represented to the public that solid-steel anti-intrusion door bars were included in the rear passenger doors.

## CLASS ALLEGATIONS

52.     Plaintiffs hereby incorporate by reference each and every allegation in this Complaint as if set forth fully herein at length.

53.     Ana Webb brings this action as a class action pursuant to Fed.R.Civ.P. 23(b)(3) on behalf of herself and all similarly situated individuals. The Class on behalf of which she brings the action is defined as: All current owners and lessees of Volvo 850 vehicles for the model years 1992-1997.

54.     The Class is so numerous that joinder of all members is impracticable. By point of reference, over 1,300,000 Volvo 850s were manufactured and sold by Volvo in the model years 1992-1997.

55.     There are questions of law and fact common to all Class members. Representative questions of law and fact include but are not limited to:

a.      Whether the Volvo 850 was falsely and deceptively marketed and advertised as having door bars in all four passenger doors.

b.      Whether the Volvo 850 was defectively designed by failing to have door bars in all four doors; specifically, failing to have door bars in the rear passenger doors and otherwise lacking adequate protection in the rear passenger doors.

c.      Whether it was false and deceptive for Volvo to advertise the Volvo 850 as having a side-impact protection system that was safer than those available in other automobiles.

d.      Whether Volvo failed to warn the public that the Volvo 850 is dangerous in an angular side-pact collision.

e.      The effect on the value of Class Vehicles because of the issues described herein.

f.      Volvo's level of culpability because of the issues described herein.

        g.      Whether Volvo breached the implied warranty of merchantability and/or the express warranty made by Volvo for the Class Vehicles because of the issues described herein.

        h.      Whether because of the issues described herein Volvo has violated the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

        i.      Whether Volvo has a responsibility to repair the Class Vehicles.

56.     The claims of Ana Webb are typical of the class as a whole. As with all members of the Class, Webb purchased a Volvo 850 model years 1992-1997. None of the Class Vehicles contained door bars in the rear passenger doors and all of them were similarly designed, manufactured, advertised, marketed, promoted and sold by Volvo.

57.     Webb will fairly and adequately assert and represent the interests of the Class. Webb's interest are not antagonistic with those of the Class and in no way conflict. Webb has retained experienced counsel who will adequately represent the Class interests. Webb has the ability and motivation to assist in the prosecution of the Class Action and like her counsel has the financial resources and is otherwise able to vigorously prosecute this litigation.

58.     Webb's claims are identical to the claims of the entire class, and also arise from Volvo's uniform conduct.

59.     The maintenance of this action as a class action is superior to all other available methods of adjudication in achieving a fair and efficient adjudication of the controversy in this matter because:

a.     The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class.

b.     The action is manageable as a class action because notice of the pendency of the action can readily be furnished to all prospective class members because Volvo knows their identities.

c.     In view of the complexity of the issues and the expenses of litigation, the separate claims of the individual class members are insufficient in amount to support the prosecution of the individual class members' separate claims because such members would lack the economic incentive to prosecute such actions.

d.     It is probable that the amount that will be recovered by individual members collectively will be large enough in relation to the expense and effort of administering the action as a class.

e.     The Class members have a common and undivided interest to ensure that owners and lessees of Class Vehicles do not drive in unsafe vehicles for themselves or their family.

## COUNT I

Pennsylvania Unfair Trade Practices and Consumer Protection Law
(On behalf of the Nationwide Class, or in the Alternative, a Pennsylvania Class)

59.     Plaintiffs hereby incorporate by reference each and every allegation in this
Complaint as if set forth fully herein at length.

60.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law
("UTPCPL") protects consumers against "unfair or deceptive acts or practices" in
connection with the sale or advertisement of products, including automobiles. 73 Pa.
C.S.A. § 201-1, *et seq.*

61.     Ana Webb and the other Class members purchased or leased the Class
Vehicles for personal, family or household use.

62.     Volvo engaged in unlawful conduct, made affirmative misrepresentations,
or otherwise violated the UTPCPL. Specifically, Volvo made false, deceptive and/or
misleading representations and/or omissions that the Class Vehicles were safer vehicles
than other automobiles on the market, with an especially safe side-impact protection
system, that included solid-steel anti-intrusion door bars in each passenger door.

63.     Volvo defined, advertised and promoted the Class Vehicles as **built on
safety** and has extensively leveraged this public image of safety and the purported safety
of their vehicles to induce consumers to purchase the Class Vehicles at a substantial
premium.

64.     More specifically, Volvo made false, deceptive and/or misleading representations and/or omissions to the public regarding the Volvo 850's safety, the Side Impact Protection System ("SIPS"), and the anti-intrusion door bars.

65.     Volvo also used unfair methods of competition and more specifically engaged in unfair or deceptive acts or practices as prohibited under the UTPCPL as follows (as enumerated in the Code, at 73 Pa. C.S.A. § 201-2):

> (v)     Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or qualities that they do not have [. . .];
>
> (ix)    Advertising goods or services with intent not to sell them as advertised;
>
> (xiv)   Failing to comply with the terms of any written guarantee or warranty given to the buyer [. . .];
>
> (xxi)   Engaging in other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

66.     Volvo engaged in at least the following specific deceptive trade practices:

> a.      Failing to disclose that the rear passenger doors of the Class Vehicles did not have door bars in them.
>
> b.      Failing to disclose that the advertised solid-steel anti-intrusion door bars were only installed in the front doors.

c.      Failing to disclose that rear-seat passengers in the Class Vehicles
        are at a heightened risk of death in the event of an angular side-
        impact collision.

d.      Falsely, misleadingly and/or deceptively representing that the
        Class Vehicles had the characteristic of being safe in a side-impact
        collision.

e.      Falsely, misleadingly and/or deceptively representing that the
        Class Vehicles had the characteristic of having solid-steel door bars
        in all four passenger doors.

f.      Failing to disclose that the Class Vehicles' crash ratings were based
        upon driver and front-seat passengers and did not reflect the Class
        Vehicles' safety vis-à-vis rear-seat passengers.

g.      Failing to correct its design, build and manufacture of the Class
        Vehicle.

h.      Failing to correct its advertising, marketing and promotion of the
        Class Vehicles.

i.      Doing all of the above in order to secure the sale of the Class
        Vehicles.

67.     As a direct and proximate result of Volvo's false, deceptive and/or
misleading representations and/or omissions, Ana Webb and the other Class members

have suffered an ascertainable loss. In addition to direct monetary loss, Webb and the Class members have suffered an ascertainable loss by receiving less than was promised.

68.     Volvo intended that Ana Webb and the other Class members rely on Volvo's representations and omissions so that they would purchase the Class Vehicles.

69.     A causal relationship exists between Volvo's unlawful conduct and the ascertainable loss suffered by Ana Webb and the other Class members. Had Volvo accurately represented its crashworthiness, consumers would not have purchased the Class Vehicles or they would have paid significantly less for the Class Vehicles had they decided to purchase them.

WHEREFORE, Ana Webb and the other Class Members demand judgment against Volvo for: compensatory damages; punitive damages; attorneys' fees; interest; costs of suit; injunctive relief; and, any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

## COUNT II

### Unjust Enrichment

(On behalf of the Nationwide Class, or in the Alternative, a Pennsylvania Class)

70.     Plaintiffs hereby incorporate by reference each and every allegation in this Complaint as if set forth fully herein at length.

71.     Ana Webb and the other Class members conferred a tangible economic benefit to Volvo by purchasing the Class Vehicles; had it been known at the time this

benefit was conferred that the Class Vehicles were not crashworthy and not as advertised, Webb and the other Class members would have expected remuneration from Volvo.

72.     The tangible economic benefits that Ana Webb and the other Class members conferred to Volvo include among other things: the purchase price of the Class Vehicles, including the substantial premiums that Volvo is able to command in price because of their reputation for such things as producing automobiles with high re-sell value and for using superior safety features; reputational benefits, including that every driver of a Volvo serves as an advertiser for Volvo by conspicuously displaying the Volvo brand in public; and the revenue conferred to Volvo in maintenance and repair costs associated with the fact that Volvos are driven on the road.

73.     As a direct and proximate result of Volvo's false, deceptive and/or misleading representations and/or omissions regarding the Class Vehicles, Volvo has realized profits because Ana Webb and the other class members were induced to purchase the Class Vehicles. Additionally, Volvo has retained millions of dollars that it did not spend to manufacture and produce solid-steel anti-intrusion door bars in the Class vehicles' rear doors.

74.     Volvo was and continues to be unjustly enriched at the expense of Ana Webb and the other Class members.

75.     Under these circumstances, Volvo would be unjustly enriched at Ana Webb and the other Class members' expense unless Volvo is disgorged of the benefits it has inequitably gained.

WHEREFORE, Ana Webb and the other Class Members demand judgment against Volvo for: compensatory damages; punitive damages; attorneys' fees; interest; costs of suit; injunctive relief; and, any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

## COUNT III

### Breach of Express Warranty

(On behalf of the Nationwide Class, or in the Alternative, a Pennsylvania Class)

76.     Plaintiffs hereby incorporate by reference each and every allegation in this Complaint as if set forth fully herein at length.

77.     Volvo expressly warranted that the Class Vehicles were of good quality, free of defects, and were safe.

78.     Volvo breached this warranty by selling to Ana Webb and the other Class members the Class Vehicles, which did not contain the essential, industry-standard safety feature of solid-steel anti-intrusion door bars on all four doors to protect against side-impact crashes.

79.     Moreover, Volvo's false, deceptive and/or misleading representations and/or omissions not only explicitly and implicitly told Ana Webb and the other Class members that the Class Vehicles did have solid-steel anti-intrusion door bars on all four doors, but further that the Class Vehicles actually exceeded the industry-standards for side-impact collision safety and would perform better than other available automobiles in the event of a side-impact collision.

80.    Volvo's warranty breach has caused Ana Webb and the other Class members significant damages.

81.    Any attempt by Volvo to disclaim or limit these express warranties is unconscionable and unenforceable under the present circumstances. Volvo's warranty limitation cannot be enforced because Volvo knowingly sold a defective product without informing the public about the defect.

82.    The time limits contained in Volvo's warranty are also unconscionable and inadequate to protect Ana Webb and the other members of the Class. Among other things, Webb and the other Class members had no meaningful choice in negotiating these limitations, the terms of which unreasonably favored Volvo. A gross disparity in bargaining power existed between Volvo and Webb and the other Class members, and Volvo was aware or should have been at the time of sale that the other Class Vehicles were not as advertised and did not conform to even industry-standard safety expectations.

83.    Ana Webb and the other Class members have either complied with all the obligations under the warranty, or are excused from said performance because of Volvo's herein described conduct.

WHEREFORE, Ana Webb and the other Class Members demand judgment against Volvo for: compensatory damages; punitive damages; attorneys' fees; interest; costs of suit; injunctive relief; and, any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

## COUNT IV

Breach of the Implied Warranty of Merchantability

(On behalf of the Nationwide Class, or in the Alternative, a Pennsylvania Class)

84.    Plaintiffs hereby incorporate by reference each and every allegation in this Complaint as if set forth fully herein at length.

85.    Volvo impliedly warranted that the Class Vehicles were of marketable quality.

86.    Volvo breached the implied warranty of merchantability because the Class Vehicles were not of a merchantable quality owing to their falsely-represented and undisclosed safety issues owing to the absence of solid-steel anti-intrusion door bars in the rear passenger doors.

87.    Ana Webb and the other Class members were injured and are entitled to damages because Volvo breached the implied warranty of merchantability.

88.    Volvo's attempts to disclaim or limit the implied warranty of merchantability is unconscionable and cannot be enforced. Volvo's warranty limitation is unenforceable because Volvo knowingly sold a defective product without informing consumers about the defect.

89.    The time limits contained in Volvo's warranty are also unconscionable and inadequate to protect Ana Webb and the other members of the Class. Among other things, Webb and the Class members had no meaningful choice in negotiating these limitations, the terms of which unreasonably favored Volvo. A gross disparity in

bargaining power existed between Volvo and Webb and the Class members, and Volvo was aware or should have been at the time of sale that the Class Vehicles were not as advertised and did not conform to even industry-standard safety expectations.

90.     Ana Webb and the other Class members have either complied with all the obligations under the warranty, or are excused from said performance because of Volvo's herein described conduct.

WHEREFORE, Ana Webb and the other Class Members demand judgment against Volvo for: compensatory damages; punitive damages; attorneys' fees; interest; costs of suit; injunctive relief; and, any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

## COUNT V

### Negligent Misrepresentation

(On behalf of the Nationwide Class, or in the Alternative, a Pennsylvania Class)

91.     Plaintiffs hereby incorporate by reference each and every allegation in this Complaint as if set forth fully herein at length.

92.     Volvo negligently provided Ana Webb and the other class members with false information. This includes: Volvo's deceptive and/or misleading representations and/or omissions regarding the presence of solid-steel anti-intrusion door bars in the rear passenger doors of the Class Vehicles; and Volvo's many numerous affirmative representations about the quality of the Class Vehicles, which, *inter alia*, were intended to

give a reasonable consumer the false belief that the Class Vehicles were safer than other available vehicles in the event of a side-impact collision.

93.     Ana Webb and the other Class members justifiably relied on these negligent representations and omissions, resulting in substantial damages.

WHEREFORE, Ana Webb and the other Class Members demand judgment against Volvo for: compensatory damages; punitive damages; attorneys' fees; interest; costs of suit; injunctive relief; and, any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

## COUNT VI

### Fraud

(On behalf of the Nationwide Class, or in the Alternative, a Pennsylvania Class)

94.     Plaintiffs hereby incorporate by reference each and every allegation in this Complaint as if set forth fully herein at length.

95.     Volvo made material false misrepresentations and omissions concerning a material fact. This includes the fact that Volvo did not fully and truthfully disclose to its customers that it had removed an essential, industry-standard safety feature from the rear passenger doors of the Class Vehicles, but actually made false material misrepresentations and omissions that the Class Vehicles did have industry-standard solid-steel anti-intrusion door bars in the rear passenger doors.

96.     Further, Volvo made material false misrepresentations and omissions to the effect that the Class Vehicles were safer than other available automobiles in the event of a side-impact collision, but in fact the Class Vehicles lack a basic, industry-standard safety feature and at least in the event of an angular side-impact collision are not crashworthy.

97.     As a result of the herein described material false misrepresentations and omissions made by Volvo, Ana Webb and the other Class members were fraudulently induced to purchase or lease the Class Vehicles.

98.     These omissions and statements were made knowingly by Volvo, with the intent that Ana Webb and the other class members rely upon them.

99.     Ana Webb and the other class members reasonably relied upon the omissions and statements and thereby have suffered damages as a result.

WHEREFORE, Ana Webb and the other Class Members demand judgment against Volvo for: compensatory damages; punitive damages; attorneys' fees; interest; costs of suit; injunctive relief; and, any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

# DEMAND FOR JURY TRIAL

100.     Plaintiffs hereby demands a trial by jury on all claims and issues so triable.

*****

*Respectfully submitted,*
FRANCIS ALEXANDER, LLC

/s/ Francis Malofiy
Francis Malofiy, Esquire
Attorney ID No.:    208494
The Beasley Building
1125 Walnut Street
Philadelphia, PA 19107
T:    (215) 500-1000
F:    (215) 500-1005
*Law Firm / Lawyer for Plaintiffs*

/d/ December 19, 2013