UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---

ANA WEBB
Individually and on behalf of all others
similarly situated,
*Plaintiffs*

v.

VOLVO CARS OF N.A., LLC
*and*
VOLVO CAR CORPORATION
*and*
VOLVO CAR UK LIMITED
*and*
VOLVO CARS OF N.A., INC.
*Defendants*

CIVIL ACTION NO.: 13-cv-2394-MMB

---

# ORDER

AND NOW, on this _____ day of _____, 2015, upon consideration of

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, Plaintiffs' response in opposition,

and the record as a whole, it is hereby ORDERED and DECREED that the motion is **DENIED**.

BY THE COURT:

_____
THE HONORABLE MICHAEL M. BAYLSON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANA WEBB<br>Individually and on behalf of all others<br>similarly situated,<br>*Plaintiffs*<br><br>V.<br><br>VOLVO CARS OF N.A., LLC<br>*and*<br>VOLVO CAR CORPORATION<br>*and*<br>VOLVO CAR UK LIMITED<br>*and*<br>VOLVO CARS OF N.A., INC.<br>*Defendants* | CIVIL ACTION NO.: 13-cv-2394-MMB<br><br><br>*JURY TRIAL DEMANDED*<br><br><br>*ORAL ARGUMENT REQUESTED* |

PLAINTIFFS' ANSWER IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Plaintiffs object to this Motion for Summary Judgment on several grounds, namely that the doctrine of res judicata (claim preclusion) has no applicability to the instant lawsuit. Volvo claims that Plaintiffs' Unfair Trade Practices and Consumer Protection Law ("UTPCPL ") claim for deceptive advertising is barred by res judicata. Volvo fails to tell the Court that the UTPCPL claim asserted in the parallel state court action, which Volvo argues is res judicata, was nonsuited because the plaintiff in that action did not have *standing* to bring the claim. In other words, the nonsuit in the state court **was not on the merits**. Because there is no prior final judgment on the merits to with respect to Plaintiffs' UTPCPL claim in this case, res judicata cannot be applied. Furthermore, the lead Plaintiff in this case, Ana Webb, is not in privity with the plaintiff in the state court action as privity is defined by the Third Circuit. Privity is a crucial element for the application of res judicata and Volvo's failure to show privity is fatal to its res judicata claims.

Thus, res judicata does not apply to the instant lawsuit and Defendants' motion for summary judgment should be denied.

Plaintiffs, Ana Webb and all other members of the class similarly situation, by their undersigned counsel, hereby respond to Volvo Car Corporation's and Volvo Cars of N.A., LLC's Motion for Summary Judgment and in opposition thereto, state and aver as follows:

1. **Mark Webb, as administrator of the estate of his son, Sabino Webb, brought an action against VCC and VCNA, among others, in the Court of Common Pleas, Philadelphia County, Pa., Civil Action Number 110500208 ("State Court Action"). The State Court Action arose out of the purchase of a used 1997 Volvo 850 that was in an accident in which Sabino Webb suffered fatal injuries.**

   1.     Admitted.

2. **On or about October 20, 2011, Mr. Webb, acting as administrator of the estate of Sabino Webb, filed a Second Amended Complaint in the State Court Action (the "SAC").**

   2.     Admitted.

   a. **In Count I of the SAC, Mr. Webb alleged that VCC and VCNA defectively designed and manufactured the 1997 Volvo 850 vehicle owned by his spouse, Ana Webb. Count I alleged that the vehicle was not crashworthy because, among other things, it lacked a side impact protection system.**

      a.     Denied, as the document speaks for itself.

   b. **In Count II of the SAC, Mr. Webb alleged that the 1997 Volvo 850 vehicle owned by his spouse, Ana Webb, was unreasonably dangerous and defective, because, among other alleged reasons, the vehicle lacked adequate side impact protection.**

      b.     Denied, as the document speaks for itself.

   c. **In Count III of the SAC, Mr. Webb alleged that VCC and VCNA were negligent with respect to the design, manufacture and sale of the 1997 Volvo 850 vehicle owned by his spouse, Ana Webb, because, among other alleged reasons, the vehicle lacked adequate side impact protection.**

      c.     Denied, as the document speaks for itself.

   d. **In Count IV of the SAC, Mr. Webb alleged that VCC and VCNA breached express and implied warranties with respect to the 1997 Volvo 850 vehicle owned by his spouse, Ana Webb, because, among other alleged reasons, the vehicle lacked adequate side impact protection.**

      d.     Denied, as the document speaks for itself.

> e.     In Count V of the SAC, Mr. Webb alleged that VCC and VCNA violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") by misrepresenting that the Volvo 850 vehicle had a Side Impact Protection System and anti-intrusion door bars, beams and/or systems to protect rear-seat occupants when, in fact, the vehicle did not.

> e.     Denied, as the document speaks for itself.

**3.     On or about September 11, 2013, Plaintiff withdrew the claim for breach of warranty (Count IV) in the State Court Action.**

> 3.     Admitted.

**4.     The State Court Action proceeded to trial. During trial, the Honorable Judge John M. Younge, granted a motion for a compulsory nonsuit by VCC and VCNA on Counts III (Negligence) and V (UTPCPL) of the SAC. Plaintiff subsequently dismissed VCNA before the case went to the jury.**

> 4.     Admitted in part, denied in part. It is admitted that the Court granted the compulsory nonsuits, but it is denied that Plaintiff ever dismissed VCNA before the case went to the jury.

**5.     Judge Younge submitted Counts I and II to the jury, and on November 15, 2013, the jury returned a verdict in favor of VCC, finding that the design of the vehicle "was NOT defective."**

> 5.     Denied, as the document speaks for itself.

**6.     The jury specifically answered "No" to the following special interrogatory: "DO YOU FIND THE DESIGN OF THE VOLVO 850 TO BE DEFECTIVE BECAUSE OF THE LACK OF DOOR BARS IN THE REAR DOORS"?**

> 6.     Denied, as the document speaks for itself.

**7.     The jury found Mrs. Webb's negligence to be 100% responsible for the fatal injuries to her son.**

> 7.     Denied. Ms. Webb's inclusion on the jury sheet was pure error. Ms. Webb's alleged negligence was completely irrelevant to the strict liability claims before the jury and her inclusion on the jury sheet was nonsensical.

8.      On March 26, 2014, Judge Younge entered judgment on the verdict. On April 2, 2014, Plaintiff filed a Notice of Appeal, and on May 14, 2014, Plaintiff filed his Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b).

      8.      Admitted.

9.      On November 10, 2014, Judge Younge filed his opinion in support of his denial of all post-trial motions by Plaintiff.

      9.      Admitted.

10.      On or about May 1, 2013, more than six months before the jury verdict was rendered in the State Court Action, Plaintiffs Mark and Ana Webb filed a putative class action complaint in this Court against Defendants.

      10.      Admitted in part, denied in part. It is admitted that Mark Webb and Ana Webb filed this lawsuit on May 1, 2013, against Volvo. It is denied that Mark Webb is currently a Plaintiff in this action.

11.      On December 10, 2013, after learning of the jury verdict and other decisions in the Court of Common Pleas, this Court ordered the parties to provide "a brief summary of their contentions as to whether the results in that case may be relevant in this case, either as collateral estoppel or res judicata, or otherwise." (Dkt. 44.).

      11.      Admitted.

12.      On the day these submissions were due, Plaintiff Ana Webb filed a Second Amended Complaint in this Court against Defendants VCNA, VCC, and VCUK in which Mark Webb was removed as a Plaintiff, Ana Webb was identified as the owner of the Volvo 850 vehicle, and allegations regarding the vehicle accident and death of Sabino Webb were removed. (Dkt. 54.)

      12.      Denied, as the document speaks for itself.

13.      The Second Amended Complaint purported to plead two of the four previously alleged causes of action—UTPCPL and unjust enrichment—and four new claims. Under Pennsylvania law, however, these changes make no difference to the application of the doctrine of res judicata. Ana Webb and Mark Webb, as parents of Sabino Webb, are the heirs at law to the Estate of Sabino Webb, and they jointly would have received any funds awarded to the Estate in the Court of Common Pleas had they prevailed on the claims in that suit. Both had a beneficial interest in the Estate's suit in the Court of Common Pleas. This legal relationship between Ana Webb and the Estate creates privity for the application of res judicata to Ana Webb's claims in this case. There also is privity because Mark Webb, as administrator, and the Estate each

owed a fiduciary duty to Ana Webb and adequately represented her interests in the Court of Common Pleas.

13.     Denied, as the document speaks for itself. By way of further response,

**14.     The UTPCPL claim is barred by the compulsory nonsuit and verdict in the Court of Common Pleas.**

14.     Denied as conclusions of law to which no response is required.

**15.     *Res judicata* bars the remaining claims in this case because they arose from the same transaction (the purchase by Ana Webb of the 1997 Volvo 850 vehicle) and either were brought or could have been brought in the Court of Common Pleas.**

15.     Denied as conclusions of law to which no response is required.

**16.     The jury's finding that the 1997 Volvo 850 vehicle purchased by Ana Webb was not defective estops relitigation of that issue, and independently bars the claims in this case because the claims are all predicated on the contention that the absence of door bars in the rear doors rendered the 1997 Volvo 850 purchased by Ana Webb defective and unsafe.**

16.     Denied as conclusions of law to which no response is required.

**17.     Therefore, this Court should grant summary judgment against Plaintiff Ana Webb and dismiss the Second Amended Complaint with prejudice because all of the claims alleged are barred by the doctrines of res judicata and collateral estoppel.**

17.     Denied as conclusions of law to which no response is required.

**18.     Defendants incorporate by reference the supporting memorandum, statement of undisputed material facts, and exhibits filed contemporaneously herewith.**

18.     Denied as conclusions of law to which no response is required.

In support of their Answer, Plaintiffs submit the accompanying Memorandum of Law and Exhibits, which are incorporated by reference in this Response.

*****

*Respectfully submitted,*

FRANCIS ALEXANDER, LLC

*/s/ Francis Malofiy*

Francis Malofiy, Esquire

Attorney ID No.:  208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiffs*
*/d/ February 18, 2015*

### United States District Court
### Eastern District of Pennsylvania

| | |
|---|---|
| Ana Webb<br>Individually and on behalf of all others<br>similarly situated,<br>    *Plaintiffs*<br><br>v.<br><br>Volvo Cars of N.A., LLC<br>    *and*<br>Volvo Car Corporation<br>    *and*<br>Volvo Car UK Limited<br>    *and*<br>Volvo Cars of N.A., Inc.<br>    *Defendants* | Civil Action No.: 13-2394<br><br><br>*Jury Trial Demanded*<br><br><br>*Oral Argument Requested* |

### Memorandum of Law in Support of Plaintiffs' Answer in Opposition to Defendants' Motion for Summary Judgment

Plaintiffs object to this Motion for Summary Judgment on several grounds, namely that the doctrine of res judicata (claim preclusion) has no applicability to the instant lawsuit. Volvo claims that Plaintiffs' Unfair Trade Practices and Consumer Protection Law ("UTPCPL ") claim for deceptive advertising is barred by res judicata. Volvo fails to tell the Court that the UTPCPL claim asserted in the parallel state court action, which Volvo argues is res judicata, was nonsuited because the plaintiff in that action did not have *standing* to bring the claim. In other words, the nonsuit in the state court **was not on the merits**. Because there is no prior final judgment on the merits to with respect to Plaintiffs' UTPCPL claim in this case, res judicata cannot be applied. Furthermore, the lead Plaintiff in this case, Ana Webb, is not in privity with the plaintiff in the state court action as privity is defined by the Third Circuit. Privity is a crucial element for the application of res judicata and Volvo's failure to show privity is fatal to its res judicata claims.

Thus, res judicata does not apply to the instant lawsuit and Defendants' motion for summary judgment should be denied.

## II.   STATEMENT OF QUESTIONS INVOLVED

QUESTION 1: When a prior case is nonsuited because the trial court determined the party in the prior case had no standing to bring the cause of action, is that not a determination on the merits?

**Suggested Answer: Yes.**

QUESTION 2: When a prior case is nonsuited not on the merits of the claim, are lawsuits concerning the factual issues of the prior case not precluded by res judicata?

**Suggested Answer: Yes.**

QUESTION 3: When the only connection a plaintiff in a prior action has to the plaintiff of a current case is familial in nature, is that not enough to establish privity for purposes of res judicata?

**Suggested Answer: Yes.**

## III. Facts

On May 4, 2009, as plaintiff Ana Webb was driving a Volvo 850, the passenger side of the vehicle was struck by a PT Cruiser. Plaintiff's infant son, Sabino Webb, who was sitting on the rear passenger side, was killed in the car accident. In May 2011, the Estate of Sabino Webb, with Mark Webb as the administrator, filed a products liability lawsuit against Volvo Car Corporation and Volvo Cars North America, alleging that the Volvo 850 was defective because it lacked steel door bars in the rear doors that prevent intrusion into the passenger compartments.

Plaintiff Ana Webb, mother of Sabino Webb, filed this lawsuit on May 1, 2013, (*Doc. No. 1*), alleging, *inter alia*, that Volvo had deceptively advertised the Volvo 850 with a Side Impact Prevention System ("SIPS") that has steel door bars in the rear doors in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[1] The Volvo 850 bought by Ms. Webb contained a brochure in the glove box advertising the SIPS system, and depicted a Volvo with rear door bars. Ms. Webb reviewed the glove box brochure before purchasing the Volvo 850 and it factored into her decision to purchase the vehicle. Exhibit 1 – Volvo Glove Box Brochure; Exhibit 2 – State Court Trial Transcript Excerpts, 11/5/13, at p.65–66.  Volvo, after all, has built its reputation on safety and advertising to the parents of small children.

On November 4, 2013, the state products defect case went to trial. In that action, the Estate of Sabino Webb had alleged a UTPCPL deceptive advertising claim, in addition to the products liability claim. At trial, the Estate showed the deceptive glove box brochure to the jury. Volvo's corporate designee admitted that the brochure was confusing, especially to an individual not intimately familiar with Volvo products. Exhibit 2 – State Court Trial Transcripts, 11/12/13 PM, at p.65–66. However, as Volvo pointed out in its Motion for Summary Judgment, the Estate of Sabino Webb legally could not make out a UTPCPL claim against Volvo. This is because, under the UTPCPL, a plaintiff needs to (1) have actually ***purchased*** the product that was deceptively advertised, and (2) needs to have ***relied*** upon the deceptive advertising in question in purchasing the product. See 73 P.S. § 201-9.2. Thus, at trial the state court nonsuited the Estate's UTPCPL

---

[1] Plaintiff's husband, Mark Webb, was originally listed as a plaintiff on this lawsuit.

claim because it was undisputed that Sabino Webb had not purchased the Volvo 850 in question, and because Sabino Webb obviously could not have relied upon the advertising alleged to be deceptive as he was an infant. See Exhibit 3 – Volvo's Motion for Compulsory Nonsuit (arguing that the state court plaintiff did not have standing to bring a UTPCPL); Exhibit 2 – State Court Trial Transcript Excerpts – 11/14/13 AM, at p.97.

Now, in this case, Volvo is claiming—after having previously argued that the UTPCPL claim alleged by Sabino Webb was invalid because he did not purchase the vehicle and did not rely on the advertising—that Ana Webb, who **did purchase** the vehicle and **did rely** on the deceptive advertising, should be precluded by res judicata from litigating this action. See generally Volvo Motion for Summary Judgment.

As explained below, this is a facile argument. A basic element for applying res judicata is that there has to be a final judgment on the merits. Yet, for purposes of applying res judicata in this case, **there was no final judgment on the merits as applies to plaintiff Ana Webb**. The Estate of Sabino Webb, in essence, had no standing to make out a UTPCPL claim against Volvo. It does not follow that if one party bringing a claim is found to not have standing, that therefore the correct party, who does have standing, can be precluded from litigating their rights by the other court case. In other words, a judgment on the basis that the plaintiff in a separate case did not purchase a product, or rely on the deceptive advertising, cannot then be used to preclude the correct party.

*****

## IV.  LAW AND APPLICATION

### A.   Res Judicata Has No Applicability Whatsoever to the Instant Dispute because the UTPCPL Claim was Not Decided on the Merits

#### i.   Legal Standard – The Dismissal of a Prior Action Because of a Lack of Standing Does Not Create a Res Judicata Bar

For res judicata to apply, the ruling the moving party seeks to use must be a final judgment *on the merits*. Costello v. United States, 365 U.S. 265, 5 L. Ed. 2d 551, 81 S. Ct. 534 (1961). However, not all final judgments are judgments on the merits than can be used for purposes of res judicata. The United States Supreme Court notes that the resolution of a case based upon a "precondition requisite" fails to erect a res judicata bar because it is not on the merits. Costello, 365 U.S. 265, 5 L. Ed. 2d 551, 81 S. Ct. 534 (1961); see also Haefner v. Lancaster, 566 F. Supp. 708, 710 (E.D. Pa. 1983). The Costello court explained:

> [i]f the first suit was dismissed for a defect of pleadings, or parties, or a misconception of the form of the proceeding, or the want of jurisdiction, or was disposed of on any ground that did not go to the merits of the action, the judgment rendered will prove no bar to another suit.

Costello, 365 U.S. at 286, 81 S.Ct. at 545 (quoting Hughes v. United States, 4 Wall 232, 237, 71 U.S. 232, 237, 18 L.Ed. 303 (1866)). "The Supreme Court has expressly delineated a distinction between the issue of standing and the merits of a particular lawsuit." McCarney v. Ford Motor Co., 657 F.2d 230, 233-34 (8th Cir. 1981) (citing Warth v. Seldin, 422 U.S. 490, 498, 500, 95 S.Ct. 2197, 2204, 2206, 45 L.Ed.2d 343 (1975) ("(S)tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal")).

"Therefore, when a complaint fails to meet a 'condition for filing suit' its dismissal does not operate as an adjudication on the merits." Haefner, 566 F. Supp. at 710 (quoting Truvillion v. King's Daughters Hospital, 614 F.2d 520, 524 (5th Cir. 1980)). Other Courts of Appeal have also addressed whether an adjudication of lack of standing applies for purposes of res judicata, and have found that a ruling on precondition elements necessary to bringing a suit are not a final judgments on the merits. McCarney v. Ford Motor Co., 657 F.2d 230, 233-34 (8th Cir. 1981) (finding that a dismissal for based on lack of standing does not apply for res judicata); Johnson v. Boyd Richardson

Co., 650 F.2d 147, 148-49 (8th Cir. 1981) (finding that failure to include a proper party does not bar later lawsuits).

The cause of action in question in this case is a claim for deceptive advertising under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). The UTPCPL explicitly provides that for a private person to have standing to bring a private cause of action they must have (1) purchased the product in question, (2) and relied on the deceptive conduct alleged. See 73 P.S. § 201-9.2. These two basic standing requirements are well-recognized in the Third Circuit. Hunt v. United States Tobacco Co., 538 F.3d 217, 221 (3d Cir. Pa. 2008).

> ii.    Application – The Party In State Court Did Not Have Standing to Bring the UTPCPL Claim. That the Incorrect Party Brought the Lawsuit in State Court Does Not Bar the Correct Party from Doing So in this Federal Class Action

The compulsory nonsuit of the UTPCPL claim in the state court, although a final judgment, **was not decided on the merits for the purposes of this case**. See Warth, 422 U.S. at 498, 500. This is illustrated by looking at the elements required for a plaintiff to have standing to bring a UTPCPL claim:

> (1)    The plaintiff must be the purchaser of the product

> (2)    There must be justifiable reliance by the plaintiff on an advertisement of Defendants.

See 73 P.S. § 201-9.2. Clearly, the plaintiff in the state court case, an infant, could not establish either element of standing necessary to bring the state court UTPCPL action. In fact, this was Volvo's explicit argument to the Court at the start of trial:

> We first contend . . . **a child has no standing** under the Unfair Trade Practices act when the parents engage in the transaction for the product. The statute requires only a purchaser to have a cause of right, and there had to have been reliance upon the alleged false advertising.

Exhibit 2 – State Trial Transcript Excerpts, 11/4/2013 AM, p.7. In Volvo's Motion for Compulsory Nonsuit, *which was granted*, it again made the argument that the plaintiff in the state case did not have standing to bring the claim in question:

45.     In order to have standing to bring private cause of action under the UTPCPL, an individual must have (1) actually made the purchase or lease of the goods or services and (2) relied upon an unfair or deceptive practice about said goods or services in making that purchase. 73 PA, STAT, § 201-9.2; see also Laner v. MoKean Cop, 2 Pa. D, & C. 4th 394, 397-98 (CCP Allegheny Co. June 12, 1989)(citing Mason v. National Central Bank, 19 Pa. D. & C. 3d 229, 232 (1980)).

. . . .

47.     Ana Webb testified that she was the sole purchaser and owner of the Volvo 850, and that her husband Mark Webb and 2 month old child Sabino Webb, did not own or purchase the Volvo 850. See Exhibit "A," pp. 64 - 65 (Ana Webb agrees she bought the Volvo 850), and pp. 66 - 67 (Ana Webb agrees she is the title purchaser and only title owner and purchaser of the Volvo 850). See also Exhibit D-84 and Record Admissions submitted by Volvo, attached as Exhibit "F."

48.     Therefore, because Sabino Webb did not purchase the subject 1997 Volvo 850 at issue, **neither he nor his Estate have <u>standing</u> to bring this cause of action**. <u>See</u> <u>Bracciale v. Nationwide Mut. Fire Ins. Co.</u>, 1994 U.S. Dist. LEXIS 198, Civil No. 92-7190 (E.D. Pa. Jan. 12, 1994) (holding that a child has no standing under the UTPCPL when his parents engage in a transaction for a product to the benefit of the child, because the child did not engage in any transaction himself. . . .).

Exhibit 3 – Volvo Motion for Compulsory Nonsuit, at p.11–12 (emphases added).

However, at trial in the state case, **there was evidence of false advertising in the record to establish that Volvo had deceptively marketed the Volvo 850**, namely the glove box insert inside the subject Volvo 850 which illustrated a Volvo with the SIPS safety system having four door bars.[2] See Exhibit 1. Volvo's own corporate designee admitted that such advertising was "confusing." Exhibit 2 – State Court Trial Transcripts, 11/12/13 PM, at p.65–66. Yet, despite the presence of a jury question concerning whether Volvo's advertising was deceptive, the trial court nevertheless granted Volvo's motion for compulsory nonsuit of the UTPCPL claim. Looking at the elements required to show standing to bring UTPCPL claim, it is easy to see why the Court granted a nonsuit: as Volvo argued, the infant Sabino Webb was obviously (1) not the purchaser of the Volvo 850, and (2) nor could he have relied on the advertisements of Defendants. It is therefore

_____

[2] The insert was labeled "Volvo 900 Series," but was nevertheless placed in the 850.

clear from Volvo's arguments that the decision to nonsuit the state court UTPCPL claims was not on the merits, and instead was because the Estate of Sabino Webb lacked standing to bring the claim.

Given that the state court's nonsuit was based on the Estate's lack of standing and not the merits of the claim, given that it is undisputed that plaintiff Ana Webb bought the Volvo 850, and given that Ms. Webb alleges that she relied upon Volvo's false advertising, res judicata does not preclude this lawsuit. In other words, **that the wrong party brought the deceptive advertising claim in state court in no way precludes the right party, Ana Webb, from litigating her grievances. An adjudication that one individual did not rely on a deceptive advertisement cannot then be used to bar a different individual who did rely on the advertisement.** For the purposes of res judicata in this case, the prior judgment is simply not a judgment on the merits which can bar Ana Webb's claims.

### B.  Even if Res Judicata Could Apply There is No Privity between Plaintiff Ana Webb and the State Court Plaintiff

Res judicata and collateral estoppel, also known as claim and issue preclusion, should not be invoked in this case because the lawsuits have different plaintiffs not in privity with each other. Both res judicata and collateral estoppel require the plaintiff against whom preclusion is asserted be the same plaintiff as in the prior action, or be in privity with the prior plaintiff. This is not the case here.

The plaintiff in the state case was the Estate of Sabino Webb, with Mark Webb as the administrator of the estate. The state lawsuit was deliberately filed with the Estate as the plaintiff— without claims by Mark and Ana Webb, individually or as husband and wife—to avoid the appearance the Webbs' were trying to profit from their son's death. The plaintiff in the current case is Ana Webb.[3] **That Ana Webb is the mother of Sabino Webb is by fact and law not enough to establish privity in Pennsylvania.**

---

[3] The Second Amended complaint was filed with only Ana Webb as plaintiff. Mark Webb, her husband, was removed.

For res judicata to apply, also known as claim preclusion, Pennsylvania[4] requires that the lawsuit sought to be barred and the prior final judgment satisfy each of four elements:

(1)     Identity of the things sued upon;
(2)     Identity of the cause of action;
(3)     Identity of parties [or their privies] to the action; [**and**]
(4)     Identity of the quality or capacity of the parties;

Kean v. Forman, 752 A.2d 906, 909 (Pa. Super. 2000); Stevens Painton Corp. v. First State Insurance Co., 746 A.2d 649, 654 (Pa. Super. 2000); see also Bearoff v. Bearoff Bros., Inc., 458 Pa. 494, 327 A.2d 72, 74 (Pa. 1974).

The doctrine of collateral estoppel, also known as issue preclusion, is closely related to res judicata and applies where each of the following four prongs are met:

(1)     issue decided in prior action is identical to one presented in later action;[5]
(2)     prior action resulted in final judgment on merit;
(3)     party against whom collateral estoppel is asserted was party to prior action or is in privity with party to prior action; ***and***
(4)     party against whom collateral estoppel is asserted had full and fair opportunity to litigate issue in prior action.

Myers v. Kim, 55 Pa. D. & C.4th 93, 98 (March 16, 2001) (emphasis added) (citing Rue v. KMart Corp., 552 Pa. 13, 17, 713 A.2d 82, 84 (1998); Shaffer v. Smith, 543 Pa. 526, 673 A.2d 872 (1996); Balent v. City of Wilkes-Barre, 542 Pa. 555, 669 A.2d 309, 313 (Pa. 1995)).

---

[4] When a federal court is deciding if a state court decision is res judicata, or collateral estoppel exists, the state's rules apply. Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523 (1986); see also Lance v. Dennis, 546 U.S. 459, 126 S. Ct. 1198, 1202, 163 L. Ed. 2d 1059 (2006); Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292 (2005). Thus, Pennsylvania's res judicata rules apply to this dispute.

[5] To the extent Volvo has made the argument that Ana Webb could have brought the action in the state case, such a proposition is plainly false. Ana Webb was a joined defendant in that case for purposes of negligence. Notably, Ana Webb could not have brought a national class action suit in the state court action. Furthermore, she did not sit on her rights and filed this federal class action suit well before the state court case was resolved. Otherwise stated, Ms. Webb is not looking for two bites at the apple. She is simply asserting her rights as she is permitted by law.

Neither res judicata nor collateral estoppel can be applied against a plaintiff unless the plaintiffs in each case are the **same plaintiff** or are in **privity** with each other. Id.[6] This is not the case here.

The Third Circuit Court of Appeals recognizes the lack of Pennsylvania state cases addressing when a plaintiff may be found in privity with a prior litigant. Instead, it applies precedent from the Supreme Court of the United States in predicting how the Pennsylvania Supreme Court would rule on privity in res judicata and collateral estoppel questions. Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 312-313 n.17 (3d Cir. 2009) (applying Taylor v. Sturgell, 553 U.S. 880, 901 (2008)) (noting that although Taylor "concerned federal preclusion law, it is nonetheless highly persuasive here, given the close similarity between Pennsylvania law and federal common law on this topic"). Thus, the Nationwide decision is **binding precedent** in the Eastern District of Pennsylvania for the purposes of deciding res judicata and collateral estoppel.

It is instructive to note that Volvo pays only cursory lip service to Nationwide, and almost totally ignores the case in its legal brief. That is because Nationwide completely debunks the idea that Ana Webb is barred by res judicata from bringing this lawsuit.

**First**, Nationwide explicitly rejects the adoption of "virtual representation" as a way of establishing privity, which is the concept implicitly being advanced by Volvo. Id. at 311–312. Virtual representation is the idea that merely because "the relationship between a party and a non-party is 'close enough'" the nonparty can be barred from further litigation of the issue. Id. at 312 (quoting Taylor, 553 U.S. at 898). In other words, there needs to be an actual "prior legal or representative relationship between a party to the prior action and the nonparty against whom estoppel is asserted." Id.

**Second,** Nationwide notes that there are six discrete, narrow exceptions governing when a nonparty to a prior action can be found to be in privity with the prior plaintiff:

    1)    the nonparty agrees to be bound by the determination of issues in an action between others;

---

[6] For res judicata and collateral estoppel in Pennsylvania to apply, the party against whom preclusion is asserted must be a party, or in privity to a party, to the prior adjudication. Wikowski v. Welch, 173 F.3d 192 (3d Cir. 1999).

2)      a substantive legal relationship—i.e. traditional privity—exists that binds the nonparty;

3)      the nonparty was "adequately represented by someone with the same interests who was a party";

4)      the nonparty assumes control over the litigation in which the judgment is rendered;

5)      the nonparty attempts to bring suit as the designated representative of someone who was a party in the prior litigation; and,

6)      the nonparty falls under a special statutory scheme that "expressly forecloses successive litigation by nonlitigants.

Id. at 312–13 (alterations omitted). The first, fourth, fifth, and sixth exceptions have no applicability to this case and Ana Webb.[7]

The only conceivable way, according to Nationwide, Ana Webb can be held to be in privity with the Estate of Sabino Webb is under the second and third exceptions: if Ana Webb has a substantive legal relationship with the Estate, or she was "adequately represented" by the prior plaintiff. Id. Neither exception applies to this case.

Again, it must be noted that Volvo sedulously ignores Nationwide in its analysis. Given that Nationwide explains and delineates when privity can be found to exist, Volvo's failure to explain how one of the above exceptions applies to the instant case is fatal to its attempts to establish privity.

i.      **No Substantive Legal Relationship Exists between Ana Webb and the Estate of Sabino Webb**

"Nonparty preclusion may be justified based on a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment." Id. (quotation marks omitted) (alteration omitted). Relationships that establish a substantive legal relationship include

---

[7] With respect to the fourth factor, Ana retained no control over the state case. The only involvement she had in that case was that of a defendant. See Exhibit A, p.19:23–20:15. That her husband controlled the state case is irrelevant as a husband is not in privity with his wife. See Wood v. Borough of Lawnside, 2009 U.S. Dist. LEXIS 89909, *16–17 (D.N.J. Sept. 28, 2009). Furthermore, there is no legal support for the idea of "two degrees of privity," where a nonparty (Mark Webb) in privity with a prior party (Estate), can then have his privity imputed to his wife, also a nonparty. This "close enough" conception of privity, virtual representation, was explicitly abolished by the Third Circuit in Nationwide, 571 F.3d 299 at 313.

"preceding and succeeding owners of property, bailee and bailor, and assignee and assignor."[8] Id. In applying Nationwide and Taylor, a New Jersey district court confirms that familial connections—such as a marriage *contract*—are not enough to bind a nonparty. See Wood v. Borough of Lawnside, 2009 U.S. Dist. LEXIS 89909, *16–17 (D.N.J. Sept. 28, 2009).

In Wood, a husband and wife were told by their town to take down a political sign. Id. at 2–4. The wife sued for free speech violations and won. Id. The husband then sued for free speech violations and the defendants raised res judicata as a defense. Id. The district court held the husband's claim was not barred because he was not in privity with his wife merely because they were married. Id. The Wood decision therefore stands for the proposition that the fact an individual is related to a prior plaintiff does not deprive her of the ability to assert her legal rights. This holding comports with the Nationwide court's abolishment of virtual representation, the theory that a party can be found to be in privity if their relationship is "close enough." Nationwide, 571 F.3d at 312.

Applying the commonsense holding of Wood to this case leads to the conclusion that Ana Webb is not in privity with the Estate of Sabino Webb. **First,** she is a beneficiary of the Estate solely because she was Sabino Webb's mother; that is, her only relation to the previous plaintiff is familial in nature. That her only connection to the Estate is familial in nature is made clear in Mark Webb's deposition in the state court case, when Volvo's attorney asks him "do you agree that your wife signed a renunciation in representing the Estate?" and "do you understand as the Legal Representative of the Estate, that Ana Soares Webb renounced her ability and rights to prosecute this lawsuit on behalf of your son?" Exhibit 4 – Deposition of Mark Webb, at p.19:23–20:15. Given that Ana Webb's only connection to the Estate is blood, there is no substantial legal relationship that gives rise to privity.

Furthermore, looking at the examples of substantive legal relationships provided by Taylor, and lower courts like Perelman, such relationships require deliberate, legally cognizable actions to establish privity with a prior litigant.[9] Ana Webb became a beneficiary not through any deliberate

---

[8] An employment contract has also been held to establish a substantive legal relationship. Perelman v. Adams, 2013 U.S. Dist. LEXIS 72118 (E.D. Pa. May 21, 2013).

[9] For instance, bailee and bailor, assignee and assignor, employee and employer are all require deliberate action.

attempt to form a legal relationship, but only because she is Sabino's mother. It would be a perversion of justice if Ana Webb's claims were barred by preclusion because mothers traditionally inherit from their dead sons.

Thus, the Estate of Sabino Webb has no substantive legal relationship with Ana Webb for the purposes of res judicata and collateral estoppel.

### ii.     The Estate of Sabino Webb Did Not "Adequately Represent" the Interests of Ana Webb

Nationwide states that "[u]nder the adequate representation exception, the interests of the party and nonparty must be squarely aligned and ***there must be either an understanding that the party is acting in a representative capacity*** or special procedural protections must have been in place in the original action to ensure the due process rights of nonparties who might face issue or claim preclusion." Nationwide, 571 F.3d 299 at 313 (citing Taylor, 553 U.S. at 901) (quotation marks omitted) (emphasis added). This exception is "carefully circumscribed." Id. There cannot only be "some kind of relationship" between the prior litigant and the plaintiff against whom preclusion is asserted, instead an identifiable understanding that the prior litigant was representing the current plaintiff's interests is needed. Taylor, 553 U.S. at 901.

There was no understanding that the Estate of Sabino Webb was representing Ana Webb in any respect in the state court action, something Defendants explicitly noted. See Exhibit 4, p.19:23–20:15. In fact, she was a defendant in the overall state court case and deliberately chose not to file any claims in that action. Further evidence there was no understanding the Estate was representing Ana Webb's interests is that Ana Webb filed this action in federal court, asserting her own rights separate from the Estate. At no point did she contemplate or agree that the Estate was acting in a representative capacity for her.[10]

Because there was no understanding Ana Webb was being represented by the Estate of Sabino Webb, Ana Webb cannot be held to be in privity with the Estate for the purposes of res judicata and collateral estoppel.

Given that Defendants almost completely avoided Nationwide, Plaintiff challenges Defendants to identify what exception in Nationwide they believe establishes privity between

---

[10] Nor were there any special procedural protections implemented to protect her rights in the state action.

Ana Webb and the Estate of Sabino Webb. Unless and until they do so, their arguments that res judicata applies should not be seriously considered.

### C.    The Jury's Verdict on Whether the Volvo 850 is Defective Does not Affect Whether Plaintiffs' UTPCPL Claim is Valid

Volvo argues that the jury's determination the Volvo 850 is not defective defeats Plaintiffs' UTPCPL claim, and other claims, in this case by way of collateral estoppel. This is false. The UTPCPL only states that to prove a claim one must show, *inter alia*, that the defendant was "advertising goods or services with intent not to sell them as advertised." 73 P.S. § 201-2(4)(ix). Even if the Volvo 850 is not defective, it is still illegal for Volvo to falsely advertise the Volvo 850 with rear door bars. The same logic applies to Plaintiff's other causes of action.

However, although the jury's determination the Volvo 850 is not defective does not bar the instant proceeding, it will likely have an impact on damages. For that reason, Plaintiffs are concurrently filing a motion to stay this case until the appeal in the state court has concluded. It simply does not make sense in terms of efficiency or judicial economy to litigate a large portion of this case if the state case may be retried. If and when the Volvo 850 is found defective by a jury, that will significantly affect the instant action.[11]

## V.    The Appeal in the State Case is Highly Likely to Succeed Because of Several Basic Errors Made by the Trial Court

It may help this Court to know the issues on the state case appeal, so that the Court can make an informed decision about res judicata and the stay. In short, there were serious legal and factual errors made by the state court which make it highly likely that the case will be retried.

**First,** in Pennsylvania, evidence of compliance with government standards is irrelevant to strict liability product defect actions. <u>Gaudio v. Ford Motor Co.</u>, 2009 PA Super 102, 976 A.2d 524, 547 (Pa. Super. 2009); <u>see also</u> <u>Lewis v. Coffing Hoist Div., Duff-Norton Co.</u>, 515 Pa. 334, 342-44, 528 A.2d 590, 593–94 (1987). Despite this clear case law, the Court chose to instruct the jury that evidence of compliance with government standards ***was*** relevant to the strict liability

---

[11]  If the Court does find that collateral estoppel bars any of the causes of action in this case, then a stay is even more important as the plaintiff in the state court action believes he will be successful in obtaining a new trial on whether the Volvo 850 is defective.

products claims they were deciding, over the plaintiff's objection. <u>See</u> Exhibit 5 - Appellant's Brief at p.18.

Defense counsel for Volvo then spent a third of his closing claiming over and over that the Volvo 850 passed Federal Motor Vehicle Safety Standard ("FMVSS") 214, which tests rear door strength. <u>Id.</u> at p.22. Defense counsel even told the jury that FMVSS 214 tells car companies how to build safe cars, a thoroughly inadmissible argument. <u>Id.</u> In summation, the jury was explicitly told to consider completely irrelevant, highly prejudicial evidence when coming to its conclusion. As such, the trial court clearly made a reversible legal error, which was then exploited and magnified by Volvo's counsel. The plaintiff in that case fully expects the Superior Court to overturn the jury's verdict on this basis.

**Second,** even if the jury could properly consider evidence of compliance with government standards in strict liability actions, the trial court improperly precluded the plaintiff's expert's testimony and testing **showing that the Volvo 850 catastrophically fails FMVSS 214**. <u>Id.</u> at p.23. The trial court *sua sponte* precluded the testing because it erroneously assumed that only the government could test federal standards, not the plaintiff's expert. In fact, the trial court's assumption was completely wrong: independent labs and car companies conduct the FMVSS testing, the federal government does not. Thus, the hugely important rebuttal testing done by the plaintiff, which costs hundreds of thousands of dollars, was precluded based on a baffling misunderstanding by the trial court. Apparently, the trial court literally expected the plaintiff to petition the federal government to do the testing for the case. For this reason as well the plaintiff expects the Superior Court will order a new trial given the magnitude of the errors made.

**Third,** there are several other bases on which the trial court made serious, reversible errors which the plaintiff in the state court action expects to be successful, including not allowing the plaintiff in that action to impeach Volvo's corporate designee with Volvo's own advertising materials. <u>Id.</u> at p.37. Volvo claimed that they removed door bars from the Volvo 850 because they determined that door bars were dangerous to the car's passengers. Yet, Volvo's own advertisements at the time showed that Volvo models contemporaneous with the 850 used door bars. This was fertile ground for impeachment. The plaintiff in the state court action, however, was told that he was not permitted to use Volvo's own advertising to impeach Volvo's corporate designee because the advertisements could not be authenticated. But the Court's ruling put the

cart before the horse, because obviously Volvo's corporate designee could have authenticated the advertisements.

The importance of the appeal, and of this instant case, cannot be understated. Volvo is selling a vehicle, the Volvo 850, which lacks a basic safety feature. It cannot pass the government standard and it has no business being on the road. Many families and their children are at risk because of Volvo's business practices and the defects in the state trial; Plaintiff is zealously trying to make sure that the shortcomings of the Volvo 850 are brought to light so that more families do not have to suffer the tragedy that befell the Webbs.

## V.   CONCLUSION

Plaintiff requests that Defendants' Motion for Summary Judgment be denied for the foregoing reasons.

*****

*Respectfully submitted,*
FRANCIS ALEXANDER, LLC
*/s/ Francis Malofiy*
Francis Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiffs*
*/d/ February 18, 2015*

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing Plaintiff's Answer In Opposition to Defendants' Motion for Summary Judgment filed via the ECF Filing System and served upon all counsel of record:

Richard B. Wickersham, Jr., Esquire
Post & Schell, P.C.
Four Penn Center
1600 JFK BLVD. | 13th Floor
Philadelphia, PA 19103
T: (215) 587-6612
F: (215) 320-4875
E:  rwickersham@postschell.com


Peter W. Herzog, III, Esquire
Bryan Cave LLP
211 N. Broadway, Suite 3600
St. Louis, MO 63102
T: (314) 259-2000
F: (314) 259-2020
E: pwherzog@bryancave.com

*****

*Respectfully submitted,*
Francis Alexander, LLC
*/s/ Francis Malofiy*
Francis Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiffs*
*/d/ February 18, 2015*