**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANA WEBB, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>VOLVO CARS OF N.A., LLC,<br>VOLVO CAR CORPORATION, and<br>VOLVO CARS OF N.A., INC.,<br><br>    Defendants. | CIVIL ACTION<br><br>NO. 13-2394 |

## MEMORANDUM RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Baylson, J.                                                                                    March 26, 2018

### I.  Introduction

This putative class action asserts violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count I), unjust enrichment (Count II), breach of express warranty and implied warranty of merchantability (Counts III and IV), and negligent misrepresentation and fraud (Counts V and VI) against Volvo Car Corporation ("VCC") and two of its subsidiaries, Volvo Cars of North America, Inc. ("VCNA") and Volvo Car UK Limited ("VCUK," and together with VCC and VCNA, "Volvo").

Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint.  For reasons stated below, the Motion to Dismiss is GRANTED with prejudice.

## II. Procedural Background

Plaintiff's claims are based on Defendants' alleged failure to install a Side Impact Protection System ("SIPS") equipped with steel "door bars" in the rear passenger-side doors of Volvo 850 vehicles. The named plaintiff, Ana Webb, alleges that, on May 1, 2009, she purchased one of these (used) vehicles based on advertising that touted Volvo as a leader in automobile safety and that claimed Volvo vehicles contained SIPS on all passenger doors.

The case began with the filing of a class action complaint on May 1, 2013. After VCNA filed a Motion for More Definite Statement (ECF 4), Plaintiffs filed an amended complaint on September 16, 2013 (ECF 12). Then, on October 3, 2013, VCUK filed a Motion to Dismiss for Lack of Jurisdiction (ECF 18), and VCC and VCNA filed a joint Motion for More Definite Statement (ECF 20), which the parties fully briefed. On December 6, 2013, the Court held a hearing with all parties, during which the Court granted leave to Plaintiffs to submit a Second Amended Complaint, which they filed on December 19, 2013. (ECF 49) Also during the December 6, 2013 hearing, Plaintiffs' counsel requested limited discovery in the form of a corporate designee deposition of VCUK. (Id.) The Court granted this request, but Plaintiffs' counsel never took the requested deposition. Thus, VCUK's Motion to Dismiss for Lack of Jurisdiction was later granted, with the case proceeding only against VCC and VCNA (hereinafter, "Volvo"). (ECF 90)

On December 30, 2013, Defendants filed a Motion to Stay (ECF 56), in light of a very similar case pending between the parties in the Philadelphia Court of Common Pleas. Defendants also moved for an extension of time to respond to Plaintiffs' Second Amended Complaint. (ECF 57) The Court entered a stay in the case on January 31, 2014 (ECF 63). One year later, the stay expired by its own terms. After the parties engaged in additional motion

practice, on June 23, 2015, the Court entered another stay, as the parallel case in Philadelphia Court of Common Pleas had gone to trial but was then pending on appeal. (ECF 92) On June 24, 2016, the Pennsylvania Superior Court vacated part of the Court of Common Pleas' judgment, on the grounds that, having dismissed all negligence claims from the case, the Court should not have instructed the jury that federal vehicle safety standards were relevant to the question of strict product liability. Webb v. Volvo Cars of North America, LLC, 148 A.3d 473 (Pa. Super. Ct. June 24, 2016). As a result, the Superior Court remanded the case to the Philadelphia Court of Common Pleas for a retrial limited only to the strict liability claims. Volvo then filed a request for allocatur to the Pennsylvania Supreme Court.

This Court entered an Order on July 19, 2016, maintaining the federal case in "suspense status" pending the outcome of the related state case. Then, on May 4, 2017, the Pennsylvania Supreme Court denied allocatur. Following that decision, Volvo filed in this Court a motion to lift the stay in this federal case (ECF 97), as well as a Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF 98), and a Motion for Partial Summary Judgment on Court I of Plaintiffs' Second Amended Complaint. (ECF 101)

In summary, more than four years since this case was first filed in this Court,[1] the parties' parallel state case remains where it began, before the Philadelphia Court of Common Pleas— although its breadth has been limited substantially. Similarly, the present federal case has not moved past the Rule 12 phase.

---

[1] Although not relevant to the pending motions, some of the delay is attributable to a change in Plaintiffs' counsel because of disciplinary proceedings against Plaintiffs' original counsel.

There being no further grounds for delay, it is now an appropriate time to resolve Defendants' Rule 12(b)(6) Motion to Dismiss.[2]  The parties have fully briefed the Motion (ECF 98, 111, 115), and the Court held oral argument on March 19, 2018.

### III.    Factual Background[3]

On May 1, 2009, Plaintiff Ana Webb purchased a used 1997 Volvo 850.  (SAC ¶ 30) During the period that the Volvo 850 was manufactured, sold, marketed, and advertised by Volvo, steel anti-intrusion door bars were an industry-standard safety feature in passenger vehicles in the U.S.  (Id. ¶ 32)  Moreover, Volvo expressly and implicitly advertised and marketed solid-steel anti-intrusion bar doors as a safety feature of the Volvo 850 "in advertising, marketing, promotions, sales materials, owner's manual materials, safety materials, express and implied warranties, and press statements and releases."  (Id. ¶ 37)[4]  Consistent with this, Volvo's marketing and advertising messages are frequently focused on safety.  (See, e.g., id. ¶¶ 40–45) Thus, Plaintiff Webb bought her Volvo 850 under the belief that it was safe and that it included solid steel anti-intrusion door bars on all four doors.  (Id. ¶ 2–3)  However, the Volvo 850 did not contain door bars in its rear passenger doors.  (Id. ¶ 4)  As a result, Plaintiff Webb filed this class action lawsuit on behalf of herself and a nationwide class of current owners and lessees of the Volvo 850 for the model years 1992-1997, alleging consumer protection violations, express and

---

[2] In light of the fact that this Court is granting Defendants' Rule 12 Motion to Dismiss, there is no need to reach the question of *res judicata* raised in their Motion for Partial Summary Judgment.  (ECF 101) However, the Court notes that, at first glance, *res judicata* appears appropriate, based on the compulsory nonsuit of Plaintiffs' UTPCPL claim in the Philadelphia Court of Common Pleas.

[3] All facts are drawn from the SAC, and, for purposes of this motion, the Court accepts as true the facts contained therein.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[4] Although the Court, as it must, accepts this allegation as true, it also notes that Plaintiffs fail to allege a single example of such advertising or marketing.

implied warranty violations, fraudulent and negligent misrepresentations, and unjust enrichment.

(Id. ¶¶ 1, 59–99)

## IV.    The Parties' Contentions

### A.  The Second Amended Complaint

Specifically, Plaintiffs allege six causes of action:

| | |
|---|---|
| Count I: | Volvo violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") by: (1) falsely representing that its 1992-1997 Volvo 850 vehicles had a Side Impact Protection System and anti-intrusion door bars, and, (2) by failing to comply with the terms of a written warranty. |
| Count II: | Through its material misrepresentations regarding known design defects in its Volvo 850 vehicles, Volvo was unjustly enriched by Plaintiffs. |
| Count III: | Volvo violated its express warranty that its Volvo 850 vehicles were of good quality, free of defects, and were safe. |
| Count IV: | Volvo violated its implied warranty that its Volvo 850 vehicles were of marketable quality. |
| Count V: | Volvo negligently provided false information to Plaintiffs that Volvo 850 vehicles had steel anti-intrusion door bars in their rear passenger doors. |
| Count VI: | Volvo made material false misrepresentations that its Volvo 850 vehicles had door bars in their rear passenger doors and were safer than other vehicles in the event of a side-impact collision. |

### B.  The Motion to Dismiss

In their Motion to Dismiss, Defendants contend that Counts I (UTPCPL), V (Negligent Misrepresentation), and VI (Fraud) should be dismissed because they lack allegations of justifiable reliance on any statement or advertising by Volvo.

Moreover, Defendants contend that Count II (Unjust Enrichment) should be dismissed because Plaintiffs have not adequately alleged a benefit conferred on Defendants by Plaintiffs,

5

knowledge or appreciation of those benefits by Defendants, or inequitable acceptance and retention of such benefits.

Defendants also contend that Count III (Express Warranty) should be dismissed. To the extent that the claim **is** based on Volvo's 1997 New Car Limited Warranty ("Volvo Limited Warranty"), the warranty included a time and mileage limitation that expired long before Plaintiff Webb purchased her vehicle. To the extent that the claim is **not** based on the Volvo Limited Warranty, Defendants assert, Plaintiffs have not adequately alleged reliance on a specific misleading advertisement or other representation.

Additionally, Defendants contend that, to the extent Plaintiffs rely on a breach of express warranty for their UTPCPL claim (Count I), that should also be dismissed for the same reasons that Count III, mentioned immediately above, should be dismissed.

Lastly, Defendants urge the Court to dismiss Plaintiffs' Implied Warranty claim (Count IV) because the Volvo Limited Warranty confined any implied warranties to four years from the time of sale to the original retail purchaser, which expired long before Plaintiff purchased the used vehicle and the four-year statute of limitations expired.

### C. Plaintiffs' Response in Opposition to the Motion to Dismiss

In response to Defendants' Motion to Dismiss, Plaintiffs assert that they adequately pled justifiable reliance and thus provided sufficient notice to Defendants as to Counts I (UTPCPL), V (Negligent Misrepresentation), and VI (Fraud).

Plaintiffs similarly disagree that their Unjust Enrichment (Count II) claim is inadequately pled, because they alleged that Plaintiffs conferred both direct and indirect benefits on Defendants, Defendants knew that they obtained those benefits, and Defendants acted inequitably in accepting and retaining such benefits.

6

With respect to their Implied Warranty (Count IV) claim, as well as their Express Warranty (Count III) claim—and the derivative UTPCPL claim—Plaintiffs assert that they adequately highlight the specific written warranties in Volvo's advertising and safety materials that Volvo violated. They also assert that any disclaimer by Volvo was ineffective because it did not state that it applied to design defects and was not conspicuously featured in the relevant materials. Plus, they contend, the four year statute of limitations does not apply because the doctrine of equitable estoppel bars Volvo from lulling Plaintiffs into a sense of false security during the limitations period to prevent timely accountability.

Lastly, Plaintiffs move under Fed. R. Civ. P. 15(a)(2) to file a fourth complaint, should the Court find that their third complaint is inadequate.

### D. Defendants' Reply in Support of the Motion to Dismiss

Defendants' Reply echoes their assertion that the SAC does not allege any specific document or advertisement that Plaintiff Webb saw and relied upon. Thus, they contend, the UTPCPL, Negligent Misrepresentation, and Fraud claims should be dismissed.

Defendants also assert that, with respect to the Unjust Enrichment claim, they do not dispute that an indirect benefit can be sufficient as a matter of law to establish an unjust enrichment claim. However, they reiterate that Plaintiff Webb does not identify any legally cognizable benefit, direct or indirect, from her purchase of the Volvo 850. They also contend that Plaintiffs do not allege any knowledge or appreciation of such a benefit by Volvo. Defendants' final argument regarding Unjust Enrichment is that the claim rests on the same conduct as the underlying tort claims, and the underlying tort claims should be dismissed.

As to the Breach of Express Warranty claim, Defendants characterize Plaintiffs' Response as clarifying that Plaintiffs are "not predicating [their] express warranty claim on the

Limited Warranty," but rather "that an express warranty was created by some unidentified advertisement." (ECF 115, at 7) For the same reason, Defendants urge the Court to dismiss the UTPCPL claim that is based on a breach of express warranty claim.

The Breach of Implied Warranty claim, according to Defendants' Reply, should also be dismissed because it was limited to a four year duration. The fact that the Limited (express) Warranty does not mention design defects, they contend, does not affect whether the implied warranty's duration-limiting language is effective. As to Plaintiffs' assertion that the disclaimer is not conspicuous, Defendants disagree because the disclaimer was in italics and in bold font.

Lastly, Defendants assert that the Implied Warranty claim is barred by a four year statute of limitations, which cannot be equitably estopped because, (1) the SAC does not contain any allegations of equitable estoppel and, (2) Volvo could not have prevented Plaintiff Webb's discovery of her claim because she did not allege that she owned a Volvo 850 during the four year limitations period.

Defendants ask the Court to deny Plaintiffs' request to amend the complaint and file a fourth complaint, because Plaintiff Webb has not shown how she would cure any of the defects in the SAC.

## V.    Legal Standard

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." <u>DeBenedictis v. Merrill Lynch & Co.</u>, 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks removed). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a

right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.

Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).

In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal Rule of Civil Procedure 9(b) adds an additional pleading requirement to certain claims: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened pleading standard applies to Plaintiff's fraudulent misrepresentation, negligent misrepresentation, and UTPCPL claims. See Travelers Indem. Co. v. Cephalon, Inc., 620 F. App'x 82, 85 n.3 (3d Cir. 2015) (nonprecedential) (explaining that where a plaintiff's negligent misrepresentation claim "alleg[es] fraudulent activity," it too "must be pled with sufficient particularity under Rule

9(b)"); <u>Petruska v. Gannon Univ.</u>, 462 F.3d 294, 310 (3d Cir. 2006) (explaining that a state law fraudulent misrepresentation claim must be pled with particularity under Rule 9(b)).[5]

To satisfy Rule 9(b)'s pleading requirements, a plaintiff must "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." <u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir. 2007). "The purpose of Rule 9(b) is to provide a defendant with notice of the precise misconduct with which he or she is charged and to prevent false or unsubstantiated charges." <u>Schmidt v. Ford Motor Co.</u>, 972 F. Supp. 2d 712, 720 (E.D. Pa. 2013) (quoting <u>Cooper v. Broadspire Servs., Inc.</u>, No. 04-5289, 2005 WL 1712390, at *5 (E.D. Pa. July 20, 2005)); <u>see also</u> <u>Travelers</u>, 620 F. App'x at 85–86 (explaining that Rule 9(b)'s particularity is required "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior").

## VI. Analysis

### A. Fraudulent Misrepresentation/Inducement – Count VI

Plaintiffs label Count VI of their SAC as "Fraud," although it is clear from the allegations of that Count that it could more specifically be labeled as "Fraudulent Misrepresentation" and/or "Fraudulent Inducement." (<u>See</u> SAC ¶ 95 ("Volvo made material false misrepresentations and omissions concerning a material fact), ¶ 97 ("As a result . . . Ana Webb and other Class members were fraudulently induced . . . .")) Fraudulent misrepresentation and fraudulent inducement claims have the same elements, with the sole difference being the remedy sought. <u>Mellon Bank</u>

---

[5] Insofar as Plaintiffs also bring a UTPCPL claim not based on a fraudulent misrepresentation, that portion of the claim is not subject to the heightened pleading requirement of Fed. R. Civ. P. 9(b). <u>See</u> <u>Belmont v. MB Inv. Partners, Inc.</u>, 708 F.3d 470, 498 n.33 (3d Cir. 2013) (explaining that Rule 9(b)'s heightened pleading standard applies when a claim under the UTPCPL is based on fraudulent misrepresentations, but not when it is based upon other conduct).

Corp. v. First Union Real Estate Equity & Mortgage Investments, 951 F.2d 1399, 1411 (3d Cir. 1991) (citing fraudulent misrepresentation and inducement cases interchangeably and explaining they are similar, with the only difference being the remedy.)

Under Pennsylvania law, claims for fraudulent misrepresentation or inducement have six elements:

(1) a representation;

(2) which is material to the transaction at hand;

(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

(4) with the intent of misleading another into relying on it;

(5) justifiable reliance on the misrepresentation; and

(6) the resulting injury was proximately caused by the reliance.

Overall v. Univ. of Pa., 412 F.3d 492, 498 (3d Cir. 2005).

Defendants assert throughout their Motion to Dismiss that the Court should dismiss Plaintiffs' fraud claim because Plaintiff Webb has not adequately alleged justifiable reliance on a specific misleading misrepresentation. In response, Plaintiffs rely on two paragraphs of the SAC, which they contend satisfy "notice pleading" requirements:

> 6. Webb justifiably relied upon Volvo's false, misleading and deceptive representations, including advertising, marketing, promotions, sales materials, owner's manual materials, safety materials, express and implied warranties, and press statements and releases that Volvo provided to its customers, consumers and users of the Class Vehicles.
> . . .
> 11. Volvo created an extensive marketing campaign for the Class Vehicles, which included press releases, advertisements, and pictures of their Side Impact Protection System (SIPS) with door bars in the rear doors; but, the Class Vehicle was not manufactured as advertised and originally designed, resulting in the fact that the Class Vehicles as actually sold had absolutely no door bars in the rear passenger doors.

(SAC ¶¶ 6, 11)

It is clear that Plaintiffs' allegations fall short of what is legally required. Plaintiff Webb does not at any time allege a single actual representation made by Volvo that she justifiably relied upon. See Weinberg v. Sun Co., 777 A.2d 442, 446 (Pa. 2001) (The Pennsylvania Supreme Court explained that a plaintiff alleging reliance must show that her detrimental action was as a result of "hear[ing] and believ[ing] false advertising."); see also Jeter v. Brown & Williamson Tobacco Corp. 113 F. App'x 465, 469 (3d Cir. 2004) (applying Pennsylvania law to grant summary judgment because Plaintiff "presented no evidence that [he] actually saw or relied on any [] advertisements or other representations").

Notably, Plaintiffs' original complaint also did not identify any specific misleading representation that was seen, heard, and relied upon to purchase the Volvo 850. (ECF 1) Defendants specifically moved for a more definite statement on this ground (ECF 4), and Plaintiffs submitted an amended complaint that identified an allegedly misleading representation, which specified a Volvo brochure which did not, on its face, pertain to the same Volvo model (850) which is the subject matter of this case. (ECF 12) However, the First Amended Complaint's identified representation has been improperly altered by Plaintiffs' prior counsel to make it appear relevant to this case in ways that it was not. (Hearing on 12/17/13, at 56, ECF 49) This Court once again granted Plaintiffs leave to amend, and Plaintiffs removed the misleading exhibit. However, this left them again without any specific misleading representation alleged. (ECF 54) In sum, Plaintiffs have had three opportunities to properly allege fraudulent misrepresentation by Defendants, and have repeatedly failed. Permitting Plaintiffs a fourth

opportunity would be futile.  <u>Rhett v. New Jersey State Superior Court</u>, 260 F. App'x 513, 516 (3d Cir. 2008).[6]

### B.  Negligent Misrepresentation – Count V

In Pennsylvania, a claim of negligent misrepresentation requires proof of: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation."  <u>Bilt-Rite Contractors, Inc. v. The Architectural Studio</u>, 581 Pa. 454, 466 (2005) (quoting <u>Bortz v. Noon</u>, 556 Pa. 489, 500 (1999)).  Negligent misrepresentation differs from fraudulent misrepresentation "in that to commit the former, the speaker need not know his or her words are untrue, but must have failed to make reasonable investigation of the truth of those words."  <u>Bennett</u>, 682 F. Supp. 2d 469, 481 (E.D. Pa. 2010).

As with Plaintiffs' fraud claim, and for the same reasons expressed above, their claim for negligent misrepresentation fails under Rule 12(b)(6).  Plaintiffs have failed to allege a single specific misrepresentation by Defendants that Plaintiffs justifiably relied upon.

---

[6] Justifiable reliance is also an element of the UTPCPL claim, which is Count I of the SAC.  <u>Hunt v. U.S. Tobacco Co.</u>, 538 F.3d 217 (2008).  Thus, the Court dismisses the UTPCPL claim for the same reason the breach of express warranty claim is dismissed.  <u>See</u> <u>Kaplan v. Cablevision of PA, Inc.</u>, 671 A.2d 716, 721 (Pa. Super. Ct. 1996) ("In the absence of such a written warranty, we agree with the trial court that no cause of action under section 201-2(4)(xiv) can be sustained").  Plaintiff states that "she is alleging a UTPCPL claim under the catch-all provision for deceptive adverting and that this UTPCPL claim is not based on any warranty."  (ECF 111, at 16 (citing 73 P.S. § 201-2(4)(xxi)).  However, a UTPCPL claim based on the "catch-all" provision still requires Plaintiff to prove justifiable reliance.  <u>See</u> <u>Toy v. Metro. Life Ins. Co.</u>, 593 Pa. 20, 45, 928 A.2d 186, 202 (2007) (stating that "a plaintiff alleging violations of the Consumer Protection Law must prove justifiable reliance"); <u>Yocca v. Pittsburgh Steelers Sports, Inc.</u>, 854 A.2d 425, 438 (2004) ("To bring a private cause of action under the [UTPCPL], a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance."); <u>Hunt</u>, 538 F.3d at 227 ("[Plaintiff] must prove justifiable reliance affirmatively.").

Also for the same reasons, permitting Plaintiffs to file a fourth complaint would be an exercise in futility.

### C. Breach of Express Warranty – Count III

Defendants assert that the Court should dismiss Plaintiffs' breach of express warranty claim because Plaintiff Webb did not allege that she read and relied on a specific advertisement or other representation that created a warranty. In their Response, Plaintiffs make clear that their express warranty claim is "based on Volvo's deceptive advertising." (ECF 111, at 14)[7]

Under Pennsylvania law, "express warranties are bargained, 'dickered,' individualized promises that the goods will perform up to the specific standards set forth in that warranty." Goodman v. PPG Indus., Inc., 849 A.2d 1239, 1245 (Pa. Super. Ct. 2004) (quoting 13 Pa. Cons. Stat. Ann. § 2313, Official Cmt. ¶ 1). A warranty "is created by a seller through '[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain.'" Starks v. Coloplast Corp., No. 13-cv-3872, 2014 WL 617130, at *6 (E.D. Pa. Feb. 18, 2014) (quoting 13 Pa. Cons. Stat. Ann. § 2313).

Thus, to state a cognizable claim for breach of express warranty, a plaintiff must allege both that the defendant made "an actual affirmation of fact or a promise," and that the affirmation of fact or promise "formed the basis of the bargain" between the defendant and the plaintiff. Jeter, 113 Fed. Appx. at 468 (citing 13 Pa. Cons. Stat. § 2313 and Goodman, 849 A.2d at 1243)); see also Esposito v. I-Flow Corp., No. 10-cv-3883, 2011 WL 5041374, at *6 (E.D. Pa. Oct. 24, 2011) (citations omitted). Where an express warranty claim is based on advertisements,

_____

[7] Plaintiffs also claim that they are relying on the Volvo 850 Collision Safety Pamphlet, Volvo 850 Window Sticker, and Volvo 850 Owner manual, none of which were mentioned in, or attached to, the SAC or Motion to Dismiss. To the extent that Plaintiffs seek to rely on any specific warranty made within those documents as part of their breach of warranty theory, they still have not referenced, cited, or otherwise highlighted it in this third complaint.

a plaintiff must allege that she saw or heard, and also believed, the allegedly false advertisements in order to satisfy her obligation to allege that advertisements formed the basis of the bargain. Weinberg, 777 A.2d at 446 (cited in Jeter, 113 Fed. Appx. at 469); see also Parkinson v. Guidant Corp., 315 F. Supp. 2d 741, 752 (W.D. Pa. 2004) (stating that, in order to meet the basis of the bargain requirement, a plaintiff must "'prov[e] that she read, heard, saw or knew of the advertisement containing the affirmation of fact or promise'" (quoting Cipollone v. Liggett Group, Inc., 893 F.2d 541, 567 (3d Cir. 1990)), rev'd on other grounds, 505 U.S. 504 (1992).

There is no allegation whatsoever in Plaintiffs' SAC as to what express warranty was seen, heard, and believed by Plaintiff Webb. Having had three opportunities over the past four years to adequately plead such a warranty, Plaintiffs will not have a fourth. Amendment of this claim would also be futile.

### D. Breach of Implied Warranty

The elements that prove a breach of the implied warranty of merchantability are essentially the same as those to recover on a strict products liability claim. See Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 94 (3d Cir. 1983). "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 13 Pa. Cons. Stat. § 2314(a). The implied warranty of merchantability serves to protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose. See Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992). "In order to be merchantable, goods must be 'fit for the ordinary purposes for which such goods are used.'" Id. (quoting 13 Pa. C.S.A. § 2314(b)(3)).

Defendants contend that the Court should dismiss Plaintiffs' breach of implied warranty claim because the statute of limitations for breach of an implied warranty is four years from the date that the seller tenders the goods to the **original** purchaser.

It is undisputed that the statute of limitations for breach of implied warranty is four years from the date the seller tenders the goods to the original purchaser. 13 Pa. Cons. Stat. § 2725 (a) & (b). Plaintiff bought the car secondhand on May 1, 2009. (SAC ¶ 17; ECF 99-1 (resubmitted as ECF 124) Pennsylvania Certificate of Title for a Vehicle).[8] This lawsuit was initiated on May 1, 2013. The Certificate of Title submitted by Defendants, and unchallenged by Plaintiffs in their briefs and at oral argument, demonstrates that the vehicle in question had 159,000 miles on it by May 1, 2009, and that it was titled in Pennsylvania prior to May 1, 2009. (Id.) Thus, the four year statute of limitations prevents Plaintiffs from bringing a claim for implied warranty of merchantability. (Id.)

Plaintiffs contend that, irrespective of the statute of limitations period, equitable estoppel serves as a bar to dismissal of this claim because Volvo "cause[d] the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." Fine v. Checcio, 870 A. 2d 850, 860 (Pa. 2005). Plaintiffs cite Nesbitt v. Erie Coach Co., 416 Pa. 89 (Pa. 1964) for the

---

[8] Generally, on a motion to dismiss, the district court may consider only the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994). In addition, the court may take into consideration "matters of public record" and "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993); Fed. Elec. Comm'n v. Arlen Specter '96, 150 F.Supp.2d 797, 803 n. 5 (E.D.Pa.2001) (noting that court may consider "court files, records and letters of official actions or decisions of government agencies and administrative bodies when considering a Rule 12(b)(6) motion") (internal quotation marks and citation omitted).

proposition that, for equitable estoppel to apply, "fraud or concealment" need not "necessarily be established," because mere "unintentional deception" is sufficient. Id. at 96.

However, there is no allegation of unintentional deception, fraud, or concealment that meets the Twombley/Iqbal standard. The Webbs purchased the used 1997 Volvo in 2009. It is unclear how Volvo could have "lulled [the Webbs] into a sense of false security as to timely institution of [their] action," Nesbitt v. Erie Coach Co., 416 Pa. 89, 96 (Pa. 1964), because Plaintiffs did not even own their Volvo during the applicable limitations period (assuming, that is, that the 1997 car was purchased "new" from Volvo sometime prior to 2005). This is not a case where Plaintiffs were deceived and therefore failed to bring their case during the limitations period. They never could have brought a case for breach of implied warranty of merchantability, seeing as they bought the 1997 Volvo in 2009 with 159,000 miles. Regardless of this particular assertion, Plaintiffs do not allege any equitable estoppel in their SAC, and have failed to demonstrate that this is the rare case "where the plaintiff in some extraordinary way has been prevented from asserting his or her rights." In re Mushroom Transp. Co., Inc., 382 F.3d 325, 338-39 (3d Cir. 2004).

Plaintiffs also contend that, because the statute of limitations defense is an "affirmative defense," it should not preclude them from filing an amended complaint. (ECF 111, at 20 n.3) Under Fed. R. Civ. P. 8(c), the statute of limitations constitutes an affirmative defense to an action. However, the limitations defense may be raised on a motion under Rule 12(b)(6) when "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Hanna v. United States Veterans' Administration Hospital, 514 F.2d 1092, 1094 (3d Cir. 1975).

Moreover, Defendants' other ground for dismissal does not rely upon an affirmative defense. Defendants correctly point out that Volvo's Limited Warranty limited the duration of any implied warranty of merchantability to the period of the express warranty (i.e., four years). Volvo's Limited Warranty is attached to the Motion to Dismiss as Exhibit 2, and it contains an explicit limitation on the Warranty Period of four years or 50,000 miles. (See ECF 100, at 9.)[9] Because the Pennsylvania Certificate of Title demonstrates that the Volvo in question was owned by a different party prior to the four year period leading up to the filing of the original complaint in this case (May 1, 2013), and that it had traveled 159,000 at the time the Webbs took possession of it (Pennsylvania Certificate of Title, ECF 99-1 (resubmitted as ECF 124)), the implied warranty was no longer in effect at the time this lawsuit was initiated. For this reason, separate and apart from the statute of limitations, this count must be dismissed.

However, Plaintiffs assert that the "disclaimer" (i.e., duration and mileage limitation) of the implied warranty of merchantability is ineffective because the express warranty and its disclaimer do not apply to design defects (ECF 111, at 16). Specifically, Plaintiffs cite and mentioned at oral argument Bruce Martin Constr., Inc. v. CTB, Inc., 735 F.3d 750 (8th Cir. 2013) for the proposition that there is a distinction between defects in material and workmanship and design defects. They also cite and mentioned at oral argument Allen-Myland, Inc. v. Garmin Intern., Inc, 140 A.3d 677 (Pa. Super. 2016) for the proposition that the terms of an express warranty, and a disclaimer thereto, are only operative insofar as they are a part of the plaintiff's bargain in purchasing the vehicle. Plaintiffs' case law citations are inapposite. The duration

---

[9] The Court can take judicial notice of the warranty terms because they are integral to or explicitly relied upon in Plaintiff's Second Amended Complaint. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (court can take judicial notice and consider a document "integral to or explicitly relied upon in the complaint" on motion to dismiss); In re MyFord Touch Consumer Litig., 46 F. Supp. 3d 936, 950 (N.D. Cal. 2014) (taking judicial notice of Ford's Limited Warranty).

limitation for the implied warranty is not dependent on the disclaimer of the express warranty, as Plaintiffs suggest. Thus, it is irrelevant whether the express warranty applies to design defects. See, e.g., Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 326 (D.N.J. 2014) ("A disclaimer of express warranty is qualitatively different from a disclaimer of an implied warranty.").

Plaintiffs also assert that the disclaimer is not sufficiently conspicuous under 13 Pa. Cons. Stat. § 2316(b) (2016). (ECF 111, at 16.) The Pennsylvania Uniform Commercial Code allows for implied warranties, including the implied warranty of merchantability, to be disclaimed as long as the disclaimer is "conspicuous." 13 Pa. C.S.A. § 2316(b). A clause or term is deemed to be "conspicuous" when it is "so written, displayed or presented that a reasonable person against which it is to operate ought to have noticed it." 13 Pa. C.S.A. § 1201(b)(10). The duration limitation is presented in the booklet in italicized and bolded font:

> *No implied warranty of merchantability or fitness for a particular purpose shall apply except during the applicable period of this warranty.*[10]

(ECF 100, at 9.)

Conspicuous terms include those "in contrasting type, font or color to the surrounding text of the same or lesser size." 13 Pa. Cons. Stat. § 1201(b)(10). The above duration limitation clearly qualifies. See, e.g., Woolums v. Nat'l RV, 530 F.Supp. 2d 691, 702 (M.D. Pa. 2008) (disclaimer in boldface and larger typeface is conspicuous).

Because Plaintiffs cannot overcome the statute of limitations defense, and separately, because the implied warranty of merchantability was no longer in effect at the time that the Webbs took possession of the vehicle, this claim must be dismissed. No additional allegations

---

[10] Also on that page, the "Warranty Period" is defined as "four (4) years or 50,000 miles/80,000 kilometers, whichever occurs first. . . The warranty starts on the date the vehicle is sold/delivered to the first retail purchaser or put into service, whichever occurs first." (ECF 100, at 9.)

could possibly demonstrate that amendment would be anything but futile, given that no further detail about the case could change the mileage of the car or the amount of time that had expired at the time that the Webbs took possession of the Volvo in question.

### E.  Unjust Enrichment – Count II

Under Pennsylvania law, the elements of unjust enrichment have been defined as, (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.  Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008).  Defendants assert that Plaintiffs failed to allege all three elements of unjust enrichment.

Plaintiff Webb contends that Volvo benefitted from producing and selling Volvo 850s at a lower cost than it would have been able to had it installed steel bars in its backseat doors.  In this way, Plaintiff Webb alleges, Volvo benefitted at her expense.  Plaintiff Webb also contends that, by purchasing and driving a used Volvo 850, she benefitted Volvo by (1) promoting Volvo's brand, (2) contributing to the market for Volvo parts and service, and (3) inducing initial purchasers to buy Volvos by bolstering resale value.  None of these benefits are legally sufficient.  See, e.g., In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II), 2011 WL 601279, at *6 (D.N.J. Feb. 16, 2011); Doll v. Ford Motor Co., 814 F. Supp. 2d 526, 551-52 (D. Md. 2011).

Plaintiffs cite and mentioned at oral argument Powers v. Lycoming Engines, 245 F.R.D. 226, 232 (E.D. Pa. 2007), vacated and remanded, 328 F. App'x 121 (3d Cir. 2009), for the proposition that "indirect purchasers [can] establish claims for unjust enrichment so long as they can prove that the defendant benefitted at the plaintiff's expense, even if the benefit flowed

indirectly from the plaintiff to the defendant." Plaintiffs also cite and mentioned at oral argument Com. ex rel. Pappert v. TAP Pharm. Prod., Inc., 885 A.2d 1127, 1137 (Pa. Commw. Ct. 2005), which stated that "a defendant need not have accepted and appreciated the benefit intentionally." (citing Torchia v. Torchia, 499 A.2d 581 (Pa. Sup. 1985)). Plaintiffs characterize the TAP decision as "explicitly stat[ing] that a direct benefit is not required, and that an indirect benefit, such as increased market share, is more than sufficient to make out a claim for unjust enrichment." (ECF 111, at 13)

What Plaintiffs fail to address, however, is the fact that Defendants concede this point. Defendants do not dispute that, as a matter of law, indirect purchasers can establish claims for unjust enrichment. (See, e.g., ECF 115, at 5) However, the present case does not present a legally cognizable benefit. See, e.g., In re Ford Motor, 2011 WL 601279, at *6 (discussed at oral argument); Doll, 814 F. Supp. 2d at 551-52 (same).

Moreover, irrespective of Defendants' intent, or lack thereof, in allegedly "accepting" and/or "retaining" such generalized benefits, Torchia, 499 A.2d 581, Plaintiffs have failed to demonstrate acceptance and retention of such benefits under circumstances in which it would be inequitable for defendant to retain the benefit without payment of value. This unjust enrichment claim relies on the same alleged conduct as the underlying fraud claim, which, for reasons stated earlier, will be dismissed. See Whitaker v. Herr Foods, Inc., 198 F. Supp. 3d 476, 493 (E.D. Pa. 2016) ("Where the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim."). The unjust enrichment claim also fails.

## VII.    Leave to Amend

The Third Circuit has emphasized that under Fed. R. Civ. P. 15(a), "leave to amend should be 'freely given when justice so requires,'" and "'a district court must permit a curative amendment unless such an amendment would be inequitable or futile.'" Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 144 n. 10 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008)); see also Foman v. Davis, 371 U.S. 178, 182 (1962) (cited by Plaintiffs for the proposition that Fed. R. Civ. P. 15's instruction to "freely give" leave to amend is a "mandate [] to be heeded.").

An amendment is considered futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Notably, the Third Circuit has stated that "although amendments are to be liberally granted, the district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss." Centifanti v. Nix, 865 F.2d 1422, 1431 (3d Cir. 1989).

At oral argument, Plaintiffs' counsel stated that the precise advertisements alleged in the SAC need not specifically be mentioned because Volvo "knows" which advertisements to which Plaintiffs are referring, and in any event, those advertisements can be specifically added if the Court permits Plaintiffs to submit a fourth complaint.  One such advertisement was handed to the Court as an exemplar of the materials that Plaintiffs would submit if provided the opportunity. The Court has seen the same pamphlet several times before, as it was attached to the First Amended Complaint (ECF 12, at 4), handed to the Court during a hearing held on December 6, 2013 (ECF 49, at 20-21), and the subject of extensive proceedings on a Motion for Sanctions filed by Defendants (ECF 32).  In fact, it is the exact exhibit that was altered by Plaintiffs' prior

counsel. Even if the Court were to consider this brochure, and the other materials which have been submitted or otherwise presented to this Court on prior occasions, Plaintiffs' allegations would not even come close to providing sufficient support for Plaintiffs' claims to overcome another motion to dismiss.

Here, Plaintiffs have had three opportunities to properly allege a case against Defendants, and they have repeatedly failed. For reasons expressed throughout this opinion, permitting Plaintiffs a fourth opportunity would be futile. Rhett v. New Jersey State Superior Court, 260 F. App'x 513, 516 (3d Cir. 2008).

## VIII. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED with prejudice with respect to all counts.

An appropriate Order follows.